No. 14-16840

IN THE

# United States Court of Appeals for the Ninth Circuit

JEFF SILVESTER, *et al.*,

Plaintiffs-Appellees,

v.

KAMALA HARRIS, *etc.*,

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of California

Case No. 1:11-cv-02137-AWI-SKO
The Honorable Anthony W. Ishii, Judge

**BRIEF OF *AMICUS CURIAE***
**BRADY CENTER TO PREVENT GUN VIOLENCE**
**IN SUPPORT OF APPELLANT AND REVERSAL OF JUDGMENT**

**[All Parties Have Consented to the Filing]**

BRADY CENTER TO PREVENT GUN VIOLENCE - LEGAL ACTION PROJECT
Jonathan E. Lowy
840 First Street, N.E. Suite 400
Washington, D.C. 20002
(202) 370-8104
jlowy@bradymail.org

HOGAN LOVELLS US LLP
Anthony Basich, SBN 100224
David Skaar, SBN 265377
1999 Avenue of the Stars,
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
anthony.basich@hoganlovells.com

Counsel for *Amicus Curiae*

April 1, 2015

\\LA - 090334/002276 - 1141417 v4

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Brady Center to Prevent Gun Violence states that it has no parent corporations, and it has not issued shares or debt securities to the public. The organization is not a subsidiary or affiliate of any publicly owned corporation and no publicly held corporation holds ten percent of its stock.

/s/ Anthony Basich
Anthony Basich

# TABLE OF CONTENTS

**Page**

CONSENT TO FILE ........................................................................................ 1

STATEMENT OF INTEREST OF *AMICUS CURIAE* .......................................... 1

SUMMARY ...................................................................................................... 2

ARGUMENT ..................................................................................................... 3

I. CALIFORNIA'S WAITING PERIOD IS A PRESUMPTIVELY LAWFUL CONDITION ON THE COMMERCIAL SALE OF FIREARMS THAT IS NOT SUBJECT TO ANY LEVEL OF SCRUTINY ..................................................................................... 3

II. EVEN IF THE WAITING PERIOD WERE NOT "PRESUMPTIVELY LAWFUL", IT WOULD STILL WITHSTAND INTERMEDIATE SCRUTINY ..................................................................................... 8

CONCLUSION .................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bauer v. Harris*,
___ F.Supp.3d ___, 2015 WL 881515 (E.D. Cal. 2015) .................................. 5, 7

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .................................................................................... passim

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ............................................................................ 3

*Fyock v. City of Sunnyvale*,
___ F.3d ___, 2015 WL 897747 (9th Cir. 2015) ........................................... 6, 10

*Jackson v. City and County of San Francisco*,
746 F.3d 953 (9th Cir. 2014) ..................................................................... 3, 4, 8, 9

*McDonald v. City of Chicago*,
561 U.S. 742 ......................................................................................................... 1

*Nordyke v. King*,
681 F.3d 1041 (9th Cir. 2012) ........................................................................... 7

*NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
700 F.3d 185 (5th Cir. 2012) .............................................................................. 4

*Pena v. Lindley*,
2015 WL 854684 (E.D. Cal. 2015) ....................................................................... 7

*Silvester v. Harris*,
41 F.Supp.3d 927 (E.D. Cal. 2014) .............................................................. passim

*Teixeira v. County of Alameda*,
2013 WL 4804756 (N.D. Cal. 2013) ........................................................... 4, 7, 10

*United States v. Hayes*,
555 U.S. 415 (2009) ............................................................................................ 1

**CONSTITUTIONAL AMENDMENTS**

Second Amendment ........................................................................... passim

**RULES**

FRAP Rule 29(a) ................................................................................................ 1

**OTHER AUTHORITIES**

Dix. G., *A Comparison of Firearm Mortality Rates in California and the Rest of the Nation 1990-2010* (Jan. 9, 2013) ........................................................ 2

Henry J. Kaiser Family Foundation, "Number of Deaths Due to Injury by Firearms per 100,000 Population," 2010 (*available at* http://kff.org/other/state-indicator/firearms-death-rate-per-100000) ................. 10

LCPGV, "State Waiting Periods for Guns," Jan. 3, 2012 (*available at* http://smartgunlaws.org/category/state-waiting-periods-for-guns/) ................... 10

LCPGV, "Waiting Periods Policy Summary," June 24, 2013 (*available at* http://smartgunlaws.org/waiting-periods-policy-summary/#identifier_14_5825) ......................................................................... 10

Merriam-Webster Dictionary (*available at* http://www.merriam-webster.com/dictionary/condition) ........................................................................ 4

Oxford English Dictionary (*available at* http://www.oed.com/view/Entry/38550?result=1&rskey=VtHceF&) ................. 5

Law Center to Prevent Gun Violence, *The California Model: Twenty Years of Putting Safety First*, n.5 (July 29, 2013) (*available at* http://smartgunlaws.org/the-california-model-twenty-years-of-putting-safety-first/) ........................................................................................................ 2

Random House Kernerman Webster's College Dictionary, (*available at* http://www.kdictionaries-online.com/DictionaryPage.aspx?ApplicationCode=18#&&DictionaryEntry=condition&SearchMode=Entry) ...................................................................... 4

## CONSENT TO FILE

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, *amicus* Brady Center to Prevent Gun Violence (the "Brady Center") received consent from all parties to file this brief. No party or party's counsel authored this brief in whole or in part. No party, party's counsel, or person other than the Brady Center, its members, or its counsel contributed money intended to fund the preparation and submission of this brief.

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The Brady Center is a national, non-partisan, non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Through its Legal Action Project, the Brady Center has filed numerous *amicus curiae* briefs in cases involving firearm regulations, including *McDonald v. City of Chicago*, 561 U.S. 742, 870 n.13, 887 n.30, 891 n.34 (2010) (Stevens, J., dissenting) (citing Brady Center brief), *United States v. Hayes*, 555 U.S. 415, 427 (2009) (citing Brady Center brief), and *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Brady Center brings a broad and deep perspective to the issues raised here and has a compelling interest in ensuring that the Second Amendment does not impede reasonable governmental action to prevent gun violence.

## SUMMARY

As a result of California's comprehensive gun violence prevention laws, California has experienced much greater declines in its firearm homicide and suicide rates than the rest of the nation.[1] That progress, however, is threatened by the District Court's erroneous conclusion that an important component of California's regulatory scheme violates the Second Amendment.

Every firearm sale in California is subject to a ten-day waiting period that must elapse before the purchaser can take possession of the firearm (the "Waiting Period"). As a condition on the commercial sale of firearms, the Waiting Period is "presumptively lawful" under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and, therefore, "outside the historical scope of the Second Amendment."

Even if that were not the case, however, the Waiting Period would still be constitutional. By providing (among other things) a "cooling off period" to deter impulsive acts of violence, and an opportunity to prevent "straw purchasers" from receiving firearms that are intended to be transferred to persons who are legally

---

1 Between 1993 and 2010, the firearm death rate in California declined by 56%, versus 29.9% nationwide. Law Center to Prevent Gun Violence, *The California Model: Twenty Years of Putting Safety First*, n.5 (July 29, 2013) (*available at* http://smartgunlaws.org/the-california-model-twenty-years-of-putting-safety-first/); *see also* Dix. G., *A Comparison of Firearm Mortality Rates in California and the Rest of the Nation 1990-2010*, p. 3 (Jan. 9, 2013) (between 1990 and 2010, California's firearm homicide rate declined 53.9%, versus 37.3% nationwide, and its firearm suicide rate dropped 47.3%, versus 16.9% nationally).

prohibited from owning or possessing firearms, the Waiting Period "reasonably fits" California's important interest in preventing gun violence. Accordingly, the District Court's judgment should be reversed.

## ARGUMENT

### I. CALIFORNIA'S WAITING PERIOD IS A PRESUMPTIVELY LAWFUL CONDITION ON THE COMMERCIAL SALE OF FIREARMS THAT IS NOT SUBJECT TO ANY LEVEL OF SCRUTINY.

Based on the Supreme Court's decision in *Heller*, the Ninth Circuit (like the majority of other circuits) employs a two-step inquiry for Second Amendment-based legal challenges. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014). The first step "'asks whether the challenged law burdens conduct protected by the Second Amendment . . . .'" *Id*. (quoting *United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013)). "'[I]f so, . . . an appropriate level of scrutiny'" is then applied in the second step to determine whether the law is constitutional. *Id.* Thus, only if a law is first found to fall "within the historical scope of the Second Amendment" is further scrutiny appropriate. *Id.*; *accord Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011) ("[I]f the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right . . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second

Amendment review"); *NRA v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 195 (5th Cir. 2012) (same).

Laws that were identified in *Heller* as being "presumptively lawful" are deemed to fall "outside the historical scope of the Second Amendment . . . ," *Jackson*, 746 F.3d at 960, thereby "mak[ing] unnecessary any analysis under the second step in the Second Amendment inquiry . . . ." *Teixeira v. County of Alameda*, 2013 WL 4804756, *7 (N.D. Cal. 2013). Such "presumptively lawful regulatory measures" include "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27 and n.26. Indeed, the District Court recognized as much, *Silvester v. Harris*, 41 F.Supp.3d 927, 960-61 (E.D. Cal. 2014), but concluded that California's Waiting Period was not such a condition "based on a plain reading of the term . . . ." *Id.* at 963. That holding was incorrect.

Common definitions of the word "condition" include (i) "a circumstance indispensable to some result; prerequisite," Random House Kernerman Webster's College Dictionary (*available at* http://www.kdictionaries-online.com/DictionaryPage.aspx?ApplicationCode=18#&&DictionaryEntry=condition&SearchMode=Entry); (ii) "a premise upon which the fulfillment of an agreement depends," Merriam-Webster Dictionary (*available at* http://www.merriam-webster.com/dictionary/condition); and (iii) "[s]omething

demanded or required as a prerequisite to the granting or performance of something else . . . ." Oxford English Dictionary (*available at* http://www.oed.com/view/Entry/38550?result=1&rskey=VtHceF&). That is precisely what the Waiting Period is.

As the District Court itself explained: "every person who wishes to purchase a firearm in California must wait at least 10-days [sic] from the date of purchase before taking possession of a firearm." *Silvester*, 41 F.Supp.3d at 944. The Waiting Period does not ban sales of firearms, but merely requires a very short passage of time before a sale can be completed. Thus, based on the "plain meaning" of the word, the Waiting Period is a presumptively lawful "condition" on the sale of firearms -- just like a constitutionally-permitted fee that is imposed on firearm sales. *Bauer v. Harris*, ___ F.Supp.3d ___, 2015 WL 881515, *6 (E.D. Cal. 2015). Each is a very modest prerequisite to the sale's completion.

The District Court also erred by further concluding that the Waiting Period was not "sufficiently 'longstanding' to be entitled to a presumption of lawfulness." *Silvester*, 41 F.Supp.3d at 963. Although the District Court acknowledged "that California has had some form of a waiting period since 1923," it stated that laws must date back to "the periods around 1791 and 1868" to be "longstanding" under the constitutional analysis. *Id.* But as this Court just recently held, even "early twentieth century regulations" (such as waiting period laws) can "demonstrate a

history of longstanding regulation . . . ." *Fyock v. City of Sunnyvale*, ___ F.3d ___, 2015 WL 897747, *4 (9th Cir. 2015).

More importantly, however, conditions imposed on the commercial sale of firearms do not need to be "longstanding" to be "presumptively lawful." The District Court's contrary conclusion misread the language in *Heller* by conflating the separate examples of "presumptively lawful regulatory measures" that the high court gave.

After recognizing that the right to keep and bear arms under the Second Amendment is not unlimited, *Heller* went on to state:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, ***or*** laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, ***or*** laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27 (emphasis added). The opinion's use of two conjunctions to separate the three examples of "presumptively lawful regulatory measures" clearly indicates that the word "longstanding" applies only to the first of the three examples (*i.e.*, "longstanding prohibitions on the possession of firearms by felons and the mentally ill"), and not the latter two (*i.e.*, "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings"

and "laws imposing conditions and qualifications on the commercial sale of arms"). *See Pena v. Lindley*, 2015 WL 854684, *9 (E.D. Cal. 2015) (identifying "longstanding prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," and "laws imposing conditions and qualifications on the commercial sale of arms" as three types of "presumptively lawful regulatory measures").

Indeed, not only is that conclusion compelled by a plain reading of the passage in question, but courts in this circuit have repeatedly upheld "laws forbidding the carrying of firearms in sensitive places" and "laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful regulatory measures" that fell "outside the historical scope of the Second Amendment" <u>without ever considering whether the laws were "longstanding" or not</u>. *See, e.g.*, *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (County ordinance regulating sale of firearms at gun shows); *Bauer*, 2015 WL 881515 at *6 (Dealer's Record of Sale fee imposed on every firearm sale in California); *Pena*, 2015 WL 854684 at *13 (Unsafe Handgun Act prohibiting sale of handguns that do not meet certain requirements); *Teixeira*, 2013 WL 4804756 at *6-7 (County ordinance prohibiting gun stores within 500 feet of schools, residences, establishments that sell liquor and other gun stores). Accordingly, since the

Waiting Period is a "presumptively lawful" condition on commercial sales of firearms, it should be upheld without further scrutiny of any type.[2]

## II. EVEN IF THE WAITING PERIOD WERE NOT "PRESUMPTIVELY LAWFUL", IT WOULD STILL WITHSTAND INTERMEDIATE SCRUTINY.

After erroneously concluding that the Waiting Period was not "presumptively lawful", the District Court next needlessly applied step two of the Second Amendment inquiry. Even if that had been necessary, however, the Waiting Law would pass constitutional muster.

The District Court correctly stated that the "intermediate scrutiny standard requires: (1) that the government's stated objective must be significant, substantial, or important, and (2) that there is a reasonable fit between the challenged regulations and the government's asserted objective." *Silvester*, 41 F.Supp.3d at 961; *accord Jackson*, 746 F.3d at 965. The District Court also correctly recognized that "California has important interests in public safety/preventing gun violence and preventing prohibited individuals from obtaining firearms." *Silvester*, 41 F.Supp.3d at 964. The court erred, however, in

---

2 This is particularly true since this case does "not challenge the 10-day waiting period on a facial basis," but "as applied" to repeat purchasers, such as Plaintiffs, *Silvester*, 41 F.Supp.3d at 934, who already possess firearms. *Id.* at 945. No court has interpreted *Heller* as granting individuals the right to keep and bear a certain number, or particular types, of firearms. Nor did the District Court find that Plaintiffs' existing firearms were unsuited for the purpose of defending Plaintiffs' homes.

\\LA - 090334/002276 - 1141417 v4

concluding that there was not a "reasonable fit" between those objectives and the Waiting Period.

Two of the "reasonable fit" rationales proffered for the Waiting Period were that it provided a "'cooling off period' to prevent impulsive acts of violence . . . ," and time to complete investigations of "straw purchases" prior to delivery of the firearm. *Id.*[3] Both of those rationales, however, were incorrectly rejected by the District Court.

Despite acknowledging the existence of social science studies that advocate waiting periods as a deterrent to impulsive acts of violence, *id.* at 966, including one study that found a decrease in suicide rates for individuals over the age of 55, *id.* at 955, the District Court rejected the studies because they did not separately analyze the impact of waiting periods on individuals like Plaintiffs, who already possess firearms. *Id.* at 966. The State, however, "is entitled to rely on any evidence 'reasonably believed to be relevant' to substantiate its important interests" and "must be allowed 'a reasonable opportunity to experiment with

---

[3] A "straw purchase" is one that is made for a person who is prohibited from owning and possessing a firearm. *Id.* at 955-56. Completing the "straw purchase" investigation prior to the transfer of the firearm from the straw buyer to the prohibited person is important "because it keeps the firearm off the street and out of trouble." *Id.* at 956.

solutions to admittedly serious problems.'" *Fyock*, 2015 WL 897747 at *7 (quoting *City of Renon v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986)).[4]

The District Court further acknowledged the self-evident fact that the Waiting Period makes it more likely that government agents will be able to intercept a firearm before it is transferred from the "straw buyer" to the prohibited person. *Silvester*, 41 F.Supp.3d at 956. Nevertheless, the District Court also rejected this rationale because weapons were intercepted "only" 15% of the time, and because of a lack evidence of how frequently that occurred relative to the number of gun purchase applications. *Id.* at 967. The law, however, "does not require a perfect match between the [Waiting Period's] means and objectives, nor does the law require the [Waiting Period] to be foolproof." *Teixeira*, 2013 WL 4804756 at *7.

---

4 Seven of the eleven states with the lowest firearm death rates in the country in 2013 -- Hawaii (50th), Rhode Island, New Jersey, Minnesota, California, Iowa and Illinois (40th), Henry J. Kaiser Family Foundation, "Number of Deaths Due to Injury by Firearms per 100,000 Population," 2010 (*available at* http://kff.org/ other/state-indicator /firearms-death-rate-per-100000/) -- imposed waiting periods of some type. LCPGV, "Waiting Periods Policy Summary," June 24, 2013 (*available at* http://smartgunlaws.org/waiting-periods-policy-summary/ #identifier_14_5825). On the other hand, not one of the twenty states with the highest firearm death rates in 2013 -- Alaska (1st), Louisiana, Mississippi, Alabama, Arkansas, Montana, Wyoming, Oklahoma, New Mexico, Tennessee, Missouri, South Carolina, West Virginia, Arizona, Idaho, Nevada, Kentucky, Indiana, Georgia and Utah (20th), Henry J. Kaiser Family Foundation, "Number of Deaths Due to Injury by Firearms per 100,000 Population," 2010 (*available at* http://kff.org/ other/state-indicator /firearms-death-rate-per-100000/) -- had any waiting periods. LCPGV, "State Waiting Periods for Guns," Jan. 3, 2012 (*available at* http://smartgunlaws.org/category/state-waiting-periods-for-guns/).

Intermediate scrutiny only requires a “reasonable fit” between the Waiting Period and its objectives, which the studies and the demonstrated impact of waiting periods on suicide rates and “straw purchases” clearly provide. Accordingly, even if the Waiting Period were not presumptively lawful, which it is, it would still be constitutional.

## CONCLUSION

The Waiting Period is a “presumptively lawful” condition on the commercial sale of firearms. Even if were not, however, it should still be upheld as an important component of California’s comprehensive regulatory scheme that

///

///

///

has successfully curbed gun violence throughout the State. Accordingly, the District Court's judgment invalidating the law should be reversed.

Respectfully submitted,

/s/ Anthony Basich

Anthony Basich
Hogan Lovells US LLP
1999 Avenue of the Stars,
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
anthony.basich@hoganlovells.com

Jonathan E. Lowy
BRADY CENTER TO PREVENT GUN VIOLENCE - LEGAL ACTION PROJECT
840 First Street, N.E. Suite 400
Washington, D.C. 20002
(202) 370-8104
jlowy@bradymail.org

April 1, 2015

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this *amicus curiae* brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS-Word in 14-point Times New Roman font. I further certify that this *amicus curiae* brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 2,453 words (excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii)), *i.e.*, it is less than one-half the maximum permissible length of the brief it supports (Opening Brief of Defendant-Appellant).

/s/ Anthony Basich

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief of *Amicus Curiae* Brady Center to Prevent Gun Violence in Support of Appellant and Reversal of Judgment was filed with the Clerk using the appellate CM/ECF system on April 1, 2015. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Anthony Basich