No. 14-16840

# In the United States Court of Appeals for the Ninth Circuit

———————————————

JEFF SILVESTER, BRANDON COMBS,
THE CALGUNS FOUNDATION, INC., a non-profit organization, and
THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,
*Plaintiffs-Appellees*,

v.

KAMALA HARRIS,
Attorney General of the State of California, in her official capacity,
*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court
for the Eastern District of California

Case No. 1:11-cv-02137-AWI-SKO
(The Honorable Anthony W. Ishii, Senior District Judge)

———————————————

**BRIEF OF *AMICUS CURIAE* EVERYTOWN FOR GUN SAFETY
IN SUPPORT OF APPELLANT AND REVERSAL**

———————————————

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
*deepak@guptabeck.com*

*Counsel for Amicus Curiae
Everytown for Gun Safety*

April 1, 2015

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Everytown for Gun Safety has no parent corporations. It has no stock, and therefore, no publicly held company owns 10% or more of its stock.

*/s/ Deepak Gupta*
Deepak Gupta

# TABLE OF CONTENTS

Corporate disclosure statement...................................................................................i

Table of authorities ..........................................................................................iv

Introduction and interest of *amicus curiae* ....................................................1

Statement .............................................................................................................5

    1.   California adopts its waiting period alongside one of the earliest prohibitions on firearm possession by felons (1923) ..................5

    2.   California's law is part of a national trend, modeled on legislation drafted by the NRA's leaders (1923–1925) ...............5

    3.   Uniform legislation is developed, as more states enact waiting periods (1926–1936) ...............................................7

    4.   Congress enacts a waiting period for Washington, DC (1932)................9

    5.   The NRA urges enactment of legislation with a waiting period (1932) ....................................................................10

    6.   As broad consensus develops, California's waiting period is extended (1956–1974) ............................................10

    7.   Governor Ronald Reagan signs into law a 15-day waiting period for California and later, as president, touts its lifesaving success in urging a federal analogue (1975–1991) ..................11

Argument .............................................................................................................13

    I.   California's ten-day waiting period is a presumptively lawful regulation, and the district court's contrary conclusion resulted from an erroneously cramped historical analysis....................13

        A.   California's waiting-period law is "longstanding."........................14

        B.   California's waiting-period law regulates the "commercial sale of arms." ..............................................................18

        C.   Any burden imposed by California's law is de minimis. ................19

    II.   Even if California's waiting-period law were not presumptively lawful, it would easily pass muster under intermediate scrutiny............20

        A.   The district court misapplied intermediate scrutiny. .....................20

        B.   California's law easily satisfies intermediate scrutiny, properly applied. ..........................................................23

Conclusion ..........................................................................................................28

Appendix of historical statutes and materials ................................... App. 1

  Historical state statutes.......................................................... App. 1

    1923 Cal. Laws 695 ......................................................... App. 1

    1923 Conn. Laws 3707 ...................................................... App. 9

    1923 N.D. Laws 379.......................................................... App. 13

    1925 Ind. Laws 495 ......................................................... App. 18

    1925 N.J. Laws 185 ......................................................... App. 25

    1925 Or. Laws 468 .......................................................... App. 30

    1927 Haw. Laws 209 ........................................................ App. 38

    1927 Mass. Laws 413 ....................................................... App. 47

    1927 N.J. Laws 742 ......................................................... App. 51

    1931 Pa. Laws 497........................................................... App. 60

    1935 S.D. Laws 355.......................................................... App. 66

    1935 Wash. Laws 599........................................................ App. 70

    1936 Ala. Laws 51 .......................................................... App. 76

  History of uniform state legislation .................................... App. 80

    *3rd Report of Comm. on a Uniform Act to Regulate the Sale & Possession of Firearms*, Nat'l Conference on Uniform State Laws (1926) ........ App. 80

    *Report of Comm. on an Act to Regulate the Sale & Possession of Firearms*, Nat'l Conference on Uniform State Laws (1930) .......................... App. 94

    Charles Imlay, *Uniform Firearms Act*, 12 A.B.A. J. 767 (1926) ....... App. 139

  Federal legislative history ............................................... App. 142

    Act of July 8, 1932, ch. 465, 47 Stat. 650 ................................. App. 142

    75 Cong. Rec. 12754 (June 13, 1932) ....................................... App. 147

    Hearing on the National Firearms Act,73d Cong. 38 (1934) ...... App. 149

  Other historical materials ............................................... App. 154

    Alan C. Webber, *Where the NRA Stands on Gun Legislation*, The American Rifleman (Mar. 1968) ............................................... App. 154

    *Sportsmen Fight Sullivan Law*, 23 J. Crim. L. & Criminology 665 (1932) ...................................................................... App. 156

# TABLE OF AUTHORITIES

## Cases

*Bernal v. Fainer,*
    467 U.S. 216 (1984) ......................................................... 22

*Central Hudson Gas & Electric Corp. v. Public Service Commission,*
    447 U.S. 557 (1980) ......................................................... 22

*Dearth v. Holder,*
    893 F. Supp. 2d 59 (D.D.C. 2012) ................................... 18

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ...................................................*passim*

*Fyock v. Sunnyvale,*
    — F.3d —, 2015 WL 897747 (9th Cir. Mar. 4, 2015) ...................... 4, 14, 15, 18

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ......................................................... 17

*Greater New Orleans Broadcasting Association v. United States,*
    527 U.S. 173 (1999) ......................................................... 21

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) ....................................... 19

*Jackson v. San Francisco,*
    746 F.3d 953 (9th Cir. 2014)........................................*passim*

*Metro Lights, L.L.C. v. City of Los Angeles,*
    551 F.3d 898 (9th Cir. 2009)............................................ 23

*NRA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
    700 F.3d 185 (5th Cir. 2012)............................................ 16

*People v. Bickston,*
    91 Cal. App. 3d 29 (Ct. App. 1979) ................................ 11

*Printz v. United States,*
    521 U.S. 898 (1997) ......................................................... 12

*Turner Broad. System, Inc. v. Federal Communications Commission,*
520 U.S. 180 (1997) ...................................................................... 4, 28

*United States v. Bena,*
664 F.3d 1180 (8th Cir. 2011)........................................................ 15

*United States v. Booker,*
644 F.3d 12 (1st Cir. 2011)............................................................ 15

*United States v. Skoien,*
614 F.3d 638 (7th Cir. 2010).....................................................*passim*

*United States v. Vongxay,*
594 F.3d 1111 (9th Cir. 2009)....................................................... 14

*Vanguard Outdoor, LLC v. City of Los Angeles,*
648 F.3d 737 (9th Cir. 2011)......................................................... 23

*Woollard v. Gallagher,*
712 F.3d 865 (4th Cir. 2013)......................................................... 21

## Federal Legislative Materials

18 U.S.C. § 922(g)(1) ......................................................................... 9

18 U.S.C. § 922(s)(1)(A)(ii) ............................................................. 12

Act of July 8, 1932, ch. 465, §§ 1, 8, 47 Stat. 650, 652 ............................. 9

Federal Firearms Act, ch. 850, § 2(f), 52 Stat. 1250................................. 9

75 Cong. Rec. 12754 (June 13, 1932) ..................................................... 9

*National Firearms Act: Hearings Before the Comm. on Ways & Means House of Representatives*, 73d Cong. 38 (1934) ................................................... 7

## State Legislative Materials

Cal. Penal Code § 26815(a)............................................................... 12

Cal. Penal Code § 27540(a)............................................................... 12

Law of Apr. 27, 1927, Act 206, §§ 4, 9, 1927 Haw. Laws 209, 211 ......... 9

Law of Apr. 27, 1927, ch. 326, §§ 2, 3, 1927 Mass. Laws 413, 414..........................9

Law of Apr. 6, 1936, No. 82, §§ 4, 8, 9, 1936 Ala. Laws 51, 52 ...............................9

Law of Feb. 26, 1925, ch. 260, § 10, 1925 Or. Laws 468........................................6

Law of June 11, 1931, No. 158, §§ 4, 9, 1931 Pa. Laws 497, 498-99 ......................8

Law of June 13, 1923, ch. 339, §§ 2, 10, 1923 Cal. Laws 695, 696 ..............5, 15, 17

Law of June 2, 1923, ch. 252, § 7, 1923 Conn. Laws 3707 .....................................6

Law of Mar. 12, 1925, ch. 207, § 9, 1925 Ind. Laws 495 ........................................6

Law of Mar. 12, 1925, ch. 64, § 4, 1925 N.J. Laws 185 ..........................................6

Law of Mar. 14, 1935, ch. 208, §§ 4, 8, 9, 1935 S.D. Laws 355, 356.......................9

Law of Mar. 23, 1935, ch. 172, §§ 4, 8, 9, 1935 Wash. Laws 599, 601 ...................9

Law of Mar. 30, 1927, ch. 321, § 6(4)(b), 1927 N.J. Laws 742 ................................6

Law of Mar. 7, 1923, ch. 266, § 10, 1923 N.D. Laws 379..................................6, 15

*3rd Report of Committee on a Uniform Act to Regulate the Sale & Possession of Firearms*, 36th Conference Handbook of the National Conference on Uniform State Laws & Proceedings of the Annual Meeting (1926).....................7

*Report of Committee on an Act to Regulate the Sale & Possession of Firearms*, 40th Conference Handbook of the National Conference on Uniform State Laws & Proceedings of the Annual Meeting (1930)............7, 8, 19

**Books and Articles**

Charles V. Imlay, *The Uniform Firearms Act*, 12 A.B.A. J. 767 (1926).....................6, 7

Carlton F. W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371 (2009)..................16

Jens Ludwig & Philip J. Cook, *Homicide & Suicide Rates Associated with Implementation of the Brady Handgun Violence Prevention Act*, 284 J. Am. Med. Ass'n 585 (2000).........................................................................................26

Ronald Reagan, *Why I'm for the Brady Bill*, N.Y. Times,
Mar. 29, 1991................................................................ 11, 12, 25, 27

Michael P. Romero & Garen J. Wintemute, *The Epidemiology of Firearm
Suicide in the United States*, 79 J. Urban Health 39 (2002) ...................... 26

Lawrence E. Rosenthal & Adam Winkler, *The Scope of Regulatory
Authority under the Second Amendment*, Reducing Gun Violence in
America (2013) ........................................................................... 16

*Sportsmen Fight Sullivan Law*, 23 J. Crim. L. & Criminology 665 (1932) .................. 10

William B. Swaney, *What Shall we do to Stop Crime?*, N.Y. Times
Current History, Sept. 1922 ............................................................... 5

*The Uniform Firearms Act*, 18 Va. L. Rev. 904 (1932) ................................. 10

Alan C. Webber, *Where the NRA Stands on Gun Legislation*, The American
Rifleman (Mar. 1968)............................................................. 4, 8, 11, 28

Adam Winkler, *Fatal in Theory & Strict in Fact: An Empirical Analysis of
Strict Scrutiny in the Federal Courts*, 59 Vand. L. Rev. 793, 862-63
(2006)...................................................................................... 22

Adam Winkler, *Gunfight: The Battle Over the Right to Bear Arms in America*
(2011)............................................................................. 11, 25, 27

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

Everytown for Gun Safety is the largest gun-violence-prevention organization in the country. It has more than 2.5 million supporters—everyday Americans, moms, survivors of gun violence, and more than 1,000 current and former mayors from across the nation, including the current mayors of more than 50 California cities. They are united in their understanding that respect for the Second Amendment can go hand-in-hand with common-sense gun laws.[1]

Everytown files this brief because the district court's decision threatens that understanding. Its reasoning, if upheld, would imperil a broad range of 20th-century gun laws deemed "presumptively lawful" in *District of Columbia v. Heller*—including federal "prohibitions on the possession of firearms by felons and the mentally ill" and laws "imposing conditions and qualifications on the commercial sale of arms." 554 U.S. 570, 626-27 & n.26 (2008). This brief highlights the flaws in the court's cramped historical analysis and its overzealous application of Second Amendment scrutiny. In particular, the brief provides this Court with a fuller history of California's waiting-period law, the model legislation from which it emerged, and the broad national consensus that developed around it in the years following its passage—a history that was overlooked by the district court.

---

[1] All parties consent to the filing of this brief, and no counsel for any party authored it in whole or part. Apart from *amicus curiae*, no person contributed money intended to fund the preparation and submission of the brief.

For nearly a century, California has required gun buyers to wait a short period of time before receiving their firearms. Although the period has varied—from one day (in 1923) to fifteen days (in 1975) to ten days today—its purpose has remained the same: to give law enforcement enough time to determine whether the buyer falls into a category prohibited from owning a gun (such as felons or the mentally ill), while creating a brief cooling-off period to reduce impulsive violence. California's waiting period originated in legislation containing one of the nation's earliest felon prohibitions—legislation written by the National Rifle Association's leaders and promoted by the NRA as model legislation for the states to enact, many of which did just that. As governor, Ronald Reagan extended the waiting period, and later, as president, cited its success in urging a national analogue. Today, fifteen states and the District of Columbia either have waiting periods or require permits to purchase that can take 10 days—or more—to issue.

Dismissing this consensus and tradition, the district court struck down California's waiting period as applied to those who (a) already possess a firearm, concealed-carry permit, or certificate of eligibility, and (b) pass the State's background check before the waiting period elapses. EOR 2. In reaching that conclusion—the first of its kind from any court—the district court made at least two fundamental errors, both of which independently require reversal.

*First*, the court misapplied the Supreme Court's decision in *Heller*, which struck down one of the most "severe restriction[s]" in "the history of our Nation" because it "amount[ed] to a destruction" of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 628-29, 635. *Heller* made clear, however, that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, . . . or laws imposing conditions and qualifications on the commercial sale of arms," which are "presumptively lawful." *Id.* at 626-27 & n.26.

California's law is a century-old commercial sales regulation that facilitates the prohibitions on felons and the mentally ill, but the district court refused to recognize it as "presumptively lawful." Instead, the court characterized it as neither "longstanding" (because "no statutes or regulations around 1791 or 1868" created waiting periods) nor a condition "on the commercial sale of arms" (because there are "no comparable commercial laws that apply to other goods"). EOR 42-44.

But gun laws "need not mirror limits that were on the books in 1791" or 1868 to qualify as presumptively lawful. *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc). To the contrary, the laws *Heller* itself identifies as "longstanding" and presumptively lawful are of the same "20th Century vintage" as California's law. *Id.* This Court recently made clear that *Heller* erases any doubt that "early twentieth century regulations" like California's law may "demonstrate a

history of longstanding regulation" even if they lack a "precise founding-era analogue." *Fyock v. Sunnyvale*, — F.3d —, 2015 WL 897747, *4 (9th Cir. Mar. 4, 2015). Because the challenged law imposes a condition on firearm sales to enforce categorical prohibitions originating in the very same statute, it is just as "longstanding" and "presumptively lawful" as those prohibitions.

Nor can the plaintiffs rebut that presumption. They already own firearms. Waiting a week to add another gun to their arsenals is a de minimis burden, at best. The Constitution speaks of a "right to keep and bear arms"—not a guarantee of the ability to instantaneously stockpile an unlimited cache of lethal weapons.

*Second*, even assuming some Second Amendment scrutiny were appropriate, the district court erred by insisting, in effect, on the least restrictive means. "[I]ntermediate scrutiny does not require the least restrictive means of furthering a given end," but only that the law be "substantially related" to that end—a hurdle this law easily clears. *Jackson v. San Francisco*, 746 F.3d 953, 969 (9th Cir. 2014). Nor does the law burden the right "substantially more" than necessary. *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 185 (1997). As an NRA official observed when the group backed a seven-day waiting period, such laws have "not proved to be an undue burden on the shooter and sportsman." Webber, *Where the NRA Stands on Gun Legislation*, The American Rifleman, at 22 (Mar. 1968).

**STATEMENT**

**1. *California adopts its waiting period alongside one of the earliest prohibitions on firearm possession by felons.*** California first enacted its waiting-period law almost a hundred years ago, in 1923, as part of a broader effort to regulate firearms in this country. At the time, "more than 9,500 unlawful homicides" occurred every year in the U.S., 90% of which were committed with firearms—"worse than that in any other civilized country." Report of the Special Commission on Law Enforcement, *in* Swaney, *What Shall we do to Stop Crime?*, N.Y. Times Current History, Sept. 1922, at 924.

California's law did two things relevant to this case: First, it prohibited convicted felons from owning or possessing a firearm and imposed a corresponding restriction on selling them a gun. Law of June 13, 1923, ch. 339, §§ 2, 10, 1923 Cal. Laws 695, 696. Second, it required a one-day waiting period before consummating the sale of any firearm, and prescribed instructions for delivery of the firearm after the waiting period ended. *Id.* § 10. This second provision facilitated the first, and the legislature put the waiting-period requirement right next to the ban on sales to felons, in the first two sentences of the same section. *Id.*

**2. *California's law is part of a national trend, modeled on legislation drafted by the NRA's leaders.*** California was not the only state to enact these provisions during this time. Earlier that same year, North Dakota

prohibited sales to felons and created a one-day waiting period, while making the link between the two even more pronounced: North Dakota placed the requirements in the same sentence, under a section entitled "Sales Regulated." Law of Mar. 7, 1923, ch. 266, § 10, 1923 N.D. Laws 379, 381. A few months later, Connecticut imposed a one-day waiting period on all handgun sales. Law of June 2, 1923, ch. 252, § 7, 1923 Conn. Laws 3707, 3708. And in 1925, two more states—Oregon and Indiana—enacted one-day waiting periods and banned sales to felons in nearly identical provisions. *See* Law of Feb. 26, 1925, ch. 260, § 10, 1925 Or. Laws 468, 473; Law of Mar. 12, 1925, ch. 207, § 9, 1925 Ind. Laws 495, 497.[2]

That these laws were nearly identical was no coincidence: they were all proposed and advocated by the U.S. Revolver Association, a "non-commercial organization of amateur experts in the use of revolvers," which had spent several years urging states to adopt uniform firearm legislation to combat the growing wave of violence (and as an alternative to stricter laws like New York's Sullivan Act, which required a permit to possess a firearm). Imlay, *The Uniform Firearms Act*, 12 A.B.A. J. 767, 767 (1926). The NRA's president, Karl T. Frederick, was "one of

---

[2] Another state, New Jersey, enacted a 24-hour waiting period that same year. Law of Mar. 12, 1925, ch. 64, § 4, 1925 N.J. Laws 185, 188. Two years later, New Jersey extended its waiting period to seven days. Law of Mar. 30, 1927, ch. 321, § 6(4)(b), 1927 N.J. Laws 742, 745.

the draftsmen." *3rd Report of Comm. on Uniform Act to Regulate the Sale & Possession of Firearms*, Nat'l Conf. on Uniform State Laws 573 (1926) (*1926 Conference Report*).

California's law "follow[ed] the Revolver Association Act very closely," and North Dakota and Indiana adopted it "practically verbatim." Imlay, *Uniform Firearms Act*, 12 A.B.A. J. at 767. As Mr. Frederick explained in his testimony to Congress in 1934, the law that "was first drafted by me about 14 years ago . . . has been the law in California for many years." *National Firearms Act: Hearings Before the Comm. on Ways & Means*, 73d Cong. 38, 39 (1934).

**3. *Uniform legislation is developed, as more states enact waiting periods.*** Around the time that California enacted its waiting-period law, the National Conference of Commissioners on Uniform State Laws took up firearms legislation. In 1926, the Conference selected the Revolver Association Act "as the model of the draft of the Uniform Act," because it had "already gained ground" in the states. *Report of Comm. on Act to Regulate the Sale & Possession of Firearms*, Nat'l Conf. on Uniform State Laws 569 (1930) (*1930 Conference Report*). The Conference expressed its belief that "the provisions of the proposed law present no constitutional obstacles" and "constitute no radical changes in existing laws." *1926 Conference Report* at 574. The Conference explained that the waiting period was "intended to avoid the sale of a firearm to a person in a fit of passion." *Id.* at 582-83.

Four years later, in 1930, the Conference revised the law slightly, and the ABA again approved. *Id.* at 568. This law extended the waiting period to 48 hours and the sales prohibition to "drug addict[s]," "habitual drunkard[s]," and those of "unsound mind." *Id.* at 565. In doing so, the act "adopt[ed] the principle of a strict regulation of the sale and purchase of pistols" to keep "weapons out of the hand of criminals and other prohibited classes," while also subscribing to "the theory that the securing of a pistol by a householder as a legitimate means of defense should not be made difficult." *Id.* at 570. The NRA's Frederick was a "special consultant" to the Conference, and helped "frame" the 1930 law. Webber, *Where the NRA Stands*, at 22; *see also 1926 Conference Report* at 573 (noting that Frederick likewise "considered with the chairman all the points covered" in the 1926 version).

To the Conference, the uniform firearms act "embodie[d] sane forms of regulation which have stood the test of experience in this country," yet also reflected some of the "new ideas [that] ha[d] been presented from time to time. Thus, at the same time that it preserves the traditional methods of firearms regulation, it takes advantage of enlightened experience of recent years." *1930 Conference Report* at 532. Over the next few years, four additional states passed laws with 48-hour waiting periods and violent-criminal prohibitions: Pennsylvania, South Dakota, Washington, and Alabama. *See* Law of June 11, 1931, No. 158, §§ 4, 9, 1931 Pa. Laws 497, 498-99; Law of Mar. 14, 1935, ch. 208, §§ 4, 8, 9, 1935 S.D.

Laws 355, 356; Law of Mar. 23, 1935, ch. 172, §§ 4, 8, 9, 1935 Wash. Laws 599, 601; Law of Apr. 6, 1936, No. 82, §§ 4, 8, 9, 1936 Ala. Laws 51, 52.[3]

**4.** ***Congress enacts a waiting period for Washington, DC.*** In 1932, Congress enacted a nearly identical version of the uniform act for the District of Columbia, including the 48-hour waiting period and violent-criminal prohibition. Act of July 8, 1932, ch. 465, §§ 1, 8, 47 Stat. 650, 652. The legislation's sponsor, Senator Arthur Capper (R-KS), remarked on the Senate floor that the law had "the very strong approval of the police department of the District of Columbia, of the District Commissioners, and of the civic organizations." 75 Cong. Rec. 12754 (June 13, 1932). And although the waiting period required that a firearm "sale would not be consummated until 48 hours after the application was made," he explained, "[t]he right of an individual to possess a pistol in his home or on land belonging to him would not be disturbed by the bill." *Id.*[4]

---

[3] Hawaii enacted a one-day waiting period and a violent-criminal prohibition in 1927. Law of Apr. 27, 1927, Act 206, §§ 4, 9, 1927 Haw. Laws 209, 211. On the same day, Massachusetts enacted a one-day waiting period, while providing that felons could not receive a license to carry. Law of Apr. 27, 1927, ch. 326, §§ 2, 3, 1927 Mass. Laws 413, 414.

[4] Congress didn't enact "[t]he first federal statute disqualifying felons from possessing firearms" until 1938, and it "covered only a few violent offenses." *Skoien*, 614 F.3d at 640 (citing Federal Firearms Act, ch. 850, § 2(f), 52 Stat. 1250, 1251). It wasn't until the 1960s that Congress extended the ban to all felons. *Id.* (citing 18 U.S.C. § 922(g)(1)).

**5. *The NRA urges enactment of legislation with a waiting period.***

Later that same year, the NRA held its annual meeting in New York City, during which the "main order of business" was to urge the State of New York to replace the Sullivan Act with the less strict uniform act, under which "the applicant for pistol files an application with a firearms dealer and forty-eight hours later receives the pistol for home use, providing the police investigation that has been made in the meantime shows him to have a clean record as an upright citizen." *Sportsmen Fight Sullivan Law*, 23 J. Crim. L. & Criminology 665, 665 (1932). Although New York's legislature had passed the act earlier that year, Governor Franklin Roosevelt vetoed it; in his view, the uniform act did not go far enough to regulate firearms. *The Uniform Firearms Act*, 18 Va. L. Rev. 904, 904 & n.1 (1932).

**6. *As broad consensus develops, California's waiting period is extended.*** Over time, California extended its waiting period to three days (in 1956) and then five days (in 1965) to ensure that law enforcement had enough time to "investigate the purchaser's record, before he actually acquires the firearm, to determine whether he falls within the class of persons prohibited from possessing concealed firearms." EOR 18, 243; *see also* EOR 250 (letter from assemblyman explaining that law enforcement "fe[lt] that the three day waiting period [was] not enough, in all cases, for them to run an adequate record check of the person seeking to purchase a concealable weapon"); *People v. Bickston*, 91 Cal. App. 3d 29,

32 (Ct. App. 1979) (citing "legislative hearing records" showing that California's "Department of Justice needed more time to identify prospective purchasers," while the law also sought "to cool people off" and reduce impulsive violence).

These extensions were not controversial. By this point, even the NRA supported federal legislation that would have "requir[ed] an additional 7-day waiting period by the seller after receipt of acknowledgement of notification to local police." Webber, *Where the NRA Stands*, at 23; *see also* Winkler, *Gunfight* 70 (2011) ("In the 1960s, the NRA endorsed a . . . seven-day waiting period to enable background checks on handgun purchasers."). An NRA pamphlet from the 1970s also noted that a "waiting period could help in reducing crimes of passion in preventing people with criminal records or dangerous mental illness from acquiring guns." *Id.* And NRA Secretary Frank C. Daniel recognized that waiting-period laws have "not proved to be an undue burden on the shooter and sportsman," and "adequately protect[] citizens of good character." Webber, *Where the NRA Stands*, at 23.

**7. *Governor Ronald Reagan signs into law a 15-day waiting period for California and later, as president, touts its lifesaving success in urging a federal analogue.*** California Governor Ronald Reagan shared this view. In 1975, he "supported and signed into law" a 15-day waiting period for California. Ronald Reagan, *Why I'm for the Brady Bill*, N.Y. Times, Mar. 29, 1991,

*available at* http://nyti.ms/1ktoY3u. In his view, the five-day waiting period did not give law enforcement enough time "to thoroughly check all records of the purchasers" before delivery. EOR 19.

Sixteen years later, when President Reagan announced his support for "a national seven-day waiting period"—which he believed was needed to provide an "enforcement mechanism" for the federal prohibition on sales to "felons, fugitives, drug addicts[,] and the mentally ill"—he emphasized that California's 15-day waiting period had "stopped nearly 1,800 prohibited handgun sales in 1989" alone. Reagan, *Why I'm for the Brady Bill*. Moreover, President Reagan explained, "since many handguns are acquired in the heat of passion (to settle a quarrel, for example) or at times of depression brought on by potential suicide," requiring a purchaser to wait a week or two before receiving the firearm provides "a cooling-off period" that has "the effect of reducing the number of handgun deaths." *Id.*[5]

California has since reduced its waiting period to ten days, because the Bureau of Firearms can conduct background checks more quickly using an electronic database. *See* Cal. Penal Code §§ 26815(a) & 27540(a).

---

[5] In 1993, Congress enacted the Brady Act, which among other things required a gun dealer to "wait five business days before consummating [a] sale." *Printz v. United States*, 521 U.S. 898, 903 (1997) (citing 18 U.S.C. § 922(s)(1)(A)(ii)). This five-day waiting period (apparently unconstitutional by the district court's lights) lapsed in 1998.

**ARGUMENT**

This Court follows a two-step inquiry to determine the constitutionality of a gun law: (1) Does the law burden protected Second Amendment conduct? (2) And, if so, does it satisfy the appropriate level of scrutiny? *Jackson*, 746 F.3d at 960. The district court erred at both steps. California's waiting period qualifies as one of the "presumptively lawful regulatory measures" identified by the Supreme Court in *Heller*, 554 U.S. at 626-27 & n.26, and imposes no more than a de minimis burden on protected conduct—at least as applied to those who already own a firearm. That should end the inquiry. But even if it didn't, the law would easily survive intermediate scrutiny because the ten-day waiting period is reasonably aimed at reducing impulsive acts of violence by providing a short cooling-off period, and allowing law enforcement enough time to conduct a background check and investigate straw purchases.

## I. California's ten-day waiting period is a presumptively lawful regulation, and the district court's contrary conclusion resulted from an erroneously cramped historical analysis.

*Heller* held that several types of laws—including "prohibitions on the possession of firearms by felons and the mentally ill" and "laws imposing conditions and qualifications on the commercial sale of arms"—are presumed not to violate the Second Amendment because of their longstanding acceptance as consistent with its protections. 554 U.S. at 626-27 & n.26. Thus, "[t]o determine whether a

challenged law falls outside the historical scope of the Second Amendment, [this Court] ask[s] whether the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*." *Jackson*, 746 F.3d at 960; *see also Fyock*, 2015 WL 897747, *4 (explaining that *Heller*'s "longstanding prohibitions . . . fall outside of the Second Amendment's scope"); *United States v. Vongxay*, 594 F.3d 1111, 1115, 1117 (9th Cir. 2009). California's waiting period is as longstanding (and thus as presumptively lawful) as the regulations *Heller* identified. Indeed, it was adopted in the same section of the same statute that enacted California's first felon prohibition.

Yet the district court held that the law—despite being on the books for nearly a century—is not a "longstanding regulatory measure" and doesn't impose a "condition [or] qualification on the commercial sale of a firearm." EOR 42. That is doubly wrong: The law is "longstanding" under *Heller* and this Court's case law. And it clearly imposes a condition on commercial sales—a condition designed to facilitate equally longstanding laws prohibiting possession by felons and the mentally ill. It is therefore presumptively constitutional, and the plaintiffs cannot overcome the presumption here.

## A.    California's waiting-period law is "longstanding."

The district court reasoned that the law is not "longstanding" because there are "no statutes or regulations around 1791 or 1868 that imposed waiting periods between the time of purchase and the time of delivery." EOR 42-44. But as Judge

Easterbrook has explained, gun laws "need not mirror limits that were on the books in 1791" (or for that matter, 1868) to qualify as longstanding under *Heller*. *Skoien*, 614 F.3d at 641; *see also United States v. Bena*, 664 F.3d 1180, 1182 (8th Cir. 2011) (same); *United States v. Booker*, 644 F.3d 12, 23 (1st Cir. 2011) ("[T]he legislative role did not end in 1791."). This Court recently held the same. Just last month, it made clear that "early twentieth century regulations"—like the one at issue here—may "demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record." *Fyock*, 2015 WL 897747, at *4.

Any other rule would conflict with *Heller*, which deemed certain laws "longstanding" even though they lacked a "precise founding-era analogue." *Id.* (internal quotation marks omitted). The first felon prohibitions in state law, for example, arose in the early 20th century (in the same laws creating the first waiting periods). *See, e.g.*, 1923 Cal. Laws 695, 696, 701, §§ 2, 10; 1923 N.D. Laws 379, 380-81, §§ 5, 10. And "[t]he first federal statute disqualifying felons from possessing firearms was not enacted until 1938," while "the ban on possession by *all* felons was not enacted until 1961." *Skoien*, 614 at 640; *see also Booker*, 644 F.3d at 23-24 ("[T]he modern federal felony firearm disqualification law . . . is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified."). With few exceptions, "legal limits on the

possession of firearms by the mentally ill also are of 20th Century vintage." *Skoien*, 614 at 641.

As for "laws imposing conditions and qualifications on the commercial sale of arms," *Heller*, 554 U.S. at 626-27, they too are without a Founding- or Reconstruction-Era pedigree. One scholar surveyed the landscape and was "unable to identify any eighteenth-century American laws that specifically regulate commercial aspects of firearms sales." Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1379 (2009). It was not until 1927—four years after California enacted its waiting period—that "federal commercial regulation of firearms began." *Id.*

Yet all these laws are "presumptively constitutional, as *Heller* said in note 26." *Skoien*, 614 F.3d at 640; *see also NRA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid-20th century vintage."). Thus, "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *Id.*; *see also* Rosenthal & Winkler, *The Scope of Regulatory Authority under the Second Amendment*, Reducing Gun Violence in America 228 (2013) ("[I]n determining the scope of the Second Amendment right," courts have "conclude[d] that legislatures

are not limited to framing-era regulations" because "the laws characterized as presumptively valid in *Heller* . . . did not exist at the time of ratification.").[6]

So the constitutional question is not, as the district court wrongly thought, whether there were any "waiting period laws in any states during the time periods around 1791 and 1868." EOR 43. Instead, it is whether California's waiting-period law is "longstanding" within the meaning of *Heller*. It is.

California's law was originally enacted in 1923, as part of the first wave of laws creating waiting periods in this country. All told, a dozen states enacted waiting periods in the 1920s and 30s consistent with the Uniform Law Commission's model legislation, and Congress enacted a waiting period for the District of Columbia. There was such consensus about these waiting periods that even the NRA advocated their adoption for the first three-quarters of the 20th century. Many waiting periods, moreover, arose in the same laws containing some of the earliest felon prohibitions—including California's. 1923 Cal. Laws 695, 696, 701, §§ 2, 10. How can one part be longstanding, but not another? Given this "historical prevalence," California's law is a "longstanding" regulation under *Heller*.

---

[6] First Amendment doctrine bolsters this conclusion. It has "long had categorical limits" that "are not restricted to those recognized in 1791." *Skoien*, 614 F.3d at 641. Child pornography, for example, is unprotected "even though the materials do not meet the historical definition of obscenity." *Id.* Another example is "speech as part of a public employee's job," held in 2006 to be "categorically outside the First Amendment." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

*Fyock*, 2015 WL 897747, at *4; *see also Dearth v. Holder*, 893 F. Supp. 2d 59, 66 (D.D.C. 2012) (Wilkins, J.) (holding that a 1968 federal law was "longstanding" under *Heller* in part because its state-law analogues dated to 1909).

### B. California's waiting-period law regulates the "commercial sale of arms."

The district court also determined that "it is not clear to the Court that a 10-day waiting period would qualify as a commercial regulation" because California "cite[d] no comparable commercial laws that apply to other goods and that require an individual to wait around 10-days [*sic*] before completing a purchase." EOR 43. There can be no serious debate, however, that California's waiting-period law "impos[es] conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. It regulates the transfer of a firearm in a *sale*—and thus regulates when the sale is consummated. And it does so to help law enforcement determine whether the buyer may lawfully purchase the gun, which the district court recognized is a form of commercial regulation. EOR 43. That means that the waiting period imposes a condition on the sale of firearms, regardless of whether other laws impose similar conditions on the sale of other products. *See Dearth*, 893 F. Supp. 2d at 66 (holding that federal law prohibiting non-residents from receiving arms from unlicensed dealers "pertain[s] to the transfer or sale of firearms, rather than the mere possession of firearms," and thus "impos[es] conditions and qualifications on the commercial sale of arms"). Lest there be any doubt, the very

section in which the waiting period appears in the 1930 model act is entitled "Sales Regulated." *1930 Conference Report* at 565.

Because California's waiting-period law is a longstanding commercial regulation—and because it has been directly connected, from its inception, with facilitating "longstanding prohibitions on the possession of firearms by felons and the mentally ill"—the law is "presumptively lawful" under *Heller*, 554 U.S. at 626.

## C.  Any burden imposed by California's law is de minimis.

Even if this Court were to consider, as some courts have, whether the plaintiffs "may rebut this presumption" by establishing that the law has "more than a de minimis effect" on their rights, the plaintiffs could not make that showing here. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). The Supreme Court in *Heller* held that the core of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. This case is an as-applied challenge to a waiting period brought by people who already own firearms. Any burden imposed by the ten-day wait is thus exceedingly slight: The law does not block the plaintiffs' right to defend themselves in their homes for *any* period of time; instead, it simply delays their ability to supplement their existing arsenals by a little more than a week. Because the United States Constitution contains no guarantee of a right to instantaneously

purchase an unlimited quantity of lethal weapons, any burden imposed on the plaintiffs is de minimis.

Holding otherwise, the district court reasoned that the plaintiffs' ability "to exercise their Second Amendment right with respect to at least one firearm does not mean that they have diminished rights under the Second Amendment." EOR 42 n.33. But the point is not that they have diminished *rights*; it's that the *burden* imposed on their rights is diminished because they already own firearms to defend themselves, so the short period of time they have to wait to acquire additional firearms poses no serious infringement. And any burden is further diminished by the fact that the plaintiffs in this case "do not argue that they should be exempt from a background check[,] nor do they argue that the background check is unconstitutional," but instead complain only that they should not be required to wait the extra time after the background check is completed (often just a day or two because the vast majority of applications require a manual review). EOR 8, 29-30, 45. At least as applied to those who already own firearms, that is at most a de minimis burden.

## II. Even if California's waiting-period law were not presumptively lawful, it would easily pass muster under intermediate scrutiny.

### A. The district court misapplied intermediate scrutiny.

Erroneously proceeding to step two of the inquiry, the district court purported to "examine the waiting period laws under intermediate scrutiny," EOR

44, a standard that requires a "reasonable fit" between the challenged regulation and an important state interest. *Jackson*, 746 F.3d at 965. The court recognized that "California has important interests in public safety/preventing gun violence and preventing prohibited individuals from obtaining firearms," yet held that the law is not a "reasonable fit" with any of those interests as applied to people who already own firearms and who pass a background check before the waiting period is over. EOR 44-54. Under that holding, California would be required to transfer firearms to those people immediately upon completion of the background check—in other words, to adopt the least restrictive means to achieve the State's public-safety goals.

But "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Jackson*, 746 F.3d at 969. It requires only that the law be "substantially related" to an important state interest, thus allowing governments "a reasonable opportunity to experiment with solutions to admittedly serious problems"—an especially important concern in the Second Amendment context because of the devastating effects of firearm violence. *Id.* at 969-70. Put differently, under intermediate scrutiny, "the State must show a fit that is *reasonable*, not perfect." *Woollard v. Gallagher*, 712 F.3d 865, 878 (4th Cir. 2013) (emphasis added, internal quotation marks omitted). And, to determine whether the fit is reasonable, the law "ha[s] to be evaluated in the context of the entire regulatory scheme." *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 192-193 (1999).

The district court, however, focused exclusively on whether the law serves its purposes only as to certain narrow categories of people, while ignoring whether it does so in general. *See* EOR 45. But if intermediate scrutiny is to mean anything—if it truly allows the State leeway in writing legislation to solve pressing societal problems—then courts may not insist on exceptions that would eliminate that leeway under the guise of intermediate scrutiny. To do so is to demand the least restrictive means, and thus to impermissibly bootstrap strict scrutiny into the inquiry.[7]

This Court has recognized as much in the First Amendment context, which "bears strong analogies" to the question here. *Jackson*, 746 F.3d at 960. Challenges to commercial-speech restrictions, for example, have traditionally been subject to intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). Those challenges, this Court has repeatedly emphasized, are "*not* focused on the particular plaintiff; instead, the Court must look at" whether the law advances the State's interest "in its *general* application, not specifically with respect

---

[7] Strict scrutiny is inapplicable. As applied to those with firearms, the law "does not impose the sort of severe burden" that might justify strict scrutiny. *Jackson*, 746 F.3d at 964. And applying strict scrutiny to *Heller*'s "presumptively lawful" categories would render them meaningless; strict scrutiny is "'strict' in theory but usually 'fatal' in fact." *Bernal v. Fainer*, 467 U.S. 216, 219 n.6 (1984); *see* Winkler, *Fatal in Theory & Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 Vand. L. Rev. 793, 862-63 (2006) (under strict scrutiny, courts strike down about 70% of laws).

to a particular speaker." *Vanguard Outdoor v. City of Los Angeles*, 648 F.3d 737, 743 (9th Cir. 2011) (emphasis added, internal quotation marks omitted). That is because, when assessing whether the law's fit is reasonable, "[i]t is readily apparent that this question cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009).

Thus, although the district court purported to apply intermediate scrutiny, it erred by failing to "look at whether the [law] advances its interest in its general application, not specifically with respect to [the plaintiffs]." *Id.* When the law is assessed under the proper standard, there can be little doubt that it satisfies intermediate scrutiny.

## B. California's law easily satisfies intermediate scrutiny, properly applied.

California has asserted that its waiting-period law serves three important state interests: (1) allowing law enforcement enough time to complete a thorough background check to ensure that the prospective purchaser may lawfully possess the firearm before receiving it; (2) providing a cooling-off period to prevent impulsive acts of violence more easily committed with a firearm; and (3) giving law enforcement the opportunity to investigate straw purchases before they are completed. EOR 45. Although the State need only show a reasonable fit with one

of these important interests, the ten-day waiting period is "substantially related" to all three. *Jackson*, 746 F.3d at 966.

**1. *Background Checks*.** The district court found that the vast majority of applications to purchase firearms (80%) are not automatically approved, and thus "further review, analysis, and/or investigation is necessary to determine if a person is prohibited from possessing a firearm." EOR 46. This manual review is frequently not completed until the very end of the ten-day period. EOR 30. Because the plaintiffs deny neither that background checks help keep firearms out of the hands of people barred from possessing them nor that this serves an important state interest, the only question is whether California's legislature reasonably concluded that a ten-day period was necessary to facilitate this process.

As detailed in the Attorney General's brief, the State sensibly concluded that ten days were necessary because (a) the manual-review process can take several days or more given that "many records have gaps and/or mistakes," and (b) this process often cannot begin right away because of the extraordinary number of applications received every year. AG Br. 11. California's elected leaders were entitled to draw these "reasonable conclusions." *Jackson*, 746 F.3d at 969.

Intermediate scrutiny does not require the State to put forward proof that its aims are always achieved; the State instead "may rely on any evidence reasonably believed to be relevant" in making policy to achieve important interests. *Id.* But

experience shows that California's waiting period has in fact been effective. As President Reagan noted in announcing his support for "a national seven-day waiting period," California's 15-day waiting period "stopped nearly 1,800 prohibited handgun sales in 1989" alone, by "allow[ing] local law enforcement officials to do background checks for criminal records or known histories of mental disturbances" before the purchaser received the gun. Reagan, *Why I'm for the Brady Bill*.

Without a waiting period, President Reagan stressed, the categorical prohibitions on sales to "felons, fugitives, drug addicts[,] and the mentally ill" have "no enforcement mechanism and basically work[] on the honor system, with the purchaser filling out a statement that the gun dealer sticks in a drawer." *Id.* The waiting period gives teeth to these important prohibitions, and in doing so—as the NRA informed its members in the 1970s—helps prevent "people with criminal records or dangerous mental illness from acquiring guns." Winkler, *Gunfight* 70.

**2. *Cooling Off*.** The law also reasonably advances California's second asserted interest: providing a cooling-off period to prevent suicides and crimes of passion. There is ample evidence, as the Attorney General points out, "that people who purchase firearms are at a high risk of committing suicide-by-firearm in the first week after purchase." AG Br. 13. By requiring prospective gun buyers to wait ten days, California's legislature "reasonably believed" that it would reduce the

number of avoidable suicides in the State, which in turn would benefit public safety. *Jackson*, 746 F.3d at 969. The importance of that interest cannot be overstated. Firearms account for as many as 57% of all suicides in the United States, and "alternative means of suicide are less likely to be fatal." Romero & Wintemute, *The Epidemiology of Firearm Suicide in the United States*, 79 J. Urban Health 39, 47 (2002). More than 90% of all suicide attempts with a firearm, if serious enough to require hospital treatment, result in death; suicide attempts by drug poisoning, by comparison, carry only a 2% fatality rate.[8]

Reducing the impulsive use of firearms is thus an eminently reasonable policy determination that is "fairly support[ed]" by the evidence (which need not be conclusive to uphold the law). *Jackson*, 746 F.3d at 969. Indeed, a rigorous empirical study revealed a high correlation between state waiting-period laws and a reduction in suicides by older Americans, the demographic group most likely to commit suicide with a firearm. "This reduction in suicides . . . was much stronger in states that had instituted both waiting periods and background checks . . . than in states that only changed background check requirements." Ludwig & Cook, *Homicide & Suicide Rates Associated with Implementation of the Brady Handgun Violence Prevention Act*, 284 J. Am. Med. Ass'n 585, 585 (2000), *also at* EOR 254.

---

[8] *See* U.S. Centers for Disease Control & Prevention, Injury Statistics Query & Reporting System, http://1.usa.gov/1ni8EV8.

For the better part of the 20th century, this rationale was uncontroversial. As late as the 1970s, the NRA supported a weeklong waiting period for precisely this reason, explaining that laws like California's "help in reducing crimes of passion." Winkler, *Gunfight* 70. This was also a basis for President Reagan's support of a national waiting period. Drawing on California's long experience, Reagan understood that "since many handguns are acquired in the heat of passion (to settle a quarrel, for example) or at times of depression brought on by potential suicide," requiring a purchaser to wait a week or two before receiving the firearm provides "a cooling-off period" that has "the effect of reducing the number of handgun deaths." Reagan, *Why I'm for the Brady Bill*.

**3. *Straw Purchases*.** Finally, California's law helps reduce straw purchases—that is, purchases made by one person on behalf of another prohibited purchaser. Without the ten-day waiting period, according to the trial testimony of an official at California's Bureau of Firearms, "many more straw purchases would be completed, and the firearms would have to be retrieved from the prohibited (and, likely, dangerous) people." AG Br. 12. To prevent this result and ensure sufficient time to investigate such purchases—which may include "review[ing] paperwork at gun shops" and "observ[ing] behavior and interactions at gun shows," EOR 49—California reasonably decided to impose a ten-day waiting period. This Court should not disturb that considered legislative judgment.

*  *  *  *

In holding that California's waiting period fails intermediate scrutiny, the district court also implicitly concluded that the law burdens Second Amendment conduct "substantially more" than necessary to further the State's interest. *See Turner*, 520 U.S. at 185; EOR 41. But, particularly as applied to those who already own firearms, any burden imposed by a ten-day waiting period is *not* substantial. As the historical record laid out here demonstrates, California's waiting period is a longstanding regulation of the type deemed presumptively lawful by the Supreme Court in *Heller*. And for the first three-quarters of the 20th century, it was a law with a broad national consensus behind it: even the nation's leading gun-rights organization recognized that waiting periods "adequately protect[] citizens of good character" and have "not proved to be an undue burden on the shooter and sportsman." Webber, *Where the NRA Stands*, at 23. Because that recognition remains as true today as it was then—especially as applied to those who already have access to guns for self-defense—California's waiting period does not violate the Second Amendment.

**CONCLUSION**

The district court's judgment should be reversed in its entirety.

Respectfully submitted,

/s/ Deepak Gupta

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741

April 1, 2015

*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

I hereby certify that my word processing program, Microsoft Word, counted 6,913 words in the foregoing brief, exclusive of the portions excluded by Rule 32(a)(7)(B)(iii).

/s/ Deepak Gupta

April 1, 2015

Deepak Gupta

# Appendix of Historical Statutes and Materials

## Historical State Statutes

1923 Cal. Laws 695 ..................................................................................... App. 1

1923 Conn. Laws 3707 ............................................................................... App. 9

1923 N.D. Laws 379 .................................................................................. App. 13

1925 Ind. Laws 495.................................................................................... App. 18

1925 N.J. Laws 185.................................................................................... App. 25

1925 Or. Laws 468 .................................................................................... App. 30

1927 Haw. Laws 209 ................................................................................. App. 38

1927 Mass. Laws 413 ................................................................................ App. 47

1927 N.J. Laws 742.................................................................................... App. 51

1931 Pa. Laws 497 ..................................................................................... App. 60

1935 S.D. Laws 355 ................................................................................... App. 66

1935 Wash. Laws 599 ............................................................................... App. 70

1936 Ala. Laws 51 ..................................................................................... App. 76

## History of Uniform State Legislation

*3rd Report of Committee on a Uniform Act to Regulate the Sale & Possession of Firearms*, 36th Conference Handbook of the National Conference on Uniform State Laws & Proceedings of the Annual Meeting (1926)............... App. 80

*Report of Committee on an Act to Regulate the Sale & Possession of Firearms*, 40th Conference Handbook of the National Conference on Uniform State Laws & Proceedings of the Annual Meeting (1930)............................. App. 94

Charles V. Imlay, *The Uniform Firearms Act*, 12 A.B.A. J. 767 (1926)............ App. 139

## Federal Legislative History

Act of July 8, 1932, ch. 465, 47 Stat. 650 ..................................................... App. 142

75 Cong. Rec. 12754 (June 13, 1932)........................................................... App. 147

*Hearing on the National Firearms Act,* 73d Cong. 38 (1934)............................... App. 149

## Other Historical Materials

Alan C. Webber, *Where the NRA Stands on Gun Legislation*, The American Rifleman (Mar. 1968)....................................................................................... App. 154

*Sportsmen Fight Sullivan Law*, 23 J. Crim. L. & Criminology 665 (1932) ........ App. 156

treasurer or the inheritance tax appraiser of the county of the superior court having jurisdiction as provided in section fifteen of this act.

(6) This act shall become effective and in force contemporaneously with the taking effect of amendments to sections one thousand four hundred one and one thousand four hundred two of the Civil Code, which amendments were enacted at the forty-fifth session of the legislature of the State of California and known as chapter eighteen of the statutes of 1923, and not otherwise.

*Act takes effect.*

---

## CHAPTER 338.

*An act to add a new section to the Civil Code to be numbered three thousand fifty-one a, fixing a limit on the amount of a lien on property held under the provisions of section three thousand fifty-one of said code.*

[Approved June 13, 1923.]

*The people of the State of California do enact as follows:*

SECTION 1. A new section is hereby added to the Civil Code to be numbered three thousand fifty-one *a* and to read as follows:

3051*a*. That portion of any lien, as provided for in the next preceding section, in excess of one hundred dollars, for any work, services, care, or safekeeping rendered or performed at the request of any person other than the holder of the legal title, shall be invalid, unless prior to commencing any such work, service, care, or safekeeping, the person claiming such lien shall give actual notice in writing either by personal service or by registered letter addressed to the holder of the legal title to such property, if known. In the case of automobiles, the person named as legal owner in the registration certificate, shall be deemed for the purpose of this section, as the holder of the legal title.

*Limitation on amount recoverable where written notice not given.*

---

## CHAPTER 339.

*An act to control and regulate the possession, sale and use of pistols, revolvers and other firearms capable of being concealed upon the person; to prohibit the manufacture, sale, possession or carrying of certain other dangerous weapons within this state; to provide for registering all sales of pistols, revolvers or other firearms capable of being concealed upon the person; to prohibit the carrying of concealed firearms except by lawfully authorized persons; to provide for the confiscation and destruction of such weapons in certain cases; to prohibit the ownership, use, or possession of any of such weapons by certain classes of persons; to prescribe penalties for violations of this act and increased penalties for repeated violations hereof; to*

*authorize, in proper cases, the granting of licenses or permits to carry firearms concealed upon the person; to provide for licensing retail dealers in such firearms and regulating sales thereunder; and to repeal chapter one hundred forty-five of California statutes of 1917, relating to the same subject.*

[Approved June 13, 1923.]

*The people of the State of California do enact as follows:*

**Manufacture, sale, carrying, etc., certain dangerous weapons prohibited.**

SECTION 1. On and after the date upon which this act takes effect, every person who within the State of California manufactures or causes to be manufactured, or who imports into the state, or who keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition, or who carries concealed upon his person any dirk or dagger, shall be guilty of a felony and upon a conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

**Aliens and felons must not possess certain firearms.**

SEC. 2. On and after the date upon which this act takes effect, no unnaturalized foreign born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person" as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

**Committing felony while carrying dangerous weapon.**

SEC. 3. If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor for more than ten years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence. Upon a second conviction under like circumstances such additional period of impris-

onment shall be for not less than ten years nor for more than
fifteen years, and upon a third conviction under like circum-
stances such additional period of imprisonment shall be for
not less than fifteen nor for more than twenty-five years, such
terms of additional imprisonment to run consecutively as
before. Upon a fourth or subsequent conviction under like
circumstances the person so convicted may be imprisoned for
life or for a term of years not less than twenty-five years,
within the discretion of the court wherein such fourth or
subsequent conviction was had.

In the trial of a person charged with committing or attempt- Evidence.
ing to commit a felony against the person of another while
armed with any of the weapons mentioned in section one
hereof, or while armed with any pistol, revolver or other fire-
arm capable of being concealed upon the person, without hav-
ing a license or permit to carry such firearm as hereinafter
provided, the fact that he was so armed shall be prima facie
evidence of his intent to commit such felony.

SEC. 4.   In no case shall any person punishable under the No probation
preceding sections of this act be granted probation by the or suspension
trial court, nor shall the execution of the sentence imposed of sentence
upon such person be suspended by the court.

SEC. 5.   Except as otherwise provided in this act, it shall Carrying
be unlawful for any person within this state to carry con- firearms
cealed upon his person or within any vehicle which is under without
his control or direction any pistol, revolver or other firearm license.
capable of being concealed upon the person without having
a license to carry such firearm as hereinafter provided in
section eight hereof. Any person who violates the provisions
of this section shall be guilty of a misdemeanor, and if he
has been convicted previously of any felony, or of any crime
made punishable by this act, he is guilty of a felony.

This section shall not be construed to prohibit any citizen Exceptions.
of the United States, over the age of eighteen years, who
resides or is temporarily sojourning within this state, and
who is not within the excepted classes prescribed by section
two hereof, from owning, possessing or keeping within his
place of residence or place of business any pistol, revolver or
other firearm capable of being concealed upon the person, and
no permit or license to purchase, own, possess or keep any
such firearm at his place of residence or place of business
shall be required of any such citizen. Firearms carried openly
in belt holsters shall not be deemed to be concealed within
the meaning of this section, nor shall knives which are carried
openly in sheaths suspended from the waist of the wearer.

SEC. 6.   Nothing in the preceding section shall be construed Police
to apply to or affect sheriffs, constables, marshals, policemen, officers, sol-
whether active or honorably retired, or other duly appointed diers, etc.,
peace officers, nor to any person summoned by any such officers excepted.
to assist in making arrests or preserving the peace while said
person so summoned is actually engaged in assisting such
officer; nor to the possession or transportation by any mer-
chant of unloaded firearms as merchandise; nor to members of

the army, navy, or marine corps of the United States, or the
national guard, when on duty, or to organizations which are
by law authorized to purchase or receive such weapons from
the United States, or from this state; nor to duly authorized
military or civil organizations while parading, nor to the mem-
bers thereof when going to and from the places of meeting
of their respective organizations; nor to members of any club
or organization now existing, or hereafter organized, for the
purpose of practicing shooting at targets upon the established
target ranges, whether public or private, while such members
are using any of the firearms referred to in this act upon such
target ranges, or while going to and from such ranges; or to
licensed hunters or fishermen while engaged in hunting or
fishing, or while going to or returning from such hunting or
fishing expedition.

**Nuisances.**

SEC. 7. The unlawful concealed carrying upon the person
or within the vehicle of the carrier of any dirk, dagger, pistol,
revolver, or other firearm capable of being concealed upon
the person, is a nuisance. Any such weapons taken from the
person or vehicle of any person unlawfully carrying the same
are hereby declared to be nuisances, and shall be surrendered
to the magistrate before whom said person shall be taken,
except that in any city, city and county, town or other munic-
ipal corporation the same shall be surrendered to the head of
the police force or police department thereof. The officers to

**Destruction of weapons.**

whom the same may be so surrendered, except upon the certifi-
cate of a judge of a court of record, or of the district attor-
ney of the county, that the preservation thereof is necessary or
proper to the ends of justice, shall annually, between the first
and tenth days of July, in each year, destroy or cause to be
destroyed such weapons to such extent that the same shall
become and be wholly and entirely ineffective and useless for
the purpose for which it was manufactured; *provided, how-
ever,* that in the event any such weapon has been stolen and
is thereafter recovered from the thief or his transferee, the
same shall not be destroyed but shall be restored to the lawful
owner thereof, so soon as its use as evidence has been served,
upon his identification of the weapon and proof of ownership
thereof. Blackjacks, slungshots, billys, sandclubs, sandbags
and metal knuckles are hereby declared to be nuisances and
shall be subject to confiscation and summary destruction
whenever found within the state; *provided,* that upon the cer-
tificate of a judge or of the district attorney that the ends of
justice will be subserved thereby, such weapon shall be pre-
served until the necessity for its use ceases.

**Licenses to carry firearms.**

SEC. 8. It shall be lawful for the sheriff of a county,
and the board of police commissioners, chief of police, city
marshal, town marshal, or other head of the police department
of any city, city and county, town, or other municipal corpo-
ration of this state, upon proof before said board, chief, marshal
or other police head, that the person applying therefor is of
good moral character, and that good cause exists for the
issuance thereof, to issue to such person a license to carry con-

cealed a pistol, revolver or other firearm for a period of one year from the date of such license. All applications for such <span>Applications.</span> licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county <span>Record.</span> clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general.

SEC. 9. Every person in the business of selling, leasing or <span>Dealers registers.</span> otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferrer is a retail dealer, pawnbroker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of three <span>Cost.</span> dollars per one hundred leaves in duplicate and shall be in the form hereinafter provided. The purchaser of any firearm, capable of being concealed upon the person shall sign, and the dealer shall require him to sign his name and affix <span>Signatures.</span> his address to said register in duplicate and the salesman shall affix his signature in duplicate as a witness to the signatures of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such <span>Disposition of duplicate sheets.</span> register shall on the evening of the day of sale, be placed in the mail, postage prepaid and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, city and county, town or other municipal corporation wherein the sale was made; *provided,* that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the <span>Penalty.</span> provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearm is a misdemeanor. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, city and county, town or municipal corporation wherein

they are situated. The register provided for in this act shall be substantially in the following form:

### Form of Register.

Series No._____
Sheet No._____

#### ORIGINAL.

### Dealers' Record of Sale of Revolver or Pistol.

### State of California.

Notice to dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. Use indelible pencil.

Sold by_____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker_____ Number_____ Caliber_____
Name of purchaser _____age_____years.
Permanent residence (state name of city, town or township, street and number of dwelling)_____
Height _____feet_____inches. Occupation_____
Color \_ _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____ _____
_____
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.) (To be signed in duplicate.)
Witness_____, salesman.
(To be signed in duplicate.)

Series No._____
Sheet No._____

#### DUPLICATE.

### Dealers' Record of Sale of Revolver or Pistol.

### State of California.

Notice to dealers: This carbon duplicate must be mailed on the evening of the day of sale as set forth in the original of this register page. Violation of this law is a misdemeanor.

Sold by _____ Salesman_____
City, town or township _____
Description of arm (state whether revolver or pistol)_____
Maker _____number_____caliber_____

Name of purchaser _____age_____years.
Permanent address (state name of city, town or township, street and number of dwelling)_____
_____
Height_____feet_____inches.　Occupation _____
Color _____skin_____eyes_____hair_____
If traveling or in locality temporarily, give local address
_____---
Signature of purchaser_____
(Signing a fictitious name or address is a misdemeanor.)　(To be signed in duplicate.)
Witness_____, salesman.

(To be signed in duplicate.)

SEC. 10.　No person shall sell, deliver or otherwise transfer any pistol, revolver or other firearm capable of being concealed upon the person to any person whom he has cause to believe to be within any of the classes prohibited by section two hereof from owning or possessing such firearms, nor to any minor under the age of eighteen years.　In no event shall any such firearm be delivered to the purchaser upon the day of the application for the purchase thereof, and when delivered such firearm shall be securely wrapped and shall be unloaded. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer any such firearm to any other person within this state who is not personally known to the vendor.　Any violation of the provisions of this section shall be a misdemeanor. *Restrictions on transfer of certain firearms.*

SEC. 11.　The duly constituted licensing authorities of any county, city and county, city, town or other municipality within this state, may grant licenses in form prescribed by the attorney general, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said county, city and county, city, town or other municipality pistols, revolvers, and other firearms capable of being concealed upon the person, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture: *Local licenses for sale of certain firearms.*

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

Penalty for dealing in certain firearms without license.

SEC. 12. Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale, or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

Tampering with marks on certain firearms.

SEC. 13. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered,

Penalty.

removed, or obliterated the same. Violations of this section shall be punished by imprisonment in the state prison for not less than one year nor more than five years.

Expiration of current licenses.

SEC. 14. All licenses heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of December 31, 1924.

Antique pistols, etc.

SEC. 15. This act shall not apply to antique pistols or revolvers incapable of use as such.

Constitutionality.

SEC. 16. If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

Stats. 1917, p. 221, repealed.

SEC. 17. That certain act entitled, "An act relating to and regulating the carrying, possession, sale or other disposition of firearms capable of being concealed upon the person; prohibiting the possession, carrying, manufacturing and sale of certain other dangerous weapons and the giving, transferring and disposition thereof to other persons within this state; providing for the registering of the sales of firearms; prohibiting the carrying or possession of concealed weapons in municipal corporations; providing for the destruction of certain dangerous weapons as nuisances and making it a felony to use or attempt to use certain dangerous weapons against another," approved May 4, 1917, is hereby repealed.

SUBSTITUTE FOR SENATE BILL No. 265.

CHAPTER 252

# AN ACT CONCERNING THE POSSESSION, SALE AND USE OF PISTOLS AND REVOLVERS.

*Be it enacted by the Senate and House of Representatives in General Assembly convened:*

SECTION 1.   The term " pistol " and the term " revolver ", as used in this act, shall mean any firearm having a barrel less than twelve inches in length. *— Terms " pistol " and " revolver " defined.*

SEC. 2.   No person shall advertise, sell, deliver, offer or expose for sale or delivery or have in his possession with intent to sell or deliver any pistol or revolver at retail without having a permit therefor issued as hereinafter provided. *— Permit for selling pistol or revolver to be obtained.*

SEC. 3.   The chief of police or, where there shall be no chief of police, the warden of the borough or the first selectman of the town, as the case may be, may, upon the application of any person, issue a permit in such form as may be prescribed by the superintendent of state police for the sale at retail of pistols and revolvers within the jurisdiction of the authority issuing such permit. Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or, upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any state or sub-division of the United States, such chief of police, warden or selectman may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which he may be permitted to carry thereunder other than a proper use and that such person is a suitable person to receive such permit. The superintendent of state police may, upon application, issue to any holder of any permit to carry any pistol or revolver hereinbefore provided for, a permit to carry a pistol or revolver within the state. Each permit to carry any pistol or revolver shall be issued in triplicate and one of the copies issued by the superintendent of state police shall be delivered to the person to whom issued, one shall be delivered forthwith to the authority issuing the local permit and one shall be retained by the superintendent of state police, and the local authority issuing any such permit shall forthwith deliver one of such copies to the person to whom issued and one copy to the superintendent of state police and shall retain one of such copies. *— Local authority may issue permit. Local authorities may issue permit to carry any fire arm within their jurisdiction. Superintendent of state police may grant permits to carry pistol or revolver in confines of state.*

SEC. 4.   The fee for each permit originally issued under the provisions of this act shall be one dollar and for each renewal *— Fees for permits.*

thereof twenty-five cents, which fees shall be paid by the authority issuing the same to the municipality wherein issued or the state, as the case may be, and each permit issued hereunder shall be valid for one year from the date of issuance.

**Sales to be made in place of business mentioned in permit.**

SEC. 5.    No sale of any pistol or revolver shall be made except in the room, store or place described in the permit for the sale of pistols and revolvers, and such permit or a copy thereof certified by the authority issuing the same shall be exposed to view within the room, store or place where pistols or revolvers shall be sold or offered or exposed for sale, and no sale or delivery of any pistol or revolver shall be made unless the purchaser or person to whom the same is to be delivered shall be personally known to the vendor of such pistol or revolver or the person making delivery thereof or unless the person making such purchase or to whom delivery thereof is to be made shall provide evidence of his identity.    The vendor of any pistol or revolver shall keep a record of every pistol or revolver sold in a book kept for that purpose, which record shall be in such form as shall be prescribed by the superintendent of state police and shall include the date of the sale, the caliber, make, model and manufacturer's number of such pistol or revolver and the name, address and occupation of the purchaser thereof, which record shall be signed by the purchaser and by the person making the sale, each in the presence of the other, and shall be preserved by the vendor of such pistol or revolver for a period of at least six years.

**Vendor to keep record of sale of fire arms.**

**Permit to carry fire arms may be revoked.**

SEC. 6.    Any permit for the carrying of any pistol or revolver issued under the provisions of this act may be revoked by the authority issuing the same.    The revocation of either such permits shall be a revocation of the other and, upon the revocation of any permit, such permit shall be forthwith delivered to the authority issuing the same.    Upon the revocation of any local permit, the authority issuing the same shall forthwith notify the superintendent of state police and upon the revocation of any permit issued by the superintendent of state police, said superintendent shall forthwith notify the authority issuing such local permit.

**Sale of pistols or revolvers to aliens restricted.**

SEC. 7.    No person, firm or corporation shall sell at retail, deliver or otherwise transfer any pistol or revolver to any alien, nor shall any person deliver any pistol or revolver at retail except upon written application therefor and no sale or delivery of any pistol or revolver shall be made upon the date of the filing or receipt of any written application for the purchase thereof, and when any pistol or revolver shall be delivered in connection with the sale or purchase, such pistol or revolver shall be enclosed in a package, the paper or wrapping of which shall be securely fastened, and no pistol or revolver when delivered on any sale or purchase shall be loaded or con-

tain therein any gunpowder or other explosive or any bullet, ball or shell. Upon the delivery of any pistol or revolver the purchaser shall sign in triplicate a receipt for such pistol or revolver which shall contain the name, address and occupation of such purchaser, the date of sale, caliber, make, model and manufacturer's number and a general description thereof. One of such triplicate receipts shall, within twenty-four hours thereafter, be forwarded by the vendor of such pistol or revolver to the superintendent of state police and one to the authority issuing the permit for the sale of such pistol or revolver and the other shall be retained by such vendor for at least six years.

SEC. 8. No person shall make any false statement or give any false information connected with any purchase, sale or delivery of any pistol or revolver, and no person shall sell, barter, hire, lend, give or deliver to any minor under the age of eighteen years any pistol or revolver. *Giving of false information or the sale to persons under eighteen years of age prohibited.*

SEC. 9. No person shall carry any pistol or revolver in or upon any vehicle or upon his person, except when such person shall be within his dwelling house or place of business, without a permit to carry the same issued as hereinbefore provided. *Carrying of pistol or revolver without permits restricted.*

SEC. 10. The provisions of section nine of this act shall not apply to the carrying of any pistol or revolver by any marshal, sheriff or peace officer, or to any soldier, sailor or marine in the service of the United States or this state when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same shall have been repaired. *When and by whom pistols and revolvers may be carried without securing a permit.*

SEC. 11. No person shall change, alter, remove or obliterate the name of any maker or model or any maker's number or other mark of identification on any pistol or revolver. The possession of any pistol or revolver upon which any identifying mark, number or name shall have been changed, altered, removed or obliterated shall be prima facie evidence that the person owning or in possession of such pistol or revolver has changed, altered, removed or obliterated the same. *Tampering with identification mark of any pistol or revolver prohibited.*

Penalty.

SEC. 12. Any person violating any provision of section nine or eleven of this act shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and any person violating any other provision of this act shall be fined not more than five hundred dollars or imprisoned not more than three years or both, and any pistol or revolver found in the possession of any person in violation of any provision of this act shall be forfeited.

Repeal.

SEC. 13. Section 2678 of the general statutes, chapter 206 of the public acts of 1919, chapter 127 of the public acts of 1921 and those portions of sections 6369, 6370, 6371 and 6372 of the general statutes which relate to pistols and revolvers are repealed.

Approved June 2, 1923.

SUBSTITUTE FOR SENATE BILL No. 227.

CHAPTER 253

## AN ACT PROVIDING FOR THE LICENSING OF INSURANCE AGENTS.

*Be it enacted by the Senate and House of Representatives in General Assembly convened:*

Insurance agent defined.

SECTION 1. An insurance agent is defined as a person authorized in writing, by any insurer authorized to transact business in the state, to solicit, negotiate or effect contracts of insurance, surety or indemnity; or any member of a copartnership or association, or any stockholder, officer or agent of a corporation authorized to solicit, negotiate or effect such contracts, when such copartnership, association or corporation shall hold a direct agency appointment from any insurer.

Agent to have license.

SEC. 2. No person shall engage in business as an insurance agent until he shall have obtained from the insurance commissioner a license therefor under the provisions of this act. Each applicant for such license shall file with the commissioner his written application for a license authorizing him

Form of application.

to engage in business as an agent in the general or some specified line or lines of insurance, surety or indemnity coverage, which, under the provisions of the general statutes, may be written in the state, which application shall be accompanied by a statement, signed and sworn to by such applicant, on a blank furnished by the commissioner, setting forth such facts as he may require, and by the affidavit of an official or representative of an insurer authorized to transact business in the state or of a licensed insurance agent of the state, that the applicant is personally known to him; that the applicant has experience, or will be instructed, in the general or some specified

# PERJURY

## CHAPTER 265.

### (S. B. No. 232—Stevens.)

### OATH.

An Act to Amend and Re-enact Section 9367 of the Compiled Laws of North Dakota for the year 1913, Relating to the Prescribing of an Oath.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. AMENDMENT.) That Section 9367 of the Compiled Laws of North Dakota for the year 1913 be amended and re-enacted to read as follows:

Sec. 9367. OATH DEFINED.) The term oath as used in Section 9366 of the Compiled Laws of 1913, includes an affirmation and every other mode of attesting the truth of that which is stated, which is authorized by law, and the signing of any writing purporting to be made under oath, in the presence of an officer authorized to administer oaths, or the acknowledgment of the signing thereof, to or before any such officer, or the presentation thereof to such officer by the person signing or by his direction to be authenticated as an oath, shall be deemed to be the taking of an oath within the meaning of said section and the certificate of the officer purporting to take such oath shall be prima facie evidence of the taking thereof.

Approved March 1st, 1923.

# PISTOLS AND REVOLVERS

## CHAPTER 266.

### (S. B. No. 256—McLachlin.)

### PISTOLS AND REVOLVERS.

An Act To Control the Possession, sale, and use of pistols and revolvers, to provide penalties, and for other purposes.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. DEFINITION.) "Pistol or revolver," as used in this Act, shall be contrued as meaning any firearm with barrel less than twelve inches in length.

SEC. 2. COMMITTING CRIME WHEN ARMED.) If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall be in addition to the punishment provided for the crime, be punished by imprisonment for not less than ten years.

SEC. 3. PUNISHMENT.) The judge shall have the power to sentence any person who may be convicted for a second or third offense under section 2 of this Act, to double and triple the penalty imposed thereby, and for a fourth offense the person so convicted may be sentenced to life imprisonment.

SEC. 4. BEING ARMED PRIMA FACIE EVIDENCE OF INTENTION.) In the trial of a person for the commission of a felony or of an attempt to commit a felony against the person of another, the fact that he was armed with a pistol or revolver and having no permit to carry the same shall be prima facie evidence of his intention to commit said felony.

SEC. 5. ALIENS AND CRIMINALS MUST NOT POSSESS ARMS.) No unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another or against the Government of the United States or of any State or subdivision thereof, shall own or have in his possession or under his control, a pistol or revolver. Violations of this section shall be punished by imprisonment for not to exceed five years.

SEC. 6. CARRYING PISTOL CONCEALED.) No person shall carry a pistol or revolver concealed in any vehicle or in any package, satchel, grip, suit case or carry in any way or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by imprisonment for not less than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed.

SEC. 7. EXCEPTIONS.) The provisions of the preceding section shall not apply to marshals, sheriffs, policemen, or other duly appointed peace officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the Army, Navy or Marine Corps of the United States, or the National Guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or this State, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at or going to or from their customary places of assembly.

SEC. 8. ISSUE OF LICENSES TO CARRY.) The justice of a court of record, the chief of police of a city or town and the sheriff of a county, or persons authorized by any of them

shall upon the application of any persons having a bona fide residence or place of business within the jurisdiction of said licensing authority, or of any person having a bona fide residence or place of business within the United States and a license to carry a fire arm concealed upon his person issued by the authorities of any State or sub-division of the United States, issue a license to such person to carry a pistol or revolver within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or for any other proper purpose, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the Secretary of State, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the Secretary of State, and the triplicate shall be preserved for six years by the authority issuing said license.

Sec. 9. SELLING TO MINORS.) Any person or persons who shall sell, barter, hire, lend or give to any minor under the age of eighteen years any pistol or revolver shall be deemed guilty of a misdemeanor, and shall upon conviction thereof be fined not less than $100, nor more than $1,000, or be imprisoned not less than three months, nor more than one year, or both.

Sec. 10. SALES REGULATED.) No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward by registered mail one copy thereof to the Secretary of State, and one copy thereof to the chief of police of the city or town, or the sheriff of the county of which the seller is a resident, and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not less than $100 or by

imprisonment for not less than one year, or by both such fine and imprisonment.

Sec. 11. DEALERS TO BE LICENSED.)   Whoever, without being licensed as hereinafter provided, sells, or otherwise transfers, advertises, or exposes for sale, or transfers or has in his possession with intent to sell, or otherwise transfer, pistols or revolvers, shall be punished by imprisonment for not less than two years.

Sec. 12. DEALERS' LICENSES: BY WHOM GRANTED, AND CONDITIONS THEREOF.)   The duly constituted licensing authorities of any city, town or subdivision of this state, may grant licenses in form prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1.   The business shall be carried on only in the building designated in the license.

2.   The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3.   No pistol or revolver shall be delivered—

   (a)   On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor

   (b)   Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor

   (c)   If the seller has reasonable cause to believe that the purchaser either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof.

4.   A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Secretary of State, and shall be personally signed by the purchaser and by the person affecting the sale, each in the presence of the other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, occupation, and nationality of the purchaser.   One copy of said record shall, within seven days, be forwarded by registered mail to the Secretary of State and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

5. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

Sec. 13. PENALTY FOR FALSE INFORMATION.) If any person in purchasing or otherwise securing delivery of a pistol or revolver or in applying for a permit to carry the same, shall give false information or offer false evidence of his identity he shall be punished by imprisonment for not less than five nor more than ten years.

Sec. 14. ALTERATION OF IDENTIFYING MARKS PROHIBITED.) No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same. Violations of this section shall be punished by imprisonment for not less than one year nor more than five years.

Sec. 15. EXISTING LICENSES REVOKED.) All Licenses heretofore issued within this State permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of June 30th, 1923.

Sec. 16. EXCEPTIONS.) This Act shall not apply to antique pistols or revolvers incapable of use as such.

Sec. 17. CERTAIN ACTS REPEALED.) All laws or parts of laws inconsistent herewith are hereby repealed.

Approved March 7th, 1923.

---

# PLEDGE

## CHAPTER 267.

(H. B. No. 177—Cole.)

---

### SALE OF PROPERTY PLEDGED.

An Act to Amend and Re-enact Section 6790 of the Compiled Laws of North Dakota for 1913.

*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

Sec. 1. AMENDMENT.) Section 6790 of the Compiled Laws of the State of North Dakota for 1913 is amended and re-enacted to read as follows:

App. 17

laying out, opening, changing or vacating of any street, alley, or public place in any city are hereby extended and shall apply to all proceedings had under the provisions of section 1 of this act, including the ascertainment, award and payment of damages to, and the fixing, assessment and collection of assessments from, the owners of property beneficially or injuriously affected by such proceeding.

---

## CHAPTER 207.

AN ACT to regulate and control the possession, sale, and use of pistols and revolvers in the State of Indiana, to provide penalties, and for other purposes.

[S. 55. Approved March 12, 1925.]

### Pistols and Revolvers Defined.

SECTION 1. *Be it enacted by the general assembly of the State of Indiana,* That the term ''pistol or revolver,'' as used in this act, shall be construed as meaning any firearm with a barrel less than twelve inches in length.

### Crime—Committing When Armed With Pistol or Revolver.

SEC. 2. If any person shall, within the State of Indiana, commit or attempt to commit a crime, when armed with a pistol or revolver, and having no permit to carry the same, he shall, in addition to the punishment provided for the crime, be guilty of a felony and shall be punished by imprisonment for not less than one year and not more than five years.

### Subsequent Offenses.

SEC. 3. The judge shall have the power to sentence any person who may be convicted for a second or third, or other subsequent offense under section 2 of this act, to double or triple the penalty imposed thereby.

### Felony—Conviction For—Prohibited From Possessing Pistol.

SEC. 4. No person who has been convicted of a felony committed against the person or property of another shall own or have in his possession or under his control, within the State of Indiana, a pistol or revolver. A violation

of this section shall constitute a felony and be punishable by imprisonment for not less than one year, and not more than five years.

## Pistol or Revolver—Possession Without Permit.

SEC. 5. No person shall carry, within the State of Indiana, a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a permit therefor as hereinafter provided. Violations of this section shall constitute a misdemeanor and be punished by a fine of one hundred dollars ($100.00), to which may be added imprisonment for not more than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed by the sheriff on order of the court.

## Persons Exempt From Act.

SEC. 6. The provisions of the preceding section shall not apply to marshals, sheriffs, deputy sheriffs, policemen or any other duly appointed peace officers, nor the pistols or revolvers of any bank, trust company, or common carriers, or to the officers or employes of any bank, trust company, or common carriers, while such officers or employes are guarding money or valuables within the line of their duties as such employes, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the army, navy, or marine corps or the mail service of the United States, or the national guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or the State of Indiana, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at or going to or from their customary places of assembly.

## Permits—Clerk of Circuit Court—Application—Form— Fee.

SEC. 7. The clerk of any circuit court of the State of Indiana, shall, upon application of any citizen having a bona fide residence or place of business within the State of Indiana, or of any person having a bona fide residence or place of business within the United States, and a permit

to carry a firearm concealed upon his person issued by the authorities of any other state or subdivision of the United States, issue a permit to such citizen to carry a pistol or revolver within the State of Indiana, during the period of one year or until revoked, as herein provided. Such application for permit shall be signed by two resident householders and freeholders of the county in which the applicant lives, and it shall appear from such application that the applicant is a suitable person to be granted a permit under the law. The permit shall be in duplicate, in form to be prescribed by the adjutant general of the State of Indiana, and shall bear the name, address, description and signature of the applicant and reason given for desiring a permit. The original thereof shall be delivered to the applicant, the duplicate shall be preserved for six years by the clerk of the circuit court issuing the same. For each permit so issued, the applicant shall pay the sum of one dollar ($1.00).

### Minors—Sale of Pistols or Revolvers to Prohibited.

SEC. 8. Any person or persons who shall, within the State of Indiana, sell, barter, hire, lend, or give to any minor under the age of twenty-one years, any pistol or revolver shall be deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than one hundred dollars ($100.00), or be imprisoned for not more than three months, or both, except for uses as hereinbefore provided.

### Sale of Pistols and Revolvers—Record—Penalty.

SEC. 9. No person shall within the State of Indiana sell, deliver or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is not a citizen or has been convicted of a felony against the person or property of another, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made, the purchaser or his duly authorized agent and the seller or his duly authorized agent shall in the presence of each other sign in duplicate a statement containing the purchaser's full name, age, ad-

32—80944

dress, place of birth, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, forward by registered mail, to the clerk of the circuit court of the county in which the seller resides, one copy thereof and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall constitute a misdemeanor and shall be punished by a fine of not less than one hundred dollars ($100.00), or by imprisonment for not more than one year, or by both such fine and imprisonment.

### Pistols and Revolvers—Sale Without License.

Sec. 10. Whoever, within the State of Indiana, without being licensed as hereinafter provided, sells, delivers, transfers, advertises, or exposes for sale, or has in his possession with intent to sell, pistols or revolvers, shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than one year nor more than two years.

### Dealers' Licenses—Conditions on Which Sold—Record— Advertisement.

Sec. 11. The clerk of the circuit court of any county may grant licenses, to any reputable, established dealer, on forms to be prescribed by the adjutant general, permitting the licensee to sell at retail within the State of Indiana pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered:

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; **nor,**

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor,

(c) If the seller has reasonable cause to believe that the purchaser is an unnaturalized foreign-born person or has been convicted of a felony against the person or property of another.

4. A true record, in duplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the adjutant general and shall be signed by the purchaser and by the person effecting the sale, and in the presence of each other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, age, place of birth, nationality of the purchaser. One copy of said record shall, within seven days, be forwarded by registered mail to the clerk of the circuit court of the county in which the seller resides, and the other copy shall be retained by the seller for six years.

5. No pistol or revolver, or placard advertising the sale thereof, or imitation thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

**False Information.**

SEC. 12. If any person in purchasing or otherwise securing delivery of a pistol or revolver or applying for a permit to carry same within the State of Indiana shall give false information or offer false evidence of his identity he shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment for not less than one year nor more than five years.

**Obliteration of Make, Model, Number—Penalty.**

SEC. 13. No person shall within the State of Indiana, change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearms upon which the same shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that such possessor has changed, altered, removed,

or obliterated the same. Violations of this section shall be a misdemeanor and shall be punished by imprisonment for not less than six months nor more than one year.

### Felony—Possession of Revolver Prima Facie Evidence.

SEC. 14. In the trial of a person charged with committing or attempting to commit a felony against the person or property of another while armed with a pistol or revolver, without having a permit to carry such firearm as hereinbefore provided, the fact that such person was so armed shall be prima facie evidence of his intent to commit such felony.

### Weapons Exempt.

SEC. 15. This act shall not apply to antique pistols or revolvers incapable of use as a deadly weapon.

### Prior Licenses.

SEC. 16. Any or all licenses heretofore issued to carry or possess revolver or pistol shall be revoked and rendered null and void on and after thirty days from the taking effect of this act.

### Revocation of License.

SEC. 17. Hereafter in any court of record upon trial of any person for a penal offense, and upon a showing that such person is not a fit person to carry concealed weapons, the court may enter an order revoking such person's license to carry concealed weapons and such fact shall be communicated to the public officer issuing the same.

### Licensed Dealers—Statement—Penalty.

SEC. 17½. It shall be unlawful from and after the taking effect of this act, for any person, firm or corporation to receive or have in his or its possession within the State of Indiana any pistol or revolver purchased or acquired after the taking effect of this act, except a licensed dealer, who shall not have signed and forwarded to the clerk of the county in which he resides the statements provided for in section 9 of this act, before or at the time of taking possession of such pistol or revolver. Whoever shall violate the provisions of this section of this act shall be

deemed guilty of a misdemeanor and shall upon conviction thereof be fined not more than $100, to which may be added imprisonment for not more than sixty days.

## Repeal.

SEC. 18. All laws and parts of laws in conflict herewith are hereby repealed.

## Unconstitutional Provisions.

SEC. 19. If any provision or section of this act shall be held void or unconstitutional, all other provisions and all other sections of this act, which are not expressly held to be void or unconstitutional, shall remain in full force and effect.

---

## CHAPTER 208.

AN ACT fixing the terms of the circuit court, in the forty-ninth judicial circuit, composed of the counties of Daviess and Martin, and repealing all laws in conflict therewith, and declaring an emergency.

[S. 173. Approved March 12, 1925.]

## Daviess and Martin Counties—Terms of Court.

SECTION 1. *Be it enacted by the general assembly of the State of Indiana,* That there shall be four terms each year of the circuit court in each of the counties of Daviess and Martin, comprising the forty-ninth judicial circuit. The terms in the county of Martin shall begin on the first Monday in January, the fourth Monday in March, the first Monday in August, and the fourth Monday in October of each year, and the terms beginning on the first Monday of January, and the fourth Monday of March, shall continue for four weeks each, and the terms beginning on the first Monday of August, and the fourth Monday of October, shall continue for three weeks each.

The terms in the county of Daviess shall begin on the first Monday of February, the fourth Monday of April, the first Monday of September, and the third Monday of November, and the terms beginning on the first Monday of February, and the first Monday of September, shall continue for six weeks, and the terms beginning on the fourth Monday of April and the third Monday of Novem-

## CHAPTER 64.

An Act to amend an act entitled "A further supplement to an act entitled 'An act for the punishment of crimes' (Revision of 1898), approved June fourteenth, one thousand eight hundred and ninety-eight," which supplementary act was approved March eleventh, one thousand nine hundred and twenty-four.

BE IT ENACTED by the Senate and General Assembly of the State of New Jersey:

1. The act of which this act is amendatory be and the same hereby is amended so that the same shall read as follows: *Act amended.*

1. Any person who shall carry any revolver, pistol or other firearm, or other instrument of the kinds known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive, other than fixed ammunition, concealed in or about his clothes or person, or in any automobile, carriage, motor cycle, or other vehicle, shall be guilty of a misdemeanor; *provided, however,* that nothing in this act contained shall be construed in any way to apply to the sheriff, or the undersheriffs of any county, nor to the regularly employed members of any uniformed police department in any municipality of this State, nor to any prosecutor or assistant prosecutor of any county, jailer, regular fish and game wardens, constable, railway police, canal police, and steamboat police and prosecutor's detectives; nor to any member of the State Police, nor to any motor vehicle inspector; nor to duly authorized military organizations when under orders, nor to the members thereof when going to or from places of meeting of their respective organizations, carrying the weapons prescribed for such drill, exercise or parade; *and provided, further,* nothing in this act contained shall be construed to apply to any person having a written permit to carry

*Carrying concealed weapon on on person or in vehicle a misdemeanor.*

*Proviso: legal carrying.*

*Proviso.*

any revolver, pistol or other firearm, when such permit has been obtained pursuant to the provisions of this act; nor to public utility corporations in the transportation **Proviso.** of explosives; *provided, however,* that nothing herein contained shall prevent any person from keeping or carrying about his or her place of business, dwelling, house or premises, any such revolver, pistol, firearm or other weapon, or from carrying the same from any place of purchase to his or her dwelling, house or place of business, or from his or her dwelling, house or place of business to any place where repairing is done, to have the same repaired and returned, or to carry a gun, rifle or knife in the woods or fields or upon the waters of the State for the purpose of hunting or target practice.

**License to carry weapons.**    2. Any person desirous of obtaining a permit to carry a revolver, pistol or other firearm, pursuant to the provisions of this act, shall in the first instance, make application therefor either to the chief police official of the municipality in which the applicant resides or to the **Application.** sheriff of the county wherein the applicant resides. If such application is approved by the chief police official or by the sheriff, as the case may be, the applicant shall **Approval.** then present such application, so approved as aforesaid, to a Common Pleas judge of the county or to the justice of the Supreme Court or to the judge holding the circuit for the county in which the applicant is resident, who, after investigation, and being satisfied of the sufficiency of the application, and of the need of such person carrying concealed upon his person, a revolver, pistol or other **Permit.** firearm, shall issue a permit therefor. A permit so issued pursuant to the provisions of this act is sufficient authority for the holder thereof to carry concealed upon his person a revolver, pistol or other firearm in all **Expiration and renewal.** parts of the State of New Jersey. All permits issued pursuant to the provisions of this act shall expire on the thirty-first day of December subsequent to the date of issue, and may thereafter be renewed for a period of five years.

**Record of sale kept.**    3. Every person engaged in the retail business of selling, leasing or otherwise transferring a pistol, revolver or other firearm of a size capable of being concealed

upon the person, whether such seller, lessor or transferror is a retail dealer, pawnbroker or otherwise, shall keep a register in which shall be entered the time of sale, date of sale, the name, age, color, nationality, occupation and residence of the purchaser, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, calibre or other marks of identification on such pistol, revolver or other firearm. Such register shall be open at all reasonable hours for the inspection of any police or other peace officer.

The form of such register shall be prepared by the *Registry.* Secretary of State, and by him transmitted to the clerk of every municipality. The clerk of such municipality *Furnished dealers.* shall thereupon prepare said register in accordance with said form so transmitted, and furnish the same to each person, firm or corporation within his said municipality engaged in the business of selling, leasing or otherwise transferring pistols, revolvers or other firearms. The purchaser of any pistol, revolver or other firearm *Signature of buyer and seller.* capable of being concealed upon the person shall sign, and the dealer shall require him to sign his name and affix his address to said register, in duplicate, and the salesman shall affix his name, in duplicate, as a witness to the signature of the purchaser. Any person signing *False representation.* a fictitious name or address, or giving any false information in connection with the making of any such purchase shall be guilty of a high misdemeanor.

The duplicate sheet of such register shall before *Duplicate delivered.* twelve o'clock midnight of the day of sale, lease or transfer be delivered to the office of the chief of police of such municipality, or to the office of the captain of the precinct of any such city, within which the dealer resides, and a receipt shall be given to such dealer therefor; *provided, however,* that where a sale, lease or *Proviso.* transfer is made in any municipality having no chief of police, it shall then be the duty of the dealer, from the day of sale to mail to the county clerk of the county within which the sale, lease or transfer was made a duplicate copy of such register. Any person violating *Penalty.* any of the provisions hereof shall be guilty of a misdemeanor.

Form of register.

The register provided for in this act shall be substantially in the following form:

Sold, leased or transferred by ............. Salesman ................ City, town or township ...... ........ Description of arm (state whether revolver or pistol) ................ Maker .............. Number ........ Caliber ............ Name of purchaser ............. Age ........ Years ........ Permanent residence (state name of city, town or township, street and number of dwelling) .............. Height ...... feet ........ inches .............. Occupation .......... Color ........ Skin ........ Eyes .......... Hair ..........          ,

If traveling or in locality temporarily, give local address ................... Signature of purchaser ...... ........ (Signing a fictitious name or address is a misdemeanor.)   (To be signed in duplicate.) Witness .................... Salesman.

(To be signed in duplicate.)

No sale after five P. M.

4. No person engaged in the retail business of selling, leasing or otherwise transferring any pistol, revolver or other firearm of a size capable of being concealed upon the person shall exhibit for purposes of sale, lease or hire any pistol, revolver or other firearm after the hour of five P. M.; *and provided, further,* that no pistol, revolver or other firearm shall be delivered to any purchaser until twenty-four hours shall have elapsed from the time of application therefor.

Proviso.

Permits for banking institutions.

5. The president of any National bank, building and loan association, trust company or other banking institution located in any municipality of this State may make application to the chief of police of such municipality for permits, in blank, to be used by the messengers, clerks or other employees or agents of such institutions for use while engaged in the performance of their respective duties. Upon such issue, as aforesaid, he shall transmit to the chief of police from whom such permits were obtained a record of the persons to whom the same were issued; *provided, however,* that such permits, so as aforesaid issued under this section, shall not exceed twenty in number to any one bank.

Police notified.

Proviso.

6. Any person who shall alter, change, disfigure or deface the serial number of any pistol or revolver shall be guilty of a misdemeanor; any person engaged in the retail business of selling, leasing or otherwise transferring pistols, revolvers, or other firearms who shall sell or lease any pistol, or revolver having the serial number thereof altered, changed, disfigured or defaced shall be guilty of a misdemeanor. <span style="float:right">Not alter serial number.</span>

7. This act shall take effect immediately.

Approved March 12, 1925.

———

# CHAPTER 65.

An Act concerning building and loan associations (Revision of 1925).

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

## ARTICLE I. AS TO BUILDING AND LOAN ASSOCIATIONS OF THIS STATE.

### I. FORMATION.

1. Purposes.

Upon executing, recording and filing a certificate pursuant to this act, nine or more persons, citizens of this State, may become an incorporated association for the purpose of assisting each other and all who may become associated with them in acquiring real estate, making improvements thereon and for removing incumbrances therefrom by the payment of periodical installments, as its constitution shall provide; and for the further purpose of accumulating a fund, to be repaid to its members, subject to the right of earlier redemption, who do not obtain advances for purposes above mentioned when the funds of such association shall amount to a certain sum per share, to be specified in the certificate of incorporation. <span style="float:right">Formation of building and loan associations.<br>Purposes.</span>

13 Laws

9. County school superintendent, $1,500. The county school superintendent shall be allowed a deputy or clerk whose salary shall be determined by the county court; all claims of deputy for salary or services must be approved by the county school superintendent * [and the same shall be audited by the county court and paid as other claims against the county are paid. The county school superintendent] shall be allowed such sum as the county court may deem necessary for traveling expenses incurred in the discharge of his duties, which claims shall be audited and paid by the county court out of the general fund of the county.

Approved by the governor February 26, 1925.
Filed in the office of the secretary of state February 26, 1925.

## CHAPTER 260

## AN ACT

[H. B. 452]

To control the possession, sale and use of pistols and revolvers, to provide penalties.

*Be It Enacted by the People of the State of Oregon:*

Section 1. On and after the date upon which this act takes effect, any person who within the state of Oregon manufactures or causes to be manufactured or who imports into the state of Oregon or who keeps for sale or offers or exposes for sale or who gives, lends or possesses a pistol or revolver otherwise than in accordance with the provisions of this act shall be guilty of a felony, and, upon conviction thereof, shall be punishable by imprisonment in the state penitentiary for not more than five years.

Section 2. On and after the date upon which this act takes effect no unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another or against the government of the United States or of the state of Oregon or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms "pistol," "revolver," and "firearms capable of being concealed upon the person," as used in this act, shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony, and, upon conviction thereof, be punishable by imprisonment in the state penitentiary for not less than one year nor for more than five years.

---

* The phrase inserted in brackets appears in the original and engrossed bills, but was not incorporated in the enrolled act.

App. 30

Section 3. If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section 1 hereof or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm, as hereinafter provided, upon conviction of such felony or of an attempt to commit such felony, he shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in the state penitentiary for not less than five nor for more than ten years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence. Upon a second conviction under like circumstances such additional period of imprisonment shall be for not less than ten years nor for more than fifteen years, and upon a third conviction under like circumstances such additional period of imprisonment shall be for not less than fifteen nor for more than twenty-five years; such terms of additional imprisonment to run consecutively as before. Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of years not less than twenty-five years, within the discretion of the court wherein such fourth or subsequent conviction was had. In the trial of a person charged with committing or attempting to commit a felony against the person of another while armed with any of the weapons mentioned in section 1 hereof, or while armed with any pistol, revolver or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm, as hereinafter provided, the fact that he was so armed shall be prima facie evidence of his intent to commit such felony.

Section 4. In no case shall any person punishable under the preceding sections of this act be granted probation by the trial court, nor shall the execution of the sentence imposed upon such person be suspended by the court.

Section 5. Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm, as hereinafter provided in section 8 hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony. This section

shall not be construed to prohibit any citizen of the United States, over the age of eighteen years, who resides or is temporarily sojourning within this state, and who is not within the excepted classes prescribed by section 2 hereof, from owning, possessing or keeping within his place of residence or place of business any pistol, revolver or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess or keep any such firearm at his place of residence or place of business shall be required of any such citizen. Firearms carried openly in belt holsters shall not be deemed to be concealed within the meaning of this section.

Section 6. Nothing in the preceding section shall be construed to apply to or affect sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed peace officers, nor to any person summoned by any such officers to assist in making arrests or preserving the peace while said person so summoned is actually engaged in assisting such officer; nor to the possession or transportation by any merchant of unloaded firearms as merchandise; nor to members of the army, navy or marine corps of the United States, or the national guard, when on duty, nor to organizations which are by law authorized to purchase or receive such weapons from the United States, or from this state; nor to duly authorized military or civil organizations while parading, nor to the members thereof when going to and from the places of meeting of their respective organizations; nor to members of any club or organization now existing, or hereafter organized, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in this act upon such target ranges, or while going to and from such ranges; nor to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from such hunting or fishing expedition.

Section 7. The unlawful concealed carrying upon the person or within the vehicle of the carrier of any pistol, revolver or other firearm capable of being concealed upon the person, is a nuisance. Any such weapons taken from the person or vehicle of any person unlawfully carrying the same are hereby declared to be nuisances, and shall be surrendered to the magistrate before whom said person shall be taken, except that in any city, county, town or other municipal corporation the same shall be surrendered to the head of the police force or police department thereof. The officers to whom the same may be so surrendered, except upon the certificate of a judge or a court of record, or of the district attorney of the county,

that the preservation thereof is necessary or proper to the ends of justice, shall annually, between the first and tenth days of July, in each year, destroy or cause to be destroyed such weapons to such extent that the same shall become and be wholly and entirely ineffective and useless for the purpose for which it was [they were] manufactured; provided, however, that in the event any such weapon has been stolen and is thereafter recovered from the thief or his transferee the same shall not be destroyed but shall be restored to the lawful owner thereof, so [as] soon as its use as evidence has been served, upon his identification of the weapon and proof of ownership thereof; provided, that upon the certificate of a judge or of the district attorney that the ends of justice will be subserved thereby such weapon shall be preserved until the necessity for its use ceases.

Section 8. It shall be lawful for the sheriff of a county, and the board of police commissioners, chief of police, city marshal, town marshal, or other head of the police department of any city, county, town, or other municipal corporation of this state, upon proof before said board, chief, marshal or other police head, that the person applying therefor is of good moral character, and that good cause exists for the issuance thereof, to issue to such person a license to carry concealed a pistol, revolver or other firearm for a period of one year from the date of such license. All applications for such licenses shall be filed in writing, signed by the applicant, and shall state the name, occupation, residence and business address of the applicant, his age, height, weight, color of eyes and hair, and reason for desiring a license to carry such weapon. Any license issued upon such application shall set forth the foregoing data and shall, in addition, contain a description of the weapon authorized to be carried, giving the name of the manufacturer, the serial number and the caliber thereof. When such licenses are issued by a sheriff a record thereof shall be kept in the office of the county clerk; when issued by police authority such record shall be maintained in the office of the authority by whom issued. Such applications and licenses shall be uniform throughout the state, upon forms to be prescribed by the attorney general.

Section 9. Every person in the business of selling, leasing or otherwise transferring a pistol, revolver or other firearm, of a size capable of being concealed upon the person, whether such seller, lessor or transferor is a retail dealer, pawnbroker or otherwise, except as hereinafter provided, shall keep a register in which shall be entered the time of sale, the date of sale, the name of the salesman making the sale, the place where sold, the make, model, manufacturer's number, caliber

or other marks of identification on such pistol, revolver or other firearm. Such register shall be prepared by and obtained from the state printer and shall be furnished by the state printer to said dealers on application at a cost of $3 per one hundred leaves, in duplicate, and shall be in the form hereinafter provided. The purchaser of any firearm capable of being concealed upon the person shall sign, and the dealer shall require him to sign, his name and affix his address to said register, in duplicate, and the salesman shall affix his signature, in duplicate, as a witness to the signature of the purchaser. Any person signing a fictitious name or address is guilty of a misdemeanor. The duplicate sheet of such register shall, on the evening of the day of sale, be placed in the mail, postage prepaid, and properly addressed to the board of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the city, county, town or other municipal corporation wherein the sale was made; provided, that where the sale is made in a district where there is no municipal police department, said duplicate sheet shall be mailed to the county clerk of the county wherein the sale is made. A violation of any of the provisions of this section by any person engaged in the business of selling, leasing or otherwise transferring such firearm is a misdemeanor. This section shall not apply to wholesale dealers in their business intercourse with retail dealers, nor to wholesale or retail dealers in the regular or ordinary transportation of unloaded firearms as merchandise by mail, express or other mode of shipment, to points outside of the city, county, town or municipal corporation wherein they are situated. The register provided for in this act shall be substantially in the following form:

FORM OF REGISTER

Series No..................<br>Sheet No. ..................

Original<br>DEALERS' RECORD OF SALE OF REVOLVER OR PISTOL<br>State of Oregon

Notice to Dealers: This original is for your files. If spoiled in making out, do not destroy. Keep in books. Fill out in duplicate.

Carbon duplicate must be mailed on the evening of the day of sale, to head of police commissioners, chief of police, city marshal, town marshal or other head of the police department of the municipal corporations wherein the sale is made, or to the county clerk of your county if the sale is made in a district where there is no municipal police department. Violation of this law is a misdemeanor. Use carbon paper for duplicate. · Use indelible pencil.

Sold by ............................................................Salesman....................
City, town or township ..........................................................................
Description of arm (state whether revolver or pistol)..............................
Maker ................................................ Number .................. Caliber ..................

Name of purchaser ........................................ Age ................... years
Permanent residence (state name of city, town or township, street and
    number of dwelling) ..................................................................
Height ................. feet ................... inches.  Occupation...............................
Color ..................... Skin ................... Eyes ................... Hair .......................
If traveling, or in locality temporarily, give local address ...........................

...........................................................................................................

Signature of purchaser ..........................................................................
    (Signing a fictitious name or address is a misdemeanor.  To be
signed in duplicate.)
Witness ............................................................ Salesman.
           (To be signed in duplicate.)

                            Series No..................
                            Sheet No. ................

### DUPLICATE
#### DEALERS' RECORD OF SALE OF REVOLVER OR PISTOL
#### State of Oregon

    Notice to Dealers:  This carbon duplicate must be mailed on the
evening of the day of sale as set forth in the original of this register
page.  Violation of this law is a misdemeanor.
Sold by .............................................................Salesman........................
City, town or township ....................................................................
Description of arm (state whether revolver or pistol)................................
Maker .............................................. Number ................. Caliber .................
Name of purchaser ..................................... Age ................... years
Permanent residence (state name of city, town or township, street and
    number of dwelling) ..................................................................
Height ................. feet ................... inches.  Occupation...............................
Color ..................... Skin ................... Eyes ................... Hair .......................
If traveling, or in locality temporarily, give local address ...........................

...........................................................................................................

Signature of purchaser ..........................................................................
    (Signing a fictitious name or address is a misdemeanor.  To be
signed in duplicate.)
Witness ............................................................ Salesman.
           (To be signed in duplicate.)

    Section 10.  No person shall sell, deliver or otherwise
transfer any pistol, revolver or other firearm capable of being
concealed upon the person to any person whom he has cause
to believe to be within any of the classes prohibited by sec-
tion 2 hereof from owning or possessing such firearms, nor
to any minor under the age of eighteen years.  In no event
shall any such firearm be delivered to the purchaser upon the
day of the application for the purchase thereof, and when
delivered such firearm shall be securely wrapped and shall be
unloaded.  When neither party to the transaction holds a
dealers' license, no person shall sell or otherwise transfer any
such firearm to any other person within this state who is
not personally known to the vendor.  Any violation of the
provisions of this section shall be a misdemeanor.

Section 11. The duly constituted licensing authorities of any city, county, town or other municipality within this state may grant licenses in form prescribed by the attorney general, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city, county, town or other municipality pistols, revolvers and other firearms capable of being concealed upon the person, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered:

(a) On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; or

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen.

Section 12. Any person who, without being licensed as above provided, engages in the business of selling or otherwise transferring, or who advertises for sale or offers or exposes for sale or transfer, any pistol, revolver or other firearm capable of being concealed upon the person is guilty of a misdemeanor.

Section 13. No person shall change, alter, remove or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed or obliterated the same. Violation of this section shall be punished by imprisonment in the state penitentiary for not more than five years.

Section 14. All permits heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of June 1, 1925.

Section 15. This act shall not apply to antique pistols or revolvers incapable of use as such.

Section 16. If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection,

App. 36

sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional.

Section 17. All acts and parts of acts in conflict herewith are hereby repealed.

Approved by the governor February 26, 1925.
Filed in the office of the secretary of state February 26, 1925.

---

# CHAPTER 261

## AN ACT

[H. B. 460]

Providing for the election of county school superintendents in certain counties, prescribing their powers and duties and providing for payment of salaries and expenses of the office.

*Be It Enacted by the People of the State of Oregon:*

Section 1. In all counties of this state having a population of 25,000 or more children of school age the county superintendent of schools shall have jurisdiction only of the schools of that county as shall be outside of the corporate limits of districts of the first class. He shall be elected at the biennial election in the year 1928, and every four years thereafter, by the legal voters of the county outside of districts of the first class. He shall take his office on the first Monday of January following his election; provided, that the present county school superintendent at no decrease in salary shall be ex officio county school superintendent until the expiration of his term of office. In districts of the first class, in addition to the authority now conferred upon the city superintendent of such districts, said city superintendent shall be and he hereby is vested with the authority now exercised by the county school superintendent in such districts and all reports heretofore rendered by said district to the *[county school superintendent shall be made to the] state superintendent of public instruction.

Section 2. In all counties coming under the provisions of this act the salaries of the county school superintendent, assistant superintendents, and all expenses for clerical help, traveling expenses or for any other expenses of the office of said county school superintendent shall be paid from a fund known as the county school superintendent's fund, hereinafter provided, by warrants drawn on this fund in the same manner that warrants may be drawn for the salaries for other county officials

Section 3. In all counties coming under the provisions of this act on the first Monday of November of each year the

---

* The phrase inclosed in brackets appears in the engrossed bill, but was omitted in the enrolled act.

# ACT 206

[H. B. No. 322]

AN ACT Regulating the Sale, Transfer and Possession of Certain Firearms and Ammunitions, and Amending Sections 2136, 2137, 2138, 2139, 2140, 2141, 2142, 2143, 2146 and 2147 of the Revised Laws of Hawaii 1925.

*Be it Enacted by the Legislature of the Territory of Hawaii:*

Section 1. Definitions. "Pistol" or "revolver" as used in this Act, means any firearm with barrel less than twelve inches in length.

"Crime of Violence", as used in this Act means any of the following crimes, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, larceny, burglary and housebreaking.

Section 2. Committing crime when armed. If any person, when armed with a pistol or revolver, shall commit or attempt to commit an act constituting a crime of violence, he may in addition to the punishment otherwise provided for the crime, be punished by imprisonment for not more than one year or by a fine of not more than one thousand dollars ($1,000.00) or by both; provided, that the act aforesaid be one which is capable of being committed or facilitated by means of a pistol or revolver.

Section 3. Being armed prima facie evidence of intent. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol or revolver and had no license to carry the same, shall be prima facie evidence of his intention to commit said crime of violence; provided, that the criminal act committed or attempted be one which is capable of being committed or facilitated by means of a pistol or revolver.

Section 4. Persons forbidden to possess small arms. No person who has been convicted in this territory, or elsewhere, of having committed or attempted a crime of violence, shall own or have in his possession or under his control, a pistol or revolver.

Section 5. Carrying or keeping small arms by unlicensed persons. Except as otherwise provided in Sections 7 and 11 hereof in respect of certain licensees, no person shall carry, keep, possess or have under his control a pistol or revolver; provided, how-

14

ever, that any person who shall have lawfully acquired the ownership or possession of a pistol or revolver may, for purposes of protection and with or without a license, keep the same in the dwelling house or business office personally occupied by him, and, in case of an unlawful attack upon any person or property in said house or office, said pistol or revolver may be carried in any lawful, hot pursuit of the assailant.

SECTION 6. Exceptions. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen, mail carriers, or other duly appointed law enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States, or of the National Guard, when on duty, or of organizations by law authorized to purchase or receive such weapons from the United States or this territory, or to officers or employees of the United States authorized by law to carry a concealed pistol or revolver, or to duly authorized military organizations when on duty, or to the members thereof when at or going to or from their customary places of assembly, or to the regular and ordinary transportation of pistols or revolvers as merchandise, or to any person while carrying a pistol or revolver unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

SECTION 7. Issuse of licenses to carry. The judge of a court of record or the sheriff of a county, or city and county, shall, upon the application of any person having a bona fide residence or place of business within the jurisdiction of said licensing authority, or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol or revolver concealed upon his person or to carry one elsewhere than in his home or office, said license being issued by the authorities of any state or political subdivision of the United States, issue a license to such person to carry a pistol or revolver within this territory elsewhere than in his home or office, for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol or revolver, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the treasurer of the territory, and shall bear the name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee; the duplicate shall, within seven days, be sent by registered mail, to the treasurer of the territory and the

triplicate shall be preserved for six years by the authority issuing said license.

Section 8.  Selling to minors.  No person shall sell, barter, hire, lend, or give any pistol or revolver to any person under the age of eighteen years.

Section 9.  Transfers regulated.  No person shall transfer by way of sale, gift, loan or otherwise, a pistol or revolver unless the prospective transferee, when he applies for the transfer, presents a permit duly granted under Section 2141 of the Revised Laws of Hawaii 1925; nor shall he make such transfer unless the transferee be a person in respect of whom there is no reasonable cause, known to the transferor, for believing that such transferee has committed or attempted, or has been convicted of committing or attempting, a crime of violence.  No seller shall in any event deliver a pistol or revolver on the day when the application to purchase and the statement hereinafter mentioned shall be made.  When delivered, said pistol or revolver shall be securely wrapped and shall be un-loaded.  Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, race, nationality, color, and place of birth, the date of sale, the caliber, make, model, and manu-facturer's number of the weapon, and stating that he has never been convicted of a crime of violence.  The seller shall promptly sign and forward by registered mail one copy thereof to the treasurer of the territory, and one copy thereof to the sheriff of the county or city and county of which the seller is a resident, and shall retain the other copy for six years.   A statement shall be deemed promptly forwarded if it is forwarded within seven days, unless a shorter time is provided therefor in regulations established by the Governor.

Section 10.  Dealers to be licensed.  No retail dealer or selling agent shall sell or otherwise transfer, or expose for sale or trans-fer, or have in his possession with intent to sell, or otherwise trans-fer, any pistol or revolver without being licensed as hereinafter provided.

Section 11.  Dealers' Licenses; by whom granted, and condi-tions thereof.  The duly constituted licensing authorities of any political subdivision of this territory may grant licenses in form prescribed by the treasurer of the territory, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol or revolver shall be delivered unless the purchaser either is personally known to the seller or shall present clear evidence of his identity.

4. The seller shall faithfully comply with the requirements of Section 9 hereof and with all other provisions of this Act and of Chapter 128, Revised Laws of Hawaii 1925. A copy of the statement required by Section 9 hereof shall be entered by the seller in a book of record to be kept in his place of business and to be always open to the inspection of the officers and authorized representatives of the territorial government, including the police. Said book shall be preserved for six years.

5. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

No license to sell at retail shall be granted to anyone except as provided in this section.

SECTION 12. False information forbidden. No person shall, in purchasing or otherwise securing delivery of a pistol or revolver, or in applying for a license to carry the same, give false information or offer false evidence of his identity.

SECTION 13. Alteration of identifying marks prohibited. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number or other mark of identification on any pistol or revolver. Possession of any pistol or revolver upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

SECTION 14. Existing licenses revoked. All licenses heretofore issued within this territory permitting the carrying of pistols or revolvers shall expire at midnight of the 30th day of June, 1927.

SECTION 15. Exceptions. This Act shall not apply to antique pistols or revolvers unsuitable for use as firearms.

SECTION 16. Act supersedes local laws. The provisions of this Act shall be effective and controlling throughout this territory, notwithstanding the provisions of any local law or ordinance.

Section 17.    Penalties.    Any violation of any provision of this Act shall constitute an offense punishable by a fine of not more than one thousand dollars ($1,000.00) or imprisonment for not more than one year, or both.

Section 18.    Section 2136 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2136.    Report upon acquiring title to or possession of firearms or ammunition.    Except as otherwise provided by law, any person, firm, corporation or copartnership, residing or doing business within the territory acquiring title or possession or importing into (by express or otherwise) or receiving within the territory any firearm or any ammunition, capable of causing death or inflicting great personal injury, who shall fail to file a description of the same in the manner provided by this chapter, shall be deemed guilty of a misdemeanor and punished as this chapter provides.    Except in so far as the acquisition of title to or possession of a firearm or of ammunition may be reported by the dealer or selling agent under the provisions of Section 2140 hereof, such person, firm, corporation or copartnership shall, within two weeks after such acquisition, importation or receipt, file a report with the sheriff of the county or city and county wherein his or its place of business, or if there be none within the territory, his or its residence, or if there be neither residence nor place of business therein, his place of sojourn therein, is located.    Said report shall include a description of the class of firearm or firearms or/and ammunition owned by him, it or them or in his, its or their possession, which description shall set forth the class of firearm or firearms or/and ammunition so owned and possessed, together with the name of the maker and the factory number, when such number appears on such firearm or firearms or ammunition.

The Governor may, in his discretion, require the filing in like manner, at a time or at times to be fixed by him, of like reports by all persons, firms, corporations or copartnerships owning or possessing, at a date or at dates to be announced by the Governor, any firearm or ammunition within this territory; provided, that at least one month shall expire between the publication or announcement of the Governor's said requirement and the time fixed for filing. Where any person responsible for making a report hereunder is unable to furnish all of the information herein or hereby required, he shall furnish as much as may be possible and in such manner as may be required by the sheriff."

Section 19.    Section 2137 of the Revised Laws of Hawaii 1925, is hereby amended by inserting the words "acquired or" before the words "in possession," in the caption preceding the required form.

Strike out the words "owned by him or in my possession" appearing in the certificate in the required form, and insert in lieu thereof the words "acquired, imported or otherwise received by me." · At the end of Section 2137, add the following: "Note: In case a special report is required by the Governor under the terms of this section, the person making the report should strike out the words "acquired, imported or otherwise received by me" and insert in lieu thereof, the words "owned by me or in my possession.""

SECTION 20. Section 2138 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2138. Information required and furnished Governor. It shall be the further duty of the sheriff to enter in a book to be provided for such purpose, all information thus furnished him relative to the ownership, acquisition, importation, delivery and possession of firearms and ammunition, which book shall be an exact duplication of the descriptions furnished, and, further, to furnish to the Governor not later than the 20th day of January and the 20th day of July of each and every year, an exact report, a complete copy of the description and information so furnished as aforesaid and as required by Sections 2139 and 2140 hereof."

SECTION 21. Section 2139 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2139. Further information. It shall be the duty of every person, firm, corporation, copartnership, dealing in firearms or/and ammunition at wholesale or at retail, including commission merchants and selling agents, to furnish to the sheriff of the county or city and county in which such person resides, or wherein such business is carried on, on the first day of January and the first day of July of each and every year, a list of all firearms and ammunition in his, their or its possession, and likewise at the times mentioned, furnish to such sheriff a list of all arms brought into the territory, in transit or otherwise, by him, them or it during the six months next preceding such date upon which such list and description is required to be filed; the lists thus to be furnished by such dealers in firearms and ammunition shall comply as nearly as possible with the requirements of Sections 2136 and 2137, as may be determined by such sheriff.

It shall be the duty of the sheriff to inspect the shops, stores, warehouses and other business premises of such dealers, commission merchants and selling agents, to verify the accuracy of the reports made and to ascertain whether any required reports have been omitted."

Section 22.  Section 2140 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2140.    Sale of firearms or ammunition; report. Whenever any person, firm, corporation, copartnership, dealing in or keeping for sale firearms or ammunition, shall make a sale of any firearms or ammunition or shall in any manner dispose of the same to any person, it shall be the duty of such person, firm, corporation, copartnership, promptly to make an official written report of said transaction and to include therein such information as shall satisfy the requirements of this chapter.  A report shall be deemed promptly made, if it is forwarded within seven days, unless a shorter time is provided therefor in regulations established by the Governor.  As to a sale of firearms of any size or class whatever, said report shall conform, in respect of the manner of signing, of the information included, of the officials to whom it shall be forwarded and of all other particulars, with the requirements prescribed as to a sale of pistols or revolvers by Sections 9 and 11 of the Small Arms Act and a record of the facts contained in said report shall be made in the book required by Section 11 of the Small Arms Act or in a similar book of record, open to inspection by any proper officer or his representative. As to a sale of ammunition, said report shall be made to the sheriff of the county wherein the sale or disposition thereof takes place; it shall contain (1) the name of the owner; (2) in case of a sale, the names of vendor and vendee; (3) the name of the recipient of the ammunition, in the event that it be delivered to some one other than the vendee or his employee; (4) the date of the sale or disposition; and (5) a description of the character and quantity of such ammunition."

Section 23.  Section 2141 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2141.    No delivery without permit to acquire.  No person owning, possessing or entitled to dispose of a firearm of any class, whether or not he be a dealer in firearms, shall deliver a firearm to another person, unless the latter present a permit, in duplicate, authorizing the acquisition by him of a firearm of the kind or class to be delivered and bearing date on a day during the preceding thirty days.  Such permits shall be issued by the sheriff of the county or city and county wherein the applicant resides, or, in the case of non-residents, by the sheriff of the county of his sojourn; provided (1) that the applicant is found not to be a habitual criminal or a person who has been convicted in a court of the territory, or in any other court, of having committed or attempted a crime of violence, as that phrase is defined in the Small Arms Act; and (2) that the applicant is found not to be an

anarchist or a person who desires the overthrow of the government of the United States or the diminution of its territory or domain or a person who, if armed, would tend to imperil or weaken the government of the United States or of the territory. The person making delivery of any firearm, whether by virtue of a sale, a gift, a loan or otherwise, shall send to the proper sheriff, by registered mail, one copy of the permit, presented to him as aforesaid; such sheriff being the one by whom the permit was issued. The other copy of the permit shall, for sixty days, be retained by the person making delivery as aforesaid. Such permit shall be subject to inspection by any sheriff or officer of the law or his representative; and it shall be the duty of the person making delivery of the firearm to answer, to the best of his ability, orally, or in writing, (as may be required) any reasonable questions by a proper officer or his representative concerning the identity or description of the firearm so delivered."

SECTION 24. Section 2142 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2142. Penalties. Any person who shall deliver or receive a firearm without complying with the requirements of Section 2141, and any person who shall otherwise violate any provision of said section, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment for a term of not more than one year, or by both such fine and imprisonment.

Any person furnishing information leading to the conviction of any person violating any provision of Section 2141 shall be paid an amount equal to one-half of the fine that may be imposed against the person convicted."

SECTION 25. Section 2143 of the Revised Laws of Hawaii 1925, is hereby amended by inserting, after the first sentence in said section, the following: "The request aforesaid shall include (1) an expression of the belief of such citizens that the applicant has never committed or attempted a crime of violence, as that phrase is defined in the Small Arms Act; that he has never been convicted thereof anywhere and that he is not likely to commit or attempt any such crime and (2) a brief statement of the facts relating to the age, character, nativity and personal history of the applicant, insofar as these facts are within the personal knowledge of such responsible citizens. Such facts as are within the personal knowledge of one of them, only, shall be included in a supplemental written statement signed by the person having such knowledge."

Section 26. Section 2146 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2146. Penalties. Any person who shall be found in the possession of any firearm or firearms or any ammunition without having complied with the provisions of this chapter, or who shall fail to give, file or forward required information, reports or statements, or who shall otherwise violate the provisions of this chapter in matters not covered by Section 2142 hereof, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined by the court of appropriate jurisdiction in a sum of not more than five hundred dollars ($500.00). Any person, firm, corporation, copartnership, failing to file any information herein required to be filed, shall be deemed guilty of a misdemeanor and upon conviction shall be fined by the court of appropriate jurisdiction not more than five hundred dollars ($500.00).

The divulging of official information recorded or on file in a public office shall be punishable in like manner; provided, however, that where the information divulged has not tended, or been designed to encourage, or to render formidable armed resistance to the law, the fine shall not exceed twenty-five dollars ($25.00)."

Section 27. Section 2147 of the Revised Laws of Hawaii 1925, is hereby amended to read as follows:

"Section 2147. Exceptions. The requirements and provisions of this Chapter shall not apply to those who, under Section 6 of the Small Arms Act, are excepted from the provisions of Section 5 of that Act."

Section 28. Constitutionality. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

Section 29. Short title. The first seventeen sections of this Act are herein referred to as the "Small Arms Act," by which designation such sections may be cited.

Section 30. Certain Acts repealed. All laws or parts of laws inconsistent herewith are hereby repealed, but the provisions of Chapter 128, Revised Laws of Hawaii 1925, are not repealed hereby, except where plainly inconsistent herewith.

Section 31. This Act shall take effect from and after July 1, 1927.

Approved this 27th day of April, A. D. 1927.

W. R. FARRINGTON,
Governor of the Territory of Hawaii.

vent the state treasurer from deducting at any time, from <span style="float:right;font-size:smaller">Deduction of tax from money due from commonwealth.</span> any moneys which may be due from the commonwealth to the delinquent city or town, the whole or any part of said tax, with the interest accrued thereon, which shall remain unpaid.                                    *Approved April 27, 1927.*

---

AN ACT RELATIVE TO THE CHOICE OF A THIRD MEMBER OF THE STATE BOARD OF RETIREMENT.     *Chap.*325

*Whereas,* The deferred operation of this act would in part defeat its purpose, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience. <span style="float:right;font-size:smaller">Emergency preamble.</span>

*Be it enacted, etc., as follows:*

Chapter ten of the General Laws is hereby amended by striking out section eighteen and inserting in place thereof the following: — *Section 18.* There shall be a state board of retirement serving in the department, consisting of three members, one of whom shall be the state treasurer, ex officio, who shall be chairman, a second member elected by the state retirement association established under section two of chapter thirty-two from among their number in such manner as the commissioner of insurance may determine, and a third member chosen by the other two. If the third member is not so chosen within thirty days after the election of the second, the governor shall appoint the third member for a term of three years. Upon the expiration of the term of office of an elected, chosen or appointed member or in case of a vacancy in either of said offices, his successor shall be elected, chosen or appointed as aforesaid for three years. <span style="float:right;font-size:smaller">G. L. 10, § 18, amended.</span> <span style="float:right;font-size:smaller">State board of retirement, members, election.</span> <span style="float:right;font-size:smaller">Expirations and vacancies.</span>

*Approved April 27, 1927.*

---

AN ACT RELATIVE TO MACHINE GUNS AND OTHER FIREARMS.     *Chap.*326

*Be it enacted, etc., as follows:*

SECTION 1. Chapter one hundred and forty of the General Laws, as amended in section one hundred and twenty-one by section one of chapter four hundred and eighty-five of the acts of nineteen hundred and twenty-two, is hereby further amended by striking out said section one hundred and twenty-one and inserting in place thereof the following: — *Section 121.* In sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, "firearms" includes a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel, not including any revolving, detachable or magazine breech, does not exceed twelve inches, and a machine gun, irrespective of the length of the barrel. Any gun of small arm calibre designed for rapid fire and operated by a mechanism, or any gun which operates automatically after the first shot has been fired, either by gas action or recoil action, <span style="float:right;font-size:smaller">G. L. 140, § 121, etc., amended.</span> <span style="float:right;font-size:smaller">Definition of "firearms."</span> <span style="float:right;font-size:smaller">Definition of "machine gun."</span>

shall be deemed to be a machine gun for the purposes of said sections, and of sections one hundred and thirty-one and one hundred and thirty-one B. As used in this section and in sections one hundred and twenty-two to one hundred and thirty-one A, the words "purchase" and "sale" shall include exchange, the word "purchaser" shall include exchanger, and the verbs "sell" and "purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense. Said sections one hundred and twenty-two to one hundred and twenty-nine, inclusive, shall not apply to antique firearms incapable of use as firearms nor to sales of firearms at wholesale.

SECTION 2. Said chapter one hundred and forty, as amended in section one hundred and twenty-three by section four of said chapter four hundred and eighty-five, by section one of chapter two hundred and eighty-four of the acts of nineteen hundred and twenty-five and by section one of chapter three hundred and ninety-five of the acts of nineteen hundred and twenty-six, is hereby further amended by striking out said section one hundred and twenty-three and inserting in place thereof the following: — *Section 123.* The license shall be expressed to be and shall be subject to the following conditions: First, That the provisions in regard to the nature of the license and the building in which the business may be carried on under it shall be strictly adhered to. Second, That every licensee shall before delivery of a firearm make or cause to be made a true entry in a sales record book to be furnished by the licensing authorities and to be kept for that purpose, specifying the description of the firearm, the make, number, whether single barrel, magazine, revolver, pin, rim or central fire, whether sold, rented or leased, the date and hour of such delivery, and shall, before delivery as aforesaid, require the purchaser, renter or lessee personally to write in said sales record book his full name, sex, residence and occupation. The said book shall be open at all times to the inspection of the licensing authorities and of the police. Third, That the license or a copy thereof, certified by the recording officer of the licensing authorities or by the clerk of the town by which it is issued, shall be displayed on the premises in a position where it can easily be read. Fourth, That no firearms shall be displayed in any outer window of said premises or in any other place where they can readily be seen from the outside. Fifth, That the licensee shall, once a week, send a copy of the record of sales, rentals and leases made by him for the preceding seven days to the licensing authorities and to the commissioner of public safety. Sixth, That every firearm shall be delivered securely wrapped and fastened and shall be unloaded when delivered. Seventh, That no delivery of a pistol or revolver shall be made on the day of application for the purchase, rental or lease thereof, except to a person having a license to carry the

Words "purchase" and "sale" to include exchange, word "purchaser" to include exchanger, and verbs "sell" and "purchase" to include verb exchange.

Sections not applicable to certain firearms.

G. L. 140, § 123, etc., amended.

Conditions of licenses to sell, rent or lease certain firearms.

same issued under section one hundred and thirty-one. Conditions of licenses to sell, rent or lease certain firearms. Eighth, That no pistol or revolver shall be sold, rented or leased to a person who has not a permit, then in force, to purchase, rent or lease the same issued under section one hundred and thirty-one A, and that no machine gun shall be sold, rented or leased to a person who has not a license to possess the same issued under section one hundred and thirty-one. Ninth, That upon a sale, rental or lease of a pistol or revolver, the licensee under section one hundred and twenty-two shall take up such permit and shall endorse upon it the time and place of said sale, rental or lease, and shall forthwith transmit the same to the commissioner of public safety, and that upon the sale, rental or lease of a machine gun shall endorse upon the license to possess the same the time and place of said sale, rental or lease, and shall forthwith transmit a notice thereof to said commissioner. Tenth, That this license shall be subject to forfeiture as provided in section one hundred and twenty-five for breach of any of its conditions, and that, if the licensee hereunder is convicted of a violation of any such condition, this license shall thereupon become void.

SECTION 3. Section one hundred and thirty-one of said G. L. 140, § 131, etc., amended. chapter one hundred and forty, as amended by section nine of said chapter four hundred and eighty-five and by section four of said chapter two hundred and eighty-four, is hereby further amended by inserting after the word "commonwealth" in the twelfth line the words: — or to possess therein a machine gun, — so as to read as follows: — *Section* License to carry pistols or revolvers, or possess machine gun, issuance to certain persons, etc. *131.* The justice of a court or a trial justice, the board of police or mayor of a city, the selectmen of a town, or the commissioner of public safety, or persons authorized by them, may, upon the application of any person residing or having a place of business within the jurisdiction of the person or body issuing the license, except an unnaturalized person, a person who has been convicted of a felony or of the unlawful use or sale of drugs or a minor other than one fifteen years of age or over in the employ of a bank, public utility corporation or business of a similar nature whose application is endorsed by his employer, issue a license to such applicant to carry a pistol or revolver in the commonwealth or to possess therein a machine gun, if it appears that he has good reason to fear an injury to his person or property or for any other proper purpose, and that he is a suitable person to be so licensed. Such license shall be Duration of license. issued for a term not to exceed one year, but may be for a less period, and all such licenses shall be revocable at the Revocation. will of the person or body issuing the same, who shall forthwith send written notice of such revocation to the commissioner of public safety. Said licenses shall be issued on Form, etc. forms furnished by said commissioner and a copy of every license so issued shall within one week after the granting thereof be sent to the said commissioner. Whoever issues Penalty.

a license in violation of this section shall be punished by imprisonment for not less than six months nor more than two years in a jail or house of correction.

SECTION 4. Section one hundred and thirty-one B of said chapter one hundred and forty, inserted by section three of said chapter three hundred and ninety-five, is hereby amended by striking out the word "or" where it occurs a second time in the second line and inserting in place thereof a comma and also by inserting after the word "revolver" in the same line the words: — or machine gun, —

so as to read as follows: — *Section 131B.* Whoever loans money secured by mortgage, deposit or pledge of a pistol, revolver or machine gun shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year, or by both.

SECTION 5. Section ten of chapter two hundred and sixty-nine of the General Laws, as amended by section one of chapter two hundred and forty-eight of the acts of nineteen hundred and twenty-three and by section five of said chapter two hundred and eighty-four, is hereby further amended by inserting after the word "unloaded" in the third line the words: — , or possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty, — so as to read as follows: —

Penalty for
carrying
dangerous
weapons or
possessing
machine gun
without per-
mission, etc.

*Section 10.* Whoever, except as provided by law, carries on his person, or carries on his person or under his control in a vehicle, a pistol or revolver, loaded or unloaded, or possesses a machine gun as defined in section one hundred and twenty-one of chapter one hundred and forty, without permission under section one hundred and thirty-one of chapter one hundred and forty, or whoever so carries any stiletto, dagger, dirk knife, slung shot, metallic knuckles or sawed off shotgun, or whoever, when arrested upon a warrant for an alleged crime or when arrested while committing a crime or a breach or disturbance of the public peace, is armed with, or has on his person, or has on his person or under his control in a vehicle, a billy or dangerous weapon other than those herein mentioned, shall be punished by imprisonment for not less than six months nor more than two and one half years in a jail or house of correction or for not less than two and one half years nor more than five

years in the state prison, and upon conviction the pistol or other article shall be confiscated by the commonwealth.

The pistol or article so confiscated shall, by the authority of the written order of the court or trial justice, be forwarded by common carrier to the commissioner of public safety, who, upon receipt of the same, shall notify said court or justice thereof. Said commissioner may sell or destroy the same, and, in case of a sale, after paying the cost of forwarding the article, shall pay over the net proceeds to the commonwealth.          *Approved April 27, 1927.*

## VII. MISCELLANEOUS.

Repealer.

25. All acts and parts of acts inconsistent with the provisions hereof are repealed in so far as applicable to the matters which are the subject of this act; *provided,* that nothing herein contained shall affect the practice and procedure prescribed under the State Motor Vehicle and Traffic acts.

Proviso.

As to constitutionality of act.

26. In case for any reason any section, part of section or provision of this act shall be questioned in any court, or determined to be unconstitutional or invalid, the same shall not in anywise affect any other section, part of section or provision of this act; *provided,* that in cities bordering on the Atlantic ocean having a population in excess of fifty thousand the salary shall not exceed six thousand dollars.

Proviso.

27. This act shall take effect immediately.

Approved March 30, 1927.

---

## CHAPTER 321.

A Further Supplement to an act entitled "An act for the punishment of crimes" (Revision of 1898), approved June fourteenth, one thousand eight hundred and ninety-eight.

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

Pawnbrokers not to deal in weapons.

1. No pawnbroker shall hereafter sell or have in his possession for sale or to loan or give away, any machine gun, automatic rifle, revolver, pistol, or other firearm, or other instrument of any kind known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive. Any pawnbroker violating the provisions of this act shall be guilty of a high misdemeanor and punished accordingly.

Penalty.

2. Any person who shall commit or attempt to commit any assault, robbery, larceny, burglary, or breaking and entering, when armed with, or having in his possession, any revolver, pistol, or other firearm, or other instrument of any kind known as a blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive, shall, in addition to the punishment provided for the crime, be punished on a first conviction by imprisonment for not more than five years; upon a second conviction for a period of not more than ten years; upon a third conviction by imprisonment for a period of not more than fifteen years; upon a fourth or subsequent conviction, by imprisonment for life, or for an additional period of not more than twenty years, in the discretion of the court; *provided, however,* the indictment or allegation shall aver that the person was armed with or had in his possession any such instrument and conviction is had thereon. *(margin: Additional Sentence for Armed Criminals.)* *(margin: Proviso.)*

3. In the trial of a person for committing or attempting to commit any crime enumerated in section two hereof, the fact that he was armed with or had in his possession any of the firearms or instruments enumerated in section one hereof without a license to carry the same, shall be prima facie evidence of his intention to commit said crime of violence. *(margin: Arms as evidence of intent.)*

The presence of a firearm in a vehicle is presumptive evidence of possession by all persons occupying or using the vehicle at the time. *(margin: Firearms in vehicle.)*

4. No person who shall have been convicted in this State or elsewhere of any of the crimes enumerated in section two hereof shall purchase, own, or have in his possession or under his control any of the firearms or instruments enumerated in section one hereof. Violation of this section shall be punished by imprisonment for not more than five years. *(margin: Convicted person not to have weapons.)* *(margin: Penalty.)*

5. Every person who manufactures, or who sells at wholesale, any of the firearms or instruments enumerated in section one hereof, shall be registered with the Secretary of State and shall furnish to the Secretary of State such particulars as may be prescribed by law for such registration; *provided,* that if the Secretary *(margin: Manufacturers of weapons registered.)* *(margin: Proviso.)*

of State is satisfied that any applicant for such registration cannot be permitted to carry on business as a manufacturer or wholesale dealer in the firearms or instruments enumerated in section one hereof without danger to the public safety, he may refuse to register that person.

Certificate furnished.

The Secretary of State shall furnish to every person who is registered under this section, a certificate of registration.

Removal of name from registration list.

If any person desires to have his name removed from registration, or if the Secretary of State is satisfied that any person whose name is registered is no longer carrying on business as such manufacturer or wholesale dealer, or has ceased to have a place of business within the State, or cannot longer be permitted to carry on business as such manufacturer or wholesale dealer without danger to the public safety, he shall, after giving reasonable notice to such manufacturer or wholesale dealer and hearing thereon, cause the name of such person to be removed from registration. Any person aggrieved by the refusal of such State official to register him as such manufacturer or wholesale dealer, or by the removal of his name from registration, shall have a right of appeal to the Supreme Court of the State.

Appeal may be taken.

Record of sales.

Every manufacturer and wholesale dealer shall keep a detailed record of each firearm or instrument sold by him. Such record shall include date of sale, name of purchaser, description of arm, and serial number thereof. The information contained in such record shall be available to police and other public officials in the performance of their official duties.

Retail dealers licensed.

6. No retail dealer shall sell or expose for sale, or have in his possession with intent to sell, any of the firearms or instruments enumerated in section one hereof without being licensed as hereafter provided.

Licenses granted by Common Pleas judge.

The Common Pleas judge of any court of this State, may, in his discretion, grant licenses in form prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols or revolvers, subject to the follow-

ing conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the build- *Place;* ing or buildings designated in the license.

2. The license or a copy thereof certified by the issu- *License displayed;* ing authority shall be displayed in a conspicuous place on the premises where it can be easily read.

3. No pistol or revolver, or imitation thereof, or *No advertising;* placard advertising the sale thereof, shall be placed in any window or in any part of said premises where it can be readily seen from the outside.

4. No pistol or revolver shall be delivered (a) unless *Delivery to purchaser;* the purchaser shall have obtained a permit to purchase under the provisions of section nine; (b) until seven days shall have elapsed after the application for the permit; (c) unless the purchaser either is personally known to the seller or shall present evidence of his identity; (d) unless the pistol or revolver shall be unloaded and securely wrapped; *provided, however,* a permit to cover *Proviso* a pistol or revolver shall, for the purposes of this section and of section nine of this act, be equivalent to a permit to purchase a pistol or revolver.

5. A true record of every pistol or revolver sold *Record kept by retailer;* shall be made in a book kept for the purpose, the form of which shall be prescribed by the Secretary of State and shall be personally signed by the person effecting the sale, and shall contain the date of the sale, the calibre, make, model, and manufacturer's number of the weapon, and the name, address and permit number of the purchaser.

No license to sell at retail shall be granted except as *Licensing;* provided in this section.

Violation of any of the provisions of this section *Penalty.* (viz. section six) shall be a misdemeanor.

7. Any person who shall knowingly sell any of the *Sale to minors, etc., illegal.* firearms or instruments enumerated in section one hereof to a minor under the age of eighteen years, or to a person not of sound mind, or to a drug addict, or to a person who has been convicted of committing or attempting to commit any of the crimes enumerated in section two hereof when armed with any of the firearms or instruments enumerated in section one hereof, shall be guilty of misdemeanor.

Penalty for loaning on firearms.

8. Any person who loans money secured by mortgage, deposit or pledge of a pistol or revolver shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year, or both.

Purchaser must have permit.

9. No person shall sell a pistol or revolver to another person unless the purchaser has first secured a permit to purchase or carry a pistol or revolver. No person of good character and who is of good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in other sections of this act, shall be denied a permit to purchase a pistol or

By whom granted.

revolver. The judge of any court within this State (except, however, justices of the peace), the sheriff of a county or the chief of police of a city, town or municipality shall upon application issue to any person qualified under the provisions of this section a permit to purchase a pistol or revolver, and the Secretary of State shall have concurrent jurisdiction to issue such permit in any case, notwithstanding it has been refused by any other licensing official, if in his opinion the applicant is qualified.

Application for permit.

Applications for such permits shall be in form as prescribed by the Secretary of State and shall set forth the name, residence, place of business, age, occupation, sex, color, and physical description of the applicant, and shall state whether the applicant is a citizen, and whether he has ever been convicted of any of the crimes enumerated in section two hereof as defined in this act. Such application shall be signed by the applicant and shall contain as reference the names and addresses of two reputable citizens personally acquainted with him.

Blank forms.

Application blanks shall be obtainable from the Secretary of State and from any other officers authorized to grant such permit, and may be obtained from licensed

Fee.

retail dealers. The application, together with a fee of fifty cents, shall be delivered or forwarded to the licensing authority who shall investigate the same, and unless good cause for the denial thereof shall appear, shall grant said permit within seven days from the date of

Permit in triplicate.

the receipt of the application. The permit shall be in form prescribed by the Secretary of State and shall be

issued to the applicant in triplicate. The applicant shall deliver to the seller the permit in triplicate and the seller shall indorse on the back of each copy the make, model, calibre and serial number of the pistol or revolver, sold under the permit. One copy shall then be returned to the purchaser with the pistol or revolver, one copy shall be kept by the seller as a permanent record, and the third copy shall be forwarded by the seller within three days to the Secretary of State. If the permit is not granted, the fee shall be returned to the applicant. *Disposition of copies.*

All fees for permits shall be paid into the general fund of the State if the permit be issued by the Secretary of State; to the municipality if the permit be issued by a municipal officer; in all other instances to the general fund of the county wherein the officer acts or the licensee resides or does business. *Disposition of fees.*

A person shall not be restricted as to the number of pistols or revolvers he may purchase, if he applies for and obtains permits to purchase the same, but only one pistol or revolver shall be purchased or delivered on each permit. *One pistol to each permit.*

10. The granting of permits to carry a revolver, pistol or other instrument, enumerated in section one hereof shall be under and according to the provisions of an act entitled "An act to amend an act entitled 'A further supplement to an act entitled "An act for the punishment of crimes" (Revision of 1898), approved June fourteenth, one thousand eight hundred and ninety-eight,' which supplementary act was approved March eleventh, nineteen hundred and twenty-four," and the supplements thereto and amendments thereof. *Act relative to granting permits.*

11. No person shall, without a license therefor issued as provided in the statute referred to in the preceding section, carry a pistol or revolver in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him; *provided, however,* that nothing in this act contained shall be construed in any way to apply to the United States marshal or his deputies, the sheriff, or the undersheriffs of any county, nor to the regularly employed members of any police department, nor to any special policemen appointed by the governing body of any *Carrying pistol without license.* *Proviso—exceptions to act.*

municipality of this State, nor to any prosecutor or assistant prosecutor of any county, regular fish and game wardens, constable, railway police, canal police, steamboat police, and prosecutor's detectives; nor to any member of the State Police, nor to any motor vehicle inspector; nor to any officer of the Society for the Prevention of Cruelty to Animals; nor to any prison or jail wardens or their deputies; nor to guards while in the employ of any banking or building and loan institution of this State; nor to any court attendant engaged in attending the Circuit Court, Court of Oyer and Terminer, Court of Common Pleas, or General Court of Quarter Sessions, justices of the peace; nor to the members of the Army, Navy or Marine Corps of the United States or of the National Guard when on duty; nor to duly authorized military organizations when under orders, nor to the members thereof when going to or from places of meeting of their respective organizations, carrying the weapons prescribed for such

*Proviso.* drill, exercise or parade; *and provided, further,* nothing in this act contained shall be construed to apply to any person having a written permit to carry any revolver, pistol or other firearm, when such permit has been obtained pursuant to the provisions of this act; nor to public utility corporations in the transportation of ex-

*Proviso* plosives; *provided, however,* that nothing herein contained shall prevent any person from keeping or carrying about his or her place of business, dwelling house or premises, any such revolver, pistol, firearm or other weapon, or from carrying the same from any place of purchase to his or her dwelling house or place of business, or from his or her dwelling house or place of business to any place where repairing is done, to have the same repaired and returned or to carry a gun, rifle or knife in the woods or fields or upon the waters of the State for the purpose of hunting or target practice.

*Definition of pistol.* Whenever the words "pistol" or "revolver" are used in this act such words shall include a shotgun, rifle or other firearm with over-all length less than twenty-six inches.

*Penalty for false information.* 12. Any person who shall give or cause to be given false information in applying for a permit to purchase or a license to carry a pistol or revolver, or in purchasing

or otherwise acquiring delivery of a pistol or revolver, shall be deemed to be guilty of a misdemeanor and shall be subject to the same penalty as is provided for the crime of misdemeanor in this State.

13. It shall be unlawful within this State to manufacture, sell, purchase or possess, except for military or police purposes, any muffler, silencer or device for deadening or muffling the sound of a firearm when discharged. Any violation of this section shall be a misdemeanor.

*Mufflers forbidden.*

14. Any person, except a duly appointed law enforcement officer, or a member of the Army, Navy, or Marine Corps of the United States, or of the National Guard or organized reserves when on duty, who possesses, or carries on or about his person or in a vehicle, a bomb or bomb shell, except for blasting or other commercial use, or who, with intent to use the same unlawfully against the person or property of another, possesses or carries any explosive substance, or any explosive liquid, gas or like substance, shall be guilty of a high misdemeanor.

*As to bombs.*

15. No person shall change, alter, remove or obliterate the name of the maker, model, manufacturer's number, or other mark of identification of any pistol or revolver. Any violation of this section shall be a misdemeanor.

*Not alter maker's name and number.*

16. No property right shall exist in any firearms unlawfully possessed, carried or used, and all such firearms are hereby declared to be nuisances and forfeited to the State. When such forfeited firearms shall be taken from any person, they shall be surrendered to the sheriff of the county in which taken or to the head of the police department in cities or to the office of the prosecutor of the county. *Provided, however,* that if any such firearms shall be found to be the property of an innocent owner, it shall be returned to such owner if and when no longer needed for evidential purposes.

*As to property right in firearms.*

*Proviso.*

17. In the case of the conviction under this act of a person who is not a citizen of the United States, it shall be the duty of the clerk of the court in which such conviction is secured to certify the fact of such conviction to the proper officer of the United States Government having supervision of the deportation of aliens.

*Conviction of aliens.*

48 LAWS

Antiques, or-
naments ex-
cepted.

18. This act shall not apply to antique pistols unsuit-
able for use as firearms and possessed as curiosities or
ornaments.

Expiration of
previous
licenses.

19. All licenses heretofore issued within this State
permitting the sale or purchase of pistols or revolvers
shall expire ninety days after the passage of this act.

Repealer.

20. All acts or parts of acts inconsistent herewith
are hereby repealed.

Approved March 30, 1927.

---

## CHAPTER 322.

An Amendment amending an act entitled "An act re-
specting coroners" (Revision), approved March
twenty-seventh, one thousand eight hundred and
seventy-four.

BE IT ENACTED *by the Senate and General Assembly
of the State of New Jersey:*

Section 26
amended.

1. The twenty-sixth section of the act to which this
is amendatory be and the same is hereby amended to
read as follows:

26. That the following fees shall be allowed:

Fees allowed
coroners.

To coroner, or person acting in his stead, for view-
ing the body five dollars;

Mileage per mile, going and returning, ten cents, or
actual carfare;

Sitting with jury at inquest each day, three dollars.

Taking deposition of witnesses at inquest, ten cents
per folio, counting not more than two folios of manu-
script to each page;

For every witness attending such inquest, when resi-
dent in the county, fifty cents for each day, and when
from a foreign county, one dollar a day, in which shall
be included his or her going to and returning from the
same, allowing one day for every thirty miles from
and to his or her place or residence;

Jurors' fees.

Jurors' fees, twenty-five cents for each case; but in
cases of special importance the board of chosen free-

*as having been inspected and passed or otherwise approved as being wholesome and fit for food.*

*(b)   To affix or attach any stamp, brand, emblem, tag, or other marking to any meat or meat-food product, or to any container or wrapping or covering of any meat or meat-food product, indicating or suggesting that the meat or meat-food product was slaughtered, manufactured, or prepared under inspection, unless the stamp, brand, emblem, tag, or other marking shall have been previously approved and the use thereof authorized by the United States Department of Agriculture or the Pennsylvania Department of Agriculture or an incorporated or chartered or established municipality of the Commonwealth of Pennsylvania.*

*Affixing or attaching stamp which has not been officially approved.*

APPROVED—The 10th day of June, A. D. 1931.

GIFFORD PINCHOT

———

## No. 158

## AN ACT

Regulating and licensing the sale, transfer, and possession of certain firearms; prescribing penalties, procedure, and rules of evidence; conferring powers and imposing duties on courts of quarter sessions, sheriffs, and heads of police departments; and to make uniform the law with reference thereto.

Section 1.  Be it enacted, &c., That "firearm," as used in this act, means any pistol or revolver with a barrel less than twelve inches, any shotgun with a barrel less than twenty-four inches, or any rifle with a barrel less than fifteen inches.

*The Uniform Firearms Act.*

*"Firearm," defined.*

"Crime of violence," as used in this act, means any of the following crimes, or an attempt to commit any of the same, namely: murder, rape, mayhem, aggravated assault and battery, assault with intent to kill, robbery, burglary, breaking and entering with intent to commit a felony, and kidnapping.

*"Crime of violence," defined.*

"Person," as used in this act, includes firm, partnership, association, or corporation; and the masculine shall include the feminine and neuter.

*"Person," defined.*

Section 2.  If any person shall commit or attempt to commit a crime of violence when armed with a firearm contrary to the provisions of this act, he may, in addition to the punishment provided for the crime, be punished also as provided by this act.

*Crimes committed with firearms.*

*Additional punishment.*

Section 3.  In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a firearm used or attempted to be used, and had no license to carry the same, shall

*Evidence of intent.*

be evidence of his intention to commit said crime of violence.

**Former convict not to own a firearm, etc.**

Section 4. No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control.

**Firearms not to be carried without a license.**

Section 5. No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.

**Exceptions.**

Section 6. The provisions of the preceding section shall not apply to constables, sheriffs, prison or jail wardens, or their deputies, policemen of the Commonwealth or its political subdivisions, or other law-enforcement officers; or to members of the army, navy or marine corps of the United States or of the national guard or organized reserves when on duty; or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States or from this Commonwealth; or any organization incorporated under the laws of this Commonwealth engaged in target shooting with rifle, pistol or revolver, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employes of the United States duly authorized to carry a concealed firearm, or to agents, messengers and other employes of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties, from carrying any such firearm while actually engaged in such duties; or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person, having in his possession, using or carrying a firearm in the usual or ordinary course of such business; or to any person while carrying a firearm unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving from one place of abode or business to another.

**Police heads in cities and sheriffs in counties may issue licenses.**

Section 7. The chief or head of any police force or police department of a city, and, elsewhere in this Commonwealth, the sheriff of a county, may, upon the application of any person, issue a license to such person to carry a firearm in a vehicle or concealed on or about his person within this Commonwealth for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a firearm, and that he is a suitable person to be so

licensed. The license shall be in triplicate, in form to be prescribed by the Secretary of the Commonwealth, and shall bear the name, address, description, and signature of the licensee, and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall, within seven days, be sent by registered mail to the Secretary of the Commonwealth, and the triplicate shall be preserved for six years by the authority issuing said license. The fee for issuing such license shall be fifty cents ($0.50), which fee shall be paid into the county treasury, except that if the applicant exhibits a resident hunter's license issued to him for the current license year, the fee shall not be charged. *License to be issued in triplicate. Form.* *Fee.*

Any such license to carry firearms may be revoked by the person issuing the same, at any time, upon written notice to the holder thereof. *Revocation.*

Section 8. No person shall deliver a firearm to any person under the age of eighteen, or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind. *Persons to whom delivery shall not be made.*

Section 9. No seller shall deliver a firearm to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, said firearm shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a firearm, the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, length of barrel, make, model, and manufacturer's number of the firearm to be purchased, and a statement that he has never been convicted in this Commonwealth, or elsewhere, of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and forward by registered mail one copy of such statement to the chief or head of the police force or police department of the city or the sheriff of the county of which the seller is a resident; the duplicate, duly signed by the seller, shall, within seven days, be sent by him, with his address, to the Secretary of the Commonwealth, the triplicate he shall retain for six years. This section shall not apply to sales at wholesale. *Time and manner of delivery.* *Statement to be signed by purchaser.* *Duty of seller.* *Sales at wholesale.*

Section 10. No retail dealer shall sell, or otherwise transfer or expose for sale or transfer, or have in his possession with intent to sell or transfer, any firearm without being licensed as hereinafter provided. *Retail dealer required to be licensed.*

Section 11. The chief or head of any police force or police department of a city, and, elsewhere in this Commonwealth, the sheriff of the county, shall grant to *Issuance of licenses.*

Form to be prescribed by Secretary of Commonwealth.

reputable applicants licenses, in form prescribed by the Secretary of the Commonwealth, effective for not more than one year from date of issue, permitting the licensee to sell firearms direct to the consumer within this Commonwealth, subject to the following conditions in addition to those specified in section nine hereof, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this act:

Conditions.

**Business place.**
1. The business shall be carried on only in the building designated in the license;

**Display of license.**
2. The license, or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read;

**Known identity of purchaser.**
3. No firearm shall be sold (a) in violation of any provision of this act, nor (b) shall a firearm be sold, under any circumstances, unless the purchaser is personally known to the seller or shall present clear evidence of his identity;

**Record.**
4. A true record in triplicate shall be made of every firearm sold in a book kept for the purpose, the form of which may be prescribed by the Secretary of the Commonwealth, and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model, and manufacturer's number of the firearm, the name, address, occupation, color, and place of birth of the purchaser, and a statement signed by the purchaser that he has never been convicted in this Commonwealth, or elsewhere, of a crime of violence. One copy shall, within six hours, be sent by registered mail to the chief or head of the police force or police department of the city or the sheriff of the county of which the dealer is a resident; the duplicate, the dealer shall, within seven days, send to the Secretary of the Commonwealth; the triplicate, the dealer shall retain for six years.

**Display of firearms prohibited.**
5. No firearm or imitation thereof, or placard advertising the sale thereof, shall be displayed in any part of any premises where it can readily be seen from the outside.

**License fee.**
The fee for issuing said license shall be ten dollars ($10.00), which fee shall be paid into the county treasury.

**Revocation.**
6. Any license granted under this section may be revoked by the person issuing the same, upon written notice to the holder thereof.

**Petition to common pleas for reversal.**
Section 12. Any applicant aggrieved by the refusal of his application for a license to carry a firearm or for a dealers license, or any person or retail dealer whose license has been revoked, may file, within thirty days thereafter, in the court of quarter sessions of his county,

a petition against the official who refused his application, as defendant, alleging therein, in brief detail, the refusal complained of and praying for a reversal thereof. Upon service of a copy of the petition upon the defendant, returnable within ten days from its date, the defendant shall, on or before the return day, file an answer in which he may allege by way of defense the reason for his refusal, and such other reasons as may in the meantime have been discovered. Thereupon, upon application of either party, the cause shall be heard without delay. The court may either sustain or reverse the action of the defendant. If the defendant's action is reversed, he shall forthwith issue the license upon payment of the fee. A judgment sustaining a refusal to grant a license shall not bar, after one year, a new application; nor shall a judgment in favor of the petitioner prevent the defendant from thereafter revoking or refusing to renew such license for any proper cause which may thereafter occur. The court shall have full power to dispose of all costs. — *Procedure.*

Section 13. No person shall make any loan secured by mortgage, deposit, or pledge of a firearm; nor shall any person lend or give a firearm to another or otherwise deliver a firearm contrary to the provisions of this act. — *Loans on, or lending or giving firearms prohibited.*

Section 14. No person shall, in purchasing or otherwise securing delivery of a firearm or in applying for a license to carry the same, give false information or offer false evidence of his identity. — *False evidence of identity.*

Section 15. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm. Possession of any firearm, upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same. — *Altering or obliterating marks of identification.*

Section 16. All licenses heretofore issued within this Commonwealth permitting the carrying of firearms concealed upon the person shall expire at midnight of the thirty-first day of August, one thousand nine hundred and thirty-one. — *Expiration of present licenses.*

Section 17. This act shall not apply to antique firearms unsuitable for use and possessed as curiosities or ornaments. — *Antique firearms.*

Section 18. Any person violating any of the provisions of this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than three thousand dollars ($3,000.00), or imprisonment for not more than three years, or both. — *Violation. Misdemeanor. Penalty.*

Section 19. If any part of this act is for any reason — *Invalidity of part of act.*

declared void, such invalidity shall not affect the validity of the remaining portions of this act.

Title of act
Section 20. This act may be cited as the "Uniform Firearms Act."

Uniformity.
Section 21. This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Repeal.
Section 22. All acts or parts of acts inconsistent herewith are hereby repealed: Provided, however, That this act shall not repeal or in any manner affect any provisions of an act, approved the twenty-fifth day of April, one thousand nine hundred and twenty-nine (Pamphlet Laws, seven hundred seventy-seven), entitled "An act prohibiting the sale, giving away, transfer, purchasing, owning, possession and use of machine guns; providing penalties; and providing for certain exemptions, and the granting of permits by sheriffs to own and possess machine guns as relics."

Act of April 25, 1929 (P. L. 777), not repealed.

APPROVED—The 11th day of June, A. D. 1931.

GIFFORD PINCHOT

---

No. 159

AN ACT

To amend section three of the act, approved the ninth day of May, one thousand nine hundred and twenty-nine (Pamphlet Laws, one thousand seven hundred and two), entitled "An act regulating the closing of public highways and providing for the locating, marking, and maintenance of detours necessitated by such closing; requiring boroughs, cities, and towns to notify the Department of Highways of the creation and discontinuance of certain detours; providing penalties for removing, destroying, defacing signs erected for warning or detour purposes, and for driving on, over or across highways which are closed by the proper persons or authorities, except in certain cases; further providing that the authorities responsible for the maintenance of highways which have been damaged, or their agents or contractors, shall have the right to recover the amount of such damages from the person or persons responsible, in addition to the penalties herein provided; and repealing certain acts."

Highways.

Section 3, act of May 9, 1929 (P. L. 1702), amended.
Section 1. Be it enacted, &c., That section three of the act, approved the ninth day of May, one thousand nine hundred and twenty-nine (Pamphlet Laws, one thousand seven hundred two), entitled "An act regulating the closing of public highways and providing for the locating, marking, and maintenance of detours necessitated by such closing; requiring boroughs, cities and towns to notify the Department of Highways of the creation and discontinuance of certain detours; pro-

# UNIFORM LAWS

## CHAPTER 208

### (H. B. 212)

#### ADOPTING THE UNIFORM FIREARMS ACT

AN ACT Entitled, An Act Regulating the Sale, Transfer and Possession of Certain Firearms, Prescribing Penalties and Rules of Evidence, and to Make Uniform the Law with Reference Thereto.

*Be It Enacted by the Legislature of the State of South Dakota:*

Section 1. DEFINITIONS. "Pistol," as used in this Act, means any firearm with barrel less than twelve inches in length.

"Crime of Violence," as used in this Act, means any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering, kidnapping and larceny.

"Person," as used in this Act, includes firm, partnership, association or corporation.

Section 2. COMMITTING CRIME WHEN ARMED. If any person shall commit or attempt to commit a crime of violence when armed with a pistol, he may in addition to the punishment provided for the crime, be punished also as provided by this Act.

Section 3. BEING ARMED PRIMA FACIE EVIDENCE OF INTENT. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be PRIMA FACIE evidence of his intention to commit said crime of violence.

Section 4. CERTAIN PERSONS FORBIDDEN TO POSSESS ARMS. No person who has been convicted in this State or elsewhere of a crime of violence, shall own a pistol or have one in his possession or under his control.

Section 5. CARRYING PISTOL. No person shall carry a pistol in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.

Section 6. EXCEPTION. The provisions of the preceding Section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen or other law-enforcement officers or employees of railway or express companies while on duty, or to members of the army, navy, or marine corps of the United States or of the national guard or organized reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States or from this state, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms or the agent or representative of any such person having in his possession, using, or carry-

ing a pistol in the usual or ordinary course of such business, or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving from one place of abode or business to another.

Section 7. ISSUE OF LICENSES TO CARRY. The judge of a court of record, the chief of police of a municipality, the sheriff of a county, may upon the application of any person issue a license to such person to carry a pistol in a vehicle or concealed on or about his person within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the Secretary of State, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the Secretary of State, and the triplicate shall be preserved for six years by the authority issuing said license. The fee for issuing such license shall be $.50, which fee shall be collected by the official issuing such license, and shall be remitted by him to the State Treasurer.

Section 8. DELIVERY TO MINORS AND OTHERS FORBIDDEN. No person shall deliver a pistol to any person under the age of eighteen or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind.

Section 9. SALES REGULATED. No seller shall deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in this State or elsewhere of a crime of violence. The seller shall within six hours after such application, sign and attach his address and forward by registered mail one copy of such statement to the chief of police of the municipality or the sheriff of the county of which the seller is a resident; the duplicate duly signed by the seller shall within seven days be sent by him with his address to the Secretary of State; the triplicate he shall retain for six years. This Section shall not apply to sales at wholesale.

Section 10. DEALERS TO BE LICENSED. No retail dealer shall sell, or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol without being licensed as hereinafter provided.

Section 11. DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF. The duly constituted licensing authorities of any city, town, or political subdivision of this state may grant licenses in forms prescribed by the Secretary of State effective for not more than one year from date of issue, permitting the licensee to sell pistols at retail within this State subject to the following conditions in addition to those specified in Section 9 hereof, for breach of any of which

the license shall be forfeited and the licensee subject to punishment as previded in this Act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol shall be sold (a) in violation of any provision of this Act, nor (b) shall a pistol be sold under any circumstances unless the purchaser is personally known to the seller or shall present clear evidence of his identity.

4. A true record in triplicate shall be made of every pistol sold, in a book kept for the purpose, the form of which may be prescribed by the Secretary of State and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, color, and place of birth of the purchaser, and a statement signed by the purchaser that he has never been convicted in this State or elsewhere of a crime of violence. One copy shall within six hours be sent by registered mail to the chief of police of the municipality or the sheriff of the county of which the dealer is a resident; the duplicate the dealer shall within seven days send to the Secretary of State; the triplicate the dealer shall retain for six years.

5. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of any premises where it can readily be seen from the outside.

The fee for issuing said license shall be $2.00, which fee shall be collected by the official issuing such license, and shall be remitted by him to the State Treasurer.

Section 12. CERTAIN TRANSFERS FORBIDDEN. No person shall make any loan secured by a mortgage, deposit, or pledge of a pistol; nor shall any person lend or give a pistol to another or otherwise deliver a pistol contrary to the provisions of this Act.

Section 13. FALSE INFORMATION FORBIDDEN. No person shall, in purchasing or otherwise securing delivery of a pistol or in applying for a license to carry the same, give false information or offer false evidence of his identity.

Section 14. ALTERATION OF IDENTIFYING MARKS PROHIBITED. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol. Possession of any pistol upon which any such mark shall have been changed, altered, removed, or obliterated, shall be PRIMA FACIE evidence that the possessor has changed, altered, removed or obliterated the same.

Section 15. EXCEPTIONS. This Act shall not apply to antique pistols unsuitable for use as firearms and possessed as curiosities or ornaments.

Section 16. PENALTIES. Any violation of any provision of this Act constitutes an offense punishable by a fine not exceeding One Hundred Dollars ($100.00), or imprisonment for not more than one year, or both.

Section 17. CONSTITUTIONALITY. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

Section 18. SHORT TITLE. This Act may be cited as the "Uniform Firearms Act".

Section 19. UNIFORM INTERPRETATION. This Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Section 20. CERTAIN ACTS REPEALED. All Acts or parts of Acts in conflict with or inconsistent with the provisions of this Act are hereby repealed.

Approved March 14, 1935.

---

## CHAPTER 209

### (H. B. 213)

#### ADOPTING THE UNIFORM NARCOTIC DRUG ACT

AN ACT Entitled, An Act Defining and Relating to Narcotic Drugs and to Make Uniform the Law with Reference Thereto.

*Be It Enacted by the Legislature of the State of South Dakota:*

Section 1. Definitions. The following words and phrases, as used in this Act, shall have the following meanings, unless the context otherwise requires:

(1) "Person" includes any corporation, association, co-partnership, or one or more individuals.

(2) "Physician" means a person authorized by law to practice medicine in this State and any other person authorized by law to treat sick and injured human beings in this State and to use narcotic drugs in connection with such treatment.

(3) "Dentist" means a person authorized by law to practice dentistry in this State.

(4) "Veterinarian" means a person authorized by law to practice veterinary medicine in this State.

(5) "Manufacturer" means a person who by compounding, mixing, cultivating, growing, or other process, produces or prepares narcotic drugs, but does not include an apothecary who compounds narcotic drugs to be sold or dispensed on prescriptions.

(6) "Wholesaler" means a person who supplies narcotic drugs that he himself has not produced nor prepared, on official written orders, but not on prescriptions.

(7) "Apothecary" means a licensed pharmacist as defined by the laws of this State and, where the context so requires, the owner of a store or other place of business where narcotic drugs are compounded or dispensed by a licensed pharmacist; but nothing in this Act shall be construed as conferring on a person who is not registered nor licensed as a pharmacist any authority, right, or privilege, that is not granted to him by the pharmacy laws of this State.

(8) "Hospital" means an institution for the care and treatment of the sick and injured, approved by the State Board of Health; as proper to be entrusted with the custody of narcotic drugs and the professional use of narcotic drugs under the direction of a physician, dentist, or veterinarian.

(9) "Laboratory" means a laboratory approved by the State Board of Health; as proper to be entrusted with the custody of narcotic drugs and the use of narcotic drugs for scientific and medical purposes and for purposes of instruction.

# CHAPTER 172.

[S. B. 147.]

## SHORT FIREARMS.

AN ACT relating to short firearms and other weapons; defining
terms; regulating the sale, possession and use thereof; pro-
viding for certain licenses and fixing fees; defining certain
crimes and prescribing penalties.

*Be it enacted by the Legislature of the State of
Washington:*

SECTION 1. "Short Firearm" as used in this
act means any firearm with a barrel less than twelve
(12) inches in length.   *Definitions.*

"Crime of Violence" as used in this act means
any of the following crimes or an attempt to commit
any of the same: Murder, manslaughter, rape,
mayhem, first degree assault, robbery, burglary and
kidnapping.

SEC. 2. *Committing Crime When Armed.* If
any person shall commit or attempt to commit a
crime of violence when armed with a pistol, he may
in addition to the punishment provided for the
crime, be punished also as provided by this act.   *Committing crime when armed.*

SEC. 3. *Being Armed Prima Facie Evidence of
Intent.* In the trial of a person for committing or
attempting to commit a crime of violence, the fact
that he was armed with a pistol and had no license
to carry the same shall be prima facie evidence of
his intention to commit said crime of violence.   *Prima facie evidence of intent.*

SEC. 4. *Certain Persons Forbidden to Possess
Arms.* No person who has been convicted in this
state or elsewhere of a crime of violence, shall own
a pistol or have one in his possession or under his
control.   *Persons forbidden to possess arms.*

SEC. 5. *Carrying Pistol.* No person shall carry
a pistol in any vehicle or conceal on or about his
person, except in his place of abode or fixed place   *Carrying pistol.*

of business, without a license therefor as hereinafter provided.

**Exception to preceding section.**

SEC. 6. *Exception.* The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen or other law-enforcement officers, or to members of the army, navy or marine corps of the United States or of the national guard or organized reserves when on duty, or to regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States or from this state, or to regularly enrolled members of clubs organized for the purpose of target shooting and affiliated with a national shooting organization: *Provided,* Such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business, or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving from one place of abode or business to another.

**Issue of licenses.**

SEC. 7. *Issue of Licenses to Carry.* The judge of a court of record, the chief of police of a municipality, the sheriff of a county, shall upon the application of any person issue a license to such person to carry a pistol in a vehicle or concealed on or about his person within this state for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person

to be so licensed. The license shall be in triplicate, in form to be prescribed by the state director of licenses, and shall bear the name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the director of licenses and the triplicate shall be preserved for six years, by the authority issuing said license. The fee for such license shall be one dollar ($1.00) which shall be paid into the state treasury.

SEC. 8. *Delivery to Minors and Others Forbidden.* No person shall deliver a pistol to any person under the age of twenty-one or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind.

*Delivery to minors and forbidden persons.*

SEC. 9. *Sales Regulated.* No seller shall deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in this state or elsewhere of a crime of violence. The seller shall within six hours after such application, sign and attach his address and forward by registered mail one copy of such statement to the chief of police of the municipality or the sheriff of the county of which the seller is a resident; the duplicate duly signed by the seller shall within seven days be sent by him with his address to the director of licenses; the triplicate he shall

*Sales regulated.*

retain for six years. This section shall not apply to sales at wholesale.

Dealers to be licensed. SEC. 10. *Dealers to be Licensed.* No retail dealer shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol without being licensed as hereinafter provided.

Dealer's licenses, by whom granted and conditions thereof. SEC. 11. *Dealer's Licenses, by Whom Granted and Conditions Thereof.* The duly constituted licensing authorities of any city, town, or political subdivision of this state shall grant licenses in forms prescribed by the director of licenses effective for not more than one year from the date of issue permitting the licensee to sell pistols within this state subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3. No pistol shall be sold (a) in violation of any provisions of this act, nor (b) shall a pistol be sold under any circumstances unless the purchaser is personally known to the seller or shall present clear evidence of his identity.

4. A true record in triplicate shall be made of every pistol sold, in a book kept for the purpose, the form of which may be prescribed by the director of licenses and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, color and place of birth of the purchaser and a statement signed by the purchaser that he

has never been convicted in this state or elsewhere of a crime of violence. One copy shall within six hours be sent by registered mail to the chief of police of the municipality or the sheriff of the county of which the dealer is a resident; the duplicate the dealer shall within seven days send to the director of licenses; the triplicate the dealer shall retain for six years.

5. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of any premises where it can readily be seen from the outside.

The fee for issuing said license shall be five dollars ($5.00) which fee shall be paid into the state treasury. *Fee.*

SEC. 12. *Certain Transfers Forbidden.* No person other than a duly licensed dealer shall make any loan secured by a mortgage, deposit or pledge of a pistol. Any licensed dealer receiving a pistol as a deposit or pledge for a loan shall keep such records and make such reports as are provided by law for pawnbrokers and second-hand dealers in cities of the first class. A duly licensed dealer may mortgage any pistol or stock of pistols but shall not deposit or pledge the same with any other person. No person shall lend or give a pistol to another or otherwise deliver a pistol contrary to the provisions of this act. *Certain transfers forbidden.*

SEC. 13. *False Information Forbidden.* No person shall, in purchasing or otherwise securing delivery of a pistol or in applying for a license to carry the same, give false information or offer false evidence of his identity. *False information forbidden.*

SEC. 14. *Alteration of Identifying Marks Prohibited.* No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on *Alteration of identifying marks prohibited.*

any pistol. Possession of any pistol upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same.

Exceptions.      SEC. 15. *Exceptions.* This act shall not apply to antique pistols unsuitable for use as firearms and possessed as curiosities or ornaments.

Penalties.      SEC. 16. *Penalties.* Any violation of any provision of this act constitutes an offense punishable by a fine of not more than five hundred dollars ($500.00) or imprisonment for not more than one year in the county jail or both, or by imprisonment in the penitentiary for not less than one year nor more than ten years.

Partial invalidity.      SEC. 17. *Constitutionality.* If any part of this act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this act.

Short title.      SEC. 18. *Short Title.* This act may be cited as the "Uniform Firearms Act."

Uniform interpretation.      SEC. 19. *Uniform Interpretation.* This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Effective date.      SEC. 20. *Effective Date.* This act shall take effect on the first day of July, 1935.

Conflicting statutes repealed.      SEC. 21. *Certain Acts Repealed.* All laws or parts of laws inconsistent herewith are hereby repealed.

Passed the Senate February 26, 1935.
Passed the House March 14, 1935.
Approved by the Governor March 23, 1935.

STATE HEALTH DEPARTMENT. (1) The salary of the State Health Officer, $3,600.00 for every year; (2) For other personal services $193,500.00 for every year; (3) For other expenses including County Health Work $202,900.00 for every year. 2. PASTEUR TREATMENTS: For Pasteur Treatments $30,000.00 for every year. 3. STATE SERUM PLANT: Salaries and other expenses $3,000.00—$3,000.00. 4. STATE SERVICE COMMISSION: For compensation of Commissioner $2,400.00; Other salaries $8,000.00; Supplies and materials $250.00; Postage, telephone and telegraph $400.00; Printing and binding $60.00; Travel Expense $250.00; Insurance and bonding $10.00; Rent, lights, heat and water $630.00—$12,000.00.

Section 2. This Act shall be effective from October 1, 1935.

Approved April 3, 1936.

No. 82)                                                    (S. 63—Simpson

AN ACT

To regulate the sale, transfer and possession of certain types of firearms; to provide for the licensing of dealers and owners of such firearms; to fix rules of evidence in the Courts of this State in prosecutions for violations of this Act; to prescribe penalties for the violations of any provision herein and to make uniform the law with reference thereto.

*Be It Enacted by the Legislature of Alabama:*

Section 1. DEFINITIONS: "Pistol" as used in this Act, means any firearm with barrel less than twelve inches in length. "Crime of Violence" as used in this Act, means any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, rape, mayhem, assault with intent to rob, assault with intent to ravish, assault with intent to murder, robbery, burglary, kidnapping, and larceny. "Person" as used in this Act, includes firm, partnership, association or corporation.

Section 2. COMMITTING CRIME WHEN ARMED: If any person shall commit or attempt to commit a crime of violence when armed with a pistol, he may in addition to the punishment provided for the crime, be punished also as provided by this Act.

Section 3. BEING ARMED PRIMA FACIE EVIDENCE OF INTENT: In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence.

Section 4. CERTAIN PERSONS FORBIDDEN TO POSSESS ARMS: No person who has been convicted in this State or elsewhere of a crime of violence, shall own a pistol or have one in his possession or under his control.

Section 5. CARRYING PISTOL: No person shall carry a pistol in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.

Section 6. EXCEPTION: The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen or other law-enforcement officers, or to members of the Army, Navy or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States or from this State, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business, or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving from one place of abode or business to another.

Section 7. ISSUE OF LICENSES TO CARRY: The Probate Judge, the Chief of Police of a municipality, the Sheriff of a County, may upon the application of any person issue a license to such person to carry a pistol in a vehicle or concealed on or about his person within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the Secretary of State, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the Secretary of State and the triplicate shall be preserved for six years, by the authority issuing said license. The fee for issuing such license shall be 50c (fifty cents) which fee shall be paid into the State Treasury.

Section 8. DELIVERY TO MINORS AND OTHERS FORBIDDEN. No person shall deliver a pistol to any person under the age of eighteen or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, and habitual drunkard, or of unsound mind.

Section 9. SALES REGULATED: No seller shall deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof,

and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in this State or elsewhere of a crime of violence. The seller shall within six hours after such application, sign and attach his address and forward by registered mail one copy of such statement to the chief of police of the municipality or the sheriff of the county of which the seller is a resident; the duplicate duly signed by the seller shall within seven days be sent by him with his address to the Secretary of State; the triplicate he shall retain for six years. This section shall not apply to sales at wholesale.

Section 10. DEALERS TO BE LICENSED: No retail dealer shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol without being licensed as hereinafter provided.

Section 11. DEALER'S LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF: The duly constituted licensing authorities of any city, town, or political subdivision of this State may grant licenses in forms prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell pistols at retail within this State subject to the following conditions in addition to those specified in Section 9 hereof, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this Act. 1. The business shall be carried on only in the building designated in the license. 2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read. 3. No pistol shall be sold (a) in violation of any provision of this Act, nor (b) shall a pistol be sold under any circumstances unless the purchaser is personally known to the seller or shall present clear evidence of his identity. 4. A true record in triplicate shall be made of every pistol sold, in a book kept for the purpose, the form of which may be prescribed by the Secretary of State and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, color and place of birth of purchaser and a statement signed by the purchaser that he has never been convicted in this State or elsewhere of a crime of violence. One copy shall within six hours be sent by registered mail to the chief of police of the municipality or the sheriff of the county of which the dealer is a resident; the duplicate the dealer shall within seven days send to the Secretary of State; the tripli-

cate the dealer shall retain for six years. 5. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of any premises where it can readily be seen from the outside. The fee for issuing said license shall be 50c (fifty cents) which fee shall be paid into the State Treasury.

Section 12. CERTAIN TRANSFERS FORBIDDEN: No person shall make any loan secured by a mortgage, deposit, or pledge of a pistol contrary to this Act, nor shall any person lend or give a pistol to another or otherwise deliver a pistol contrary to the provisions of this Act.

Section 13. FALSE INFORMATION FORBIDDEN: No person shall, in purchasing or otherwise securing delivery of a pistol or in applying for a license to carry the same, give false information or offer false evidence of his identity.

Section 14. ALTERATION OF IDENTIFYING MARKS PROHIBITED: No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification of any pistol. Possession of any pistol upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

Section 15. EXISTING LICENSES REVOKED: All licenses heretofore issued within this State permitting the carrying of pistols concealed upon the person shall expire at midnight of the 1st day of October, 1936.

Section 16. EXCEPTIONS: This Act shall not apply to antique pistols unsuitable for use as firearms and possessed as curiosities or ornaments.

Section 17. PENALTIES: Any violation of any provision of this Act constitutes an offense punishable by a fine of not more than $500.00 (five hundred dollars) or imprisonment for not more than one year, or both.

Section 18. CONSTITUTIONALITY: If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

Section 19. SHORT TITLE: This Act may be cited as the "Uniform Firearms Act."

Section 20. It is hereby declared to be the Legislative intention in the passage of this Act to further aid in the suppression of crime and the Act is to be liberally construed to effectuate this purpose.

Section 21. EFFECTIVE DATE: This Act shall take effect on the 1st day of October, 1936.

Section 22. CERTAIN ACTS REPEALED: This Act is intended as an entire revision of the subject matter contained herein and all laws or parts of laws inconsistent herewith are hereby repealed.

Approved April 6, 1936.

# THIRD REPORT OF THE COMMITTEE ON A UNIFORM ACT TO REGULATE THE SALE AND POSSESSION OF FIREARMS

*To the National Conference of Commissioners on Uniform State Laws:*

The special committee upon a Uniform Act to Regulate the Sale and Possession of Firearms was appointed at the Minneapolis meeting of the National Conference in 1923. A first report was made in Philadelphia in 1924 and at that time the committee was continued for further consideration of the subject and "to prepare and report a tentative draft of a proposed uniform act at the next meeting of this Conference." (Handbook 1924 p. 173.) A second report with a first tentative draft of the proposed act was submitted to the Conference at its meeting in Detroit in 1925 (Handbook 1925 pp. 854–898). The proposed law was read section by section in full and was fully discussed by the Conference as a committee of the whole. Thereupon the act was referred back to the committee for further consideration (*Ibid.* p. 324). The committee accordingly begs leave to present herewith its third report and second tentative draft of a proposed uniform law on the subject.

### Continued Development of Firearms Legislation

In the previous reports the committee has called attention to the timeliness of firearms legislation and has pointed out how the matter was brought to the attention of the legislatures of various states by the United States Revolver Association in the form of its proposed Uniform Revolver Act simultaneously with the bringing of the matter to the attention of this Conference in 1923. Former reports have stated that the reasons why the committee at the outset decided to recommend to this Conference the proposed law of the United States Revolver Association as the model for its consideration were not only because of the intrinsic merits of the Revolver Association Act for clearness and simplicity, but for the fact that the proposed act had already received favor in its adoption by a number of states: first by the North Dakota Legislature on March 7, 1923, then by the New Hampshire Legislature on May 4, 1923, and then by the California Legislature on June 13, 1923. These three legislatures follow the Revolver Association Act verbatim with a few variations pointed out in the report of last

year. Then followed the adoption in Indiana, March 12, 1925, of the Revolver Act in toto, as also pointed out in the previous report.

On February 26, 1925, while the previous report of this committee was being completed, the legislature of Oregon passed a firearms act modeled very closely on the text of the Revolver Association Act. It is significant in this connection that the new Oregon Act supersedes the provisions of the Oregon Laws of 1913, Chapter 256, Section I, which in effect required a license to purchase firearms very much along the same lines as the Sullivan Law of New York, reproduced in the last report in full (Handbook 1925 p. 895).

The next act was that of the Legislature of West Virginia of April 25, 1925. (House Bill No. 406, amending Sec. 17 of Chapter 148 of West Virginia Code.) That act forbids the carrying "about the person" of any revolver or pistol as well as other deadly weapons named in detail, without a state license to be obtained by procedure set forth in the act, the license to be conditioned upon the furnishing of a bond. This act, it will be noted, seems to require the license to carry the weapon on the person whether the weapon is concealed or not. A license to purchase is not required.

There next followed the Michigan Act of May 26, 1925, the sections of which are in a great many instances modeled upon the National Revolver Act, but which contains a radical feature in the requirement of a state-wide registration of all firearms possessed within the state. The latter provision went into effect while the Conference was in session in Detroit last summer. The requirement of the Michigan Law of state-wide registration is believed by the Committee to be the only instance of such a requirement other than that of the Arkansas Act of March 16, 1923. This act was, however, repealed by the Arkansas Legislature in 1925. (Acts of 1925, Act No. 351, p. 1047.) One of the commissioners from Arkansas has stated to the committee that the act "proved a complete failure; that scarcely anybody registered his pistols and it was realized that it worked an injustice to the few who did so."

There was printed in the first report of this committee the full text of the so-called Capper Bill, being the National Association Act, with some modifications, introduced into the United States

Senate by Senator Capper, September 20, 1922 (Handbook 1924, p. 728). This bill expired with the Congress during which it was introduced. Senator Capper reintroduced a bill of substantially the same kind on December 21, 1925 (S. 1907, 69th Congress, 1st Session). This is proposed local legislation for the District of Columbia. It differs from the previous Capper bill in several particulars, viz., (1) the inclusion of other deadly weapons, (2) the omission of the prohibition against aliens and criminals possessing arms, although it retains the prohibition against selling arms to such and (3) in the requirement of a bond of $5,000 from a dealer in firearms. This new Capper Bill has been considered by the Committee of the Senate on the District of Columbia, but no final action has been taken thereon.

There are other bills pending before Congress but which are inactive. The bill introduced by Mr. Byrns (H. R. 4002, 69th Congress, 1st Session) seeks to regulate the sale and possession of firearms in the District of Columbia and in interstate commerce by prohibiting the sale and delivery of firearms other than those of the form, size, or description used in the United States Army or Navy. This was the purpose of the so-called Shields Bill of April 25, 1925, printed in the former report of this committee (Handbook 1925 p. 888) which failed of passage. The bill of December 9, 1925, (H. R. 4502, 69th Congress, 1st Session) introduced by Mr. Miller seeks to declare pistols and revolvers, capable of being concealed on the person, non-mailable.

The entire subject of a uniform firearms law has moreover been brought forward in the decision of the National Crime Commission in its sessions in Washington at the end of April to study the question of a uniform law and recommend one to the states.

## Second Tentative Draft

The committee, like other committees of the Conference, was unable for lack of funds to hold a midwinter meeting. But the chairman of the committee had an extended conference early in the year with Mr. Karl F. Frederick, of New York, one of the draftsmen of the model act, who was present at the sessions in Detroit and took part in the discussions there. Mr. Frederick considered with the chairman all the points covered in those

—573—

discussions. Moreover some members of the committee took advantage of their presence together in Washington in attendance on the American Law Institute to consider the subject further. Further exchanges of opinion between members of the committee have been had by correspondence.

The second tentative draft printed herein adopts in a number of instances the vote of the Conference and the suggestions of members. These, however, have involved no radical change in the second tentative draft over the first. They are indicated specifically in connection with the individual sections of the draft which follow.

### General Principles of Draft

The general principles of the draft are those set forth in the previous report (Handbook 1925 p. 856). The proposed law does not aim to require a license to purchase arms, a method of regulation existing, so far as the Committee is informed, only in New York, although the principle has received some support recently by agencies concerned with the suppression of crime and was urged on the Conference by some members last summer. (Handbook 1925 pp. 322–324.) But the committee was not instructed to change the principle in this regard. It is believed by the committee that the license to purchase would not prevent criminals from obtaining arms but would make it difficult for law-abiding citizens to obtain arms for their protection.

The committee states again, as it did last year, that the provisions of the proposed law present no constitutional obstacles, constitute no radical changes in existing laws of the states, and if adopted generally will secure uniformity in the laws of the states and remove the present evils of a lack of uniformity.

### Recommendations of the Committee

The committee submits this report and second tentative draft and recommends its adoption.

| | |
|---|---|
| Charles V. Imlay, *Chairman* | J. M. Tunnell |
| Henry U. Sims | O. L. Phillips |
| Joseph F. O'Connell | D. A. McDougal |
| J. W. Vandervort | George B. Martin |

*Ex-officio:* George B. Young, *President*

## A UNIFORM ACT TO REGULATE THE SALE AND POSSESSION OF FIREARMS*

An Act regulating the sale, transfer and possession of certain firearms, prescribing penalties and rules of evidence, and to make uniform the law with reference thereto.

SECTION 1. (*Definitions.*) "Pistol" or "revolver," as used in this Act, means any firearm with barrel less than twelve inches in length.

"Crime of Violence," as used in this Act, means any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery, [larceny], burglary, and housebreaking.

SECTION 2. (*Committing Crime When Armed.*) If any person shall commit or attempt to commit a crime of violence when armed with a pistol or revolver, he may in addition to the punishment provided for the crime, be punished also as provided by this Act.

SECTION 3. (*Being Armed Prima Facie Evidence of Intent.*) In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol or revolver and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence.

SECTION 4. (*Persons Forbidden to Possess Arms.*) No person who has been convicted in this State or elsewhere of a crime of violence, shall own or have in his possession or under his control, a pistol or revolver.

SECTION 5. (*Carrying Pistol Concealed.*) No person shall carry a pistol or revolver concealed in any vehicle or on or about his person, except in his dwelling house or place of business, or on other land possessed by him, without a license therefor as hereinafter provided.

SECTION 6. (*Exceptions.*) The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law enforcement officers, or to members of the Army, Navy, or Marine Corps

---

*As approved at Denver, July, 1926.

of the United States, or of the National Guard, when on duty, or of organizations by law authorized to purchase or receive such weapons from the United States or this State, or to officers or employees of the United States authorized by law to carry a concealed pistol or revolver, or to duly authorized military organizations when on duty, or to the members thereof when at or going to or from their customary places of assembly, or to the regular and ordinary transportation of pistols or revolvers as merchandise, or to any person while carrying a pistol or revolver unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

SECTION 7. (*Issue of Licenses to Carry.*) [The justice of a court of record, the chief of police of a city or town, and the sheriff of a county, or persons authorized by any of them], shall, upon the application of any person having a bona fide residence or place of business within the jurisdiction of said licensing authority, or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol or revolver concealed upon his person issued by the authorities of any State or subdivision of the United States, issue a license to such person to carry concealed upon his person a pistol or revolver within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol or revolver, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the [Secretary of State], and shall bear the name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within [seven] days be sent by registered mail to the [Secretary of State] and the triplicate shall be preserved for six years by the authority issuing said license.

SECTION 8. (*Selling to Minors.*) No person shall sell, barter, hire, lend, or give any pistol or revolver to any person under the age of eighteen years.

SECTION 9. (*Transfers Regulated.*) No person shall transfer by way of sale, gift, loan or otherwise a pistol or revolver to a person

who he has reasonable cause to believe has been convicted of a crime of violence. No seller shall in any event deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, and place of birth, the date of sale, the caliber, make, model, and manufacturer's number of the weapon, and stating that he has never been convicted of a crime of violence. The seller shall, within seven days, sign and forward by registered mail one copy thereof to the [Secretary of State], and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and shall retain the other copy for six years. This section shall not apply to sales at wholesale.

SECTION 10. (*Dealers to be Licensed.*) No retail dealer shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol or revolver without being licensed as hereinafter provided.

SECTION 11. (*Dealers' Licenses: By Whom Granted, and Conditions Thereof.*) The duly constituted licensing authorities of any city, town or political subdivision of this State may grant licenses in form prescribed by the [Secretary of State], effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

3. No pistol or revolver shall be delivered—

(a) If the seller has reasonable cause to believe that the purchaser has been convicted of a crime of violence; nor

(b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor

(c) On the day of the application for the purchase; nor

(d) Unless the same shall be unloaded and securely wrapped.

—577—

4. A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the [Secretary of State], and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, color, and place of birth of the purchaser, and a statement signed by the purchaser that he has never been convicted of a crime of violence. One copy of said record shall, within seven days, be forwarded by registered mail to the [Secretary of State], and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

5. No pistol, or revolver or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

No license to sell at retail shall be granted to anyone except as provided in this section.

SECTION 12. (*False Information Forbidden.*) No person shall, in purchasing or otherwise securing delivery of a pistol or revolver, or in applying for a license to carry the same, give false information or offer false evidence of his identity.

SECTION 13. (*Alteration of Identifying Marks Prohibited.*) No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any pistol or revolver upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

SECTION 14. (*Existing Licenses Revoked.*) All licenses heretofore issued within this State permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of the ..................day of..............., 19.....

SECTION 15. (*Exceptions.*) This Act shall not apply to antique pistols or revolvers unsuitable for use as firearms.

SECTION 16. (*Act Supersedes Local Laws.*)  The provisions of this Act shall be effective and controlling throughout this State, notwithstanding the provisions of any local law or ordinance.

SECTION 17. (*Penalties.*)  Any violation of any provision of this Act shall constitute an offense punishable by a fine of not more than [$. . . . . . . . . .] or imprisonment for not more than [. . . . . . . . .], or both, or by imprisonment in the penitentiary for not less than [. . . . . . . . . .], nor more than [. . . . . . . . . .].

SECTION 18. (*Constitutionality.*)  If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

SECTION 19. (*Short Title*).  This Act may be cited as "Uniform Firearms Act."

SECTION 20. (*Effective Date.*)  This Act shall take effect on the . . . . . . . .day of. . . . . . . . . . . ., 19. . . . .

SECTION 21. (*Certain Acts Repealed.*)  All laws or parts of laws inconsistent herewith are hereby repealed.

## EXPLANATORY STATEMENT REGARDING UNIFORM FIREARMS ACT*

### RELATION OF ACT TO RECENT FIREARMS LEGISLATION

The National Conference of Commissioners on Uniform State Laws at its Thirty-Sixth Annual Meeting held at Denver, Colorado, July 6–12, 1926, approved the Uniform Firearms Act and voted that it be recommended to the States for adoption.  On July 15th the American Bar Association, meeting at the same place, unanimously approved the Act.

When the subject matter of the Act was first brought to the attention of the National Conference at Minneapolis in August, 1923, much had already been accomplished in the direction of uniform firearms legislation by the United States Revolver Association.  Its legislative committee had drafted a uniform law which had already been adopted with a few changes by North Dakota and New Hampshire.  California had also adopted it with some qualifications and additions.  The law was thereafter

*Added after the approval of the Act.

adopted in Indiana on March 12, 1925, and much of its subject matter has been enacted in the Oregon Act of February, 1925, the West Virginia Act of April 25, 1925, and the Michigan Act of May 26, 1925.

It was therefore because of the timeliness of firearms legislation and the current development of the subject that a uniform law seemed desirable. Practical reasons demanded it; e.g., the necessity of uniform regulations which will prevent a criminal from going from a State where regulations are strict and securing a weapon in a State where they are lax.

Because of the intrinsic merits of the Revolver Association Act, as well as the favor already shown to it, the Conference, after a study of all state legislation upon the subject, adopted the Revolver Association Act as a working model. While changes have been made in language and arrangement, and while there have been some omissions of provisions contained in the model law, and the addition of new matter, the fundamental provisions of the Uniform Act remain the same as those of the model act.

The principles of the Uniform Act have, therefore, already obtained recognition by State legislatures to the extent that the Revolver Association Act has already been adopted. These principles are believed to be consonant with legislative precedent and practical experience, and superior to minority views reflected in some past legislation and in a few recent enactments. For example, the Arkansas Act of March 16, 1923, required a state-wide registration of firearms, but the act proved such a failure that it was repealed in 1925. (A similar provision in the Michigan Act of 1925, the only other of the kind found, has not yet been put into effect.) Another example is that of the recent Massachusetts Act which requires a license to purchase a firearm: one of the few enactments following the theory of the New York law which for a long time has been practically the only statute attempting that form of regulation.

It is submitted that the provisions of the Act present no constitutional objections, constitute no drastic changes in the law of any jurisdiction, and, if adopted generally, will not only secure uniformity, but will remove the evils of the present lack of uniformity.

—580—

# GENERAL PRINCIPLES OF ACT

The general principles embodied in the Act may be summarized as follows:

1. Without making it difficult for a law-abiding citizen to secure arms for the protection of his home, the Act seeks by strict regulation of dealers, identification of purchasers, and strict licensing of those who carry concealed firearms to keep such weapons out of the hands of criminals.

2. The Act provides a heavier penalty for a crime of violence by one who is armed, whether legally or not, and makes the illegal possession of a pistol or revolver *prima facie* evidence of intent.

3. The Act adopts the universal principle in all state statutes forbidding the carrying of concealed weapons with a complete enumeration of classes of excepted persons and with sufficient exceptions to suit special circumstances.

4. The Act forbids the possession under any circumstances of pistols by persons who have committed crimes of violence as defined by the Act, but does not extend the prohibition to aliens.

5. The Act adopts the general principle of forbidding the transfer of pistols to minors.

6. The Act contains a detailed method of identification in the case of sales by private persons and transfers by dealers, requiring licenses of dealers.

7. The Act provides a complete system for granting licenses to carry concealed weapons in cases where the character of the applicants for licenses and the emergencies justify the same.

8. The provisions of the Act are made effective by specific provisions against the giving of false information by purchasers and applicants for licenses, and the alteration of identification marks on weapons.

9. The Act by specific provision is made state-wide, thus eliminating conflicting local ordinances.

10. A general penalty provision is contained in the Act with terms of imprisonment and amounts of fines left blank, so as to suit the needs of the particular state enacting the law.

—581—

## COMMENTS ON INDIVIDUAL SECTIONS

SECTION 1. A "pistol" or "revolver" is defined as a firearm with barrel less than twelve inches in length, in accordance with definitions already prevailing in state statutes. Other kinds of dangerous weapons are not included. "Crime of violence", which is used in numerous places in the Act, is defined to cover such crimes as are ordinarily committed with the aid of firearms.

SECTION 2. An additional penalty is provided for persons committing crimes of violence when armed. This provision is found, not only in recent enactments following the Revolver Association Act, but in other statutes of other states, some of long standing.

SECTION 3. The fact that a criminal is armed with a pistol or revolver without license is deemed *prima facie* evidence of his intention to commit the crime of violence with which he is charged. This provision is also found not only in those states which have followed the Revolver Association Act, but in a number of other states.

SECTION 4. One convicted of a crime of violence is absolutely forbidden to own or possess a pistol or revolver. This provision also has numerous precedents in existing state legislation and is thought to be useful in keeping firearms out of the hands of criminals.

SECTION 5. This section forbids the carrying of concealed weapons and is similar to provisions prevailing in practically every jurisdiction in this country. It adopts the modern theory of making the prohibition extend not only to weapons concealed on the person, but also in vehicles. It is intended thus to remove the easy method by which a criminal on being pursued may transfer a weapon from his pocket to a concealed place in a vehicle.

SECTION 6. This section enumerates all the classes of persons who, it seems, should be excepted from the provisions of Section 5, the list being adopted after a comparison of persons named in existing state statutes. The exception of a concealed weapon in a dwelling house or place of business is contained in the preceding section: this section extends the exceptions to cases where the weapon may be in process of being carried for mere purposes of legitimate transfer or for repair.

—582—

App. 91

SECTION 7. This section defines the method for application and issuance of licenses to carry concealed weapons and for the preservation of the record of the same. It is in line with existing provisions. No bond provision has been added because it is believed that, if a proper showing is made on the part of the applicant as to character and necessity, the bond provision should not be introduced to make the obtaining of the license difficult and burdensome.

SECTION 8. The provisions of this section forbidding the delivery of a weapon to a minor are similar to those generally now prevailing. The age of eighteen years named in the section has been deemed more desirable than the younger age named in a number of statutes and the higher age named in some. It is believed that in ordinary instances youths will be of sufficient maturity at eighteen, and that the naming of a higher age might make it impossible to deliver weapons to mature youths who might need them.

SECTION 9. This section first forbids a transfer of any kind of firearm to one who the transferrer may have reasonable cause to believe has been convicted of a crime of violence. The provision forbidding a seller to transfer on the day of purchase is intended to avoid the sale of a firearm to a person in a fit of passion. The section further requires identification of purchaser and weapon and the preservation of this identification.

SECTION 10. This section requires a license of dealers and is in line with existing statutes.

SECTION 11. This section constitutes the conditions under which licenses will be granted to dealers and for the breach of which such licenses will be forfeited. These conditions are in line with all modern legislation on the subject and constitute the chief safeguard against firearms coming into the possession of undesirables.

SECTION 12. This section prohibits the giving of false information in purchasing a firearm or in applying for a license to carry the same. The principles of the section have been adopted not only by those states adopting the Revolver Act, but by a number of other states.

SECTION 13. This section, also designed to preserve the identification of weapons in connection with transfers, forbids the changing of identifying marks and provides that the possession of pistols

from which such identifying marks have been obliterated shall be *prima facie* evidence that the possessor has changed the same. It has been adopted by all states which have enacted the Revolver Association Act.

Section 14. This section revokes all existing licenses on a date to be inserted by the enacting state.

Section 15. This section is designed to remove from the operation of the Act firearms that are kept merely as curiosities. It has been adopted already in those states which have passed the Revolver Association Act.

Section 16. This section was designed by the committee of the Conference and adopted by the Conference for the purpose of making the Act apply throughout the state at large so that conflicts with local ordinances might be avoided. The necessity for this section arises from the fact that firearms regulation has been in many places a matter of city ordinance.

Section 17. This is the general section which provides penalties for violations of the various provisions of the Act. The amounts of fines and the lengths of imprisonment are left blank so that these may be fixed according to the needs and usages of the particular state. This section is so framed as to be applicable to different state definitions of misdemeanors and felonies. A general penalty section has been thought more scientific than the naming of penalties in connection with specific sections.

Section 18. This section is intended to avoid the invalidity of the entire Act by a judicial holding that a particular part is unconstitutional. It has been added by the Conference as one of its model sections contained in most Uniform Acts.

Section 19. This section, in accordance with the practice of the Conference, provides for a short designation of the Act to avoid the longer definition at the beginning. In the selection of the words, "Uniform Firearms Act," the definite article "the" has been omitted in order to reduce the short title to its smallest terms.

Section 20. This section is the usual section found in Uniform Acts providing for an effective date.

Section 21. This section is the usual section in uniform acts and contained in the Revolver Association Act, repealing existing laws inconsistent with the Uniform Act.

—584—

# REPORT OF COMMITTEE ON AN ACT TO REGULATE THE SALE AND POSSESSION OF FIREARMS

*To the National Conference of Commissioners on Uniform State Laws:*

The records of the Conference will show that this committee was first appointed at Minneapolis in 1923; that, after reporting a first draft in 1925, the committee reported a second draft at Denver in 1926, which was adopted by the Conference and approved by the Bar Association but which was later withdrawn by both bodies for reconsideration; that the subject matter was considered at Buffalo in 1927 in connection with the work of the National Crime Commission; that a " First Revised Draft " was considered fully at Seattle in 1928; and that a " Second Revised Draft " was presented, although somewhat inadequately considered at Memphis in 1929. (Handbooks 1924, p. 711; 1925, p. 859; 1926, p. 571; 1927, p. 866; 1928, p. 419; 1929, p. 348.)

At the Memphis meeting it was the sense of the Conference, as expressed in its resolution, that sufficient time was not available for consideration of the matter, which was deferred to the 1930 meeting (Handbook 1929, p. 134). An appropriation was made, as requested by the committee, to make possible a meeting of the committee and the work of bringing up to date the statutory annotations embodied in the 1925 Report together with the inclusion of notes of judicial decisions.

The committee met in Chicago on March 28 and 29 and devoted those days entirely to the preparation of the " Third Revised Draft " which accompanies this report. (There were present at the meeting Messrs. Martin, Scott, Lane, Imlay, Ailshie, and O'Connell.) Subsequently the members of the committee compiled in their various sections much of the material that has gone into the annotations appended to the various sections of the draft. The large labor of completing this at the Library of Congress and preparing it for the

530

printer was done under the supervision of a member of the committee by Mr. George G. McLeish and Mrs. Grace E. Ganse of Washington, D. C., for the nominal compensation the committee was able to give, for which help the committee desires to express its thanks.

It is the unanimous belief of the committee that the act should be confined entirely to a pistol, as defined therein and for that reason the committee has eliminated from the draft any reference to machine guns and other offensive weapons. We believe that any legislation having to do with machine guns or offensive weapons such as sling-shots, gas bombs, brass knuckles, and other implements used by the criminal element does not come within the field of consideration of a pistol or firearms act.

The committee has drawn up for the final consideration of this Conference an act that is very nearly in conformity with the act passed at Denver in 1926, which was subsequently ratified and adopted by the American Bar Association.

If the Conference feels that legislation should be considered concerning machine guns or other offensive weapons, then this committee recommends that a separate act be drafted to cover that kind of weapons, and it is the recommendation of this committee that such an act be drafted to supplement the act which we are submitting.

The salient features of the Firearms' Act are: (1) that provisions have been made to prevent any person known to be a criminal, or a narcotic addict, or an habitual drunkard, or a mental defective, from possessing a pistol; (2) that no one can be permitted to carry a pistol concealed without being duly licensed; (3) that no one can sell a pistol without being duly licensed, and the persons so licensed are in turn forbidden to sell to those known to be of the criminal class, narcotic addicts, habitual drunkards, and mental defectives, and they must know the identity of the person to whom the sale is made; and (4) that the possession of a pistol by a person not being duly licensed to carry it, at the time of the commission of a crime of violence, is *prima facie* evidence of his intention to commit the crime. The committee also recommends that this act provide for a

531

fee to be charged for issuing license to carry firearms and for permit to sell. We believe such regulations are indicated in the act to accomplish these purposes.

It is the belief of your committee that the proposed uniform act embodies sane forms of regulation which have stood the test of experience in this country, and that it embodies such new ideas as have been presented from time to time, notably by the Crime Commission and other organizations working along this line. Thus, at the same time that it preserves the traditional methods of firearms regulation, it takes advantage of enlightened experience of recent years. It comes as near, in the opinion of your committee, as it is possible to come in meeting the two divergent views of a too drastic regulation on the one hand and a too liberal lack of regulation on the other. It is believed that the work of the committee and the Conference over these four years since the Denver act was withdrawn for further consideration has fully accomplished the purpose intended by this Conference in so withdrawing the Denver act. The committee, therefore, respectfully submits this act as the final work on the subject, and recommends that it be adopted by the Conference and promulgated among the states.

## ANNOTATIONS

The annotations of statutes are intended to cover primarily the period from the annotations in the 1925 Report (Handbook 1925, p. 859) to date. In some instances statutes of an earlier date are referred to for completeness. The statute law is on the whole extensive. It is interesting to note that recent legislation, *e. g.,* in Massachusetts, Michigan and Rhode Island has adopted much of the language of the Uniform Act. The legislature of Hawaii in 1927 adopted the act practically as a whole. It has been pointed out a number of times that the proposed act is based upon a model which has been adopted in the main in California, North Dakota, New Hampshire and Indiana. Thus even before the Conference has voted finally upon the matter the principles and much of the form of the proposed act have already been adopted by the states.

532

The judicial decisions are believed to be fairly inclusive of cases decided in the various states within the last fifteen years. In a few cases decisions are placed for convenience in notes on statutes.

In the case of both statutes and decisions where the name of a state does not occur this indicates that no material has been found in the statutes or decisions of that state. (In the later sections as to effective date, repeal provisions, etc., no attempt was made to reproduce more than a few typical examples of statutes.) The committee invites Commissioners to point out any oversights.

Respectfully submitted,

JOSEPH F. O'CONNELL, *Chairman,*

CHARLES V. IMLAY,

CHARLES E. LANE,

GEORGE B. MARTIN,

A. L. SCOTT,

JULIEN O. SETH,

JAMES F. AILSHIE, *Section Chairman.*

### THIRD REVISED DRAFT OF A UNIFORM ACT TO REGULATE THE SALE AND POSSESSION OF FIREARMS

AN ACT REGULATING THE SALE, TRANSFER AND POSSESSION OF CERTAIN FIREARMS, PRESCRIBING PENALTIES AND RULES OF EVIDENCE, AND TO MAKE UNIFORM THE LAW WITH REFERENCE THERETO

1    SECTION 1. (*Definitions.*) "Pistol," as used in this act,
2  means any firearm with barrel less than twelve inches in
3  length.
4    "Crime of Violence," as used in this act, means any of the
5  following crimes or an attempt to commit any of the same,
6  namely, murder, manslaughter, rape, mayhem, assault to do
7  great bodily harm, robbery, burglary [housebreaking, breaking
8  and entering, and larceny[.[1]
9    "Person," as used in this act, includes firm, partnership,
10  association or corporation.

[1] Crimes here enumerated to be modified to suit local definitions.

533

*Hawaii.* Act 206, 1927, s. 1. "Pistol" and "Crime of Violence" defined identically with proposed act.

*Mass.* Ch. 140, 1929 Supp. Cum. Stat. s. 121. "Firearms" includes pistol, revolver or other weapon with barrel not over 12 inches and a machine gun irrespective of length. "Purchase" and "sale" shall include "exchange." "Purchaser" shall include "exchanger." "Sell" and "purchase" include "exchange."

*Mich.* Pub. Acts, 1927, No. 372, June 2, 1927, s. 1. "Pistol—any firearm, loaded or unloaded, 30 inches or less in length."

*Nev.* Ch. 47, 1925, s. 2. "Pistol," "revolver" and "'firearm capable of being concealed on person' as used in this act" applies to all firearms with barrel less than 12 inches long.

*N. J.* Ch. 321, Laws of 1927, s. 11. "Pistol" or "revolver" when used in act shall include shotgun, rifle, or other firearm with over-all length less than 26 inches. *Ibid.*, s. 2 and 3. "Crime of violence" includes assault, robbery, larceny, burglary, breaking or entering with revolver, pistol or other firearm.

*N. D.* Comp. Laws Ann. 1913-1925, s. 9803a1. Definition of "pistol" identical.

*Ore.* Ch. 3, 1921-27 Supp. "Pistol," "revolver" and "other firearm capable of being concealed upon person" is any firearm with barrel less than 12 inches long.

*R. I.* Ch. 1052, L. 1927, s. 1. "Pistol" includes shot gun, etc., with overall length of 26 inches, provided it has a magazine and not designed for blank cartridges only. "Person" defined practically identically. Does not mention partnership. "Crime of violence" practically identical. Larceny only excluded.

*Tex.* 1928 Comp. Stat., Art. 347. "Arms" includes any "deadly weapon."

———————

*N. Y.* "Revolver" so out of repair that it cannot be fired is not "firearms." People v. Simmons, 207 N. Y., s. 56 (1924).

*N. C.* A "pistol" is properly included within the word "arms." "Bowie knives," etc., are not "arms." State v. Kernan, 181 N. C., 574.

1    SECTION 2.   (*Committing Crime When Armed.*)   If any
2   person shall commit or attempt to commit a crime of violence
3   when armed with a pistol, he may in addition to the punish-
4   ment provided for the crime, be punished also as provided by
5   this act.

*Ariz.* 1928 Rev. Stat., s. 4615. Assault with deadly weapon by life prisoner is punishable by death.

*Fla.* Ch. 12, 246 Laws 1927, amending s. 5055 Rev. Stat. 1920. Robbery by person armed with dangerous weapon with intent to kill if resisted punishable by imprisonment for term of years or for life. This act was de-

clared unconstitutional in case of Wood v. State, 120 So. 44, decided Oct. 18, 1929, by reason of fact it was not properly passed by legislature and its inclusion in the Compiled General Laws did not give additional strength, force, or effect. This act reenacted by Ch. 13792 Laws of 1929; approved June 8, 1929.

*Hawaii.* Act 206, 1927, s. 2. Practically identical. Provision that crime of violence be one " capable of being committed or facilitated by means of a pistol."

*Ida.* Ch. 49, 1925, s. 1. Carying any "firearm" while violating prohibition laws is a felony.

*Ind.* Ch. 55, 1929, s. 1. Any person over 16 years of age committing or attempting to commit rape, robbery petit or grand larceny while armed with pistol or other dangerous weapon is guilty of separate felony in addition to crimes above named. Punishment 10-20 years.

*La.* Act 183, Laws 1926, p. 291. Judge of any court convicting person of crime may, in addition to penalities order "forfeiture and destruction" of weapons in his possession.

*Mass.* Ch. 265, 1929 Supp. Cum. Stat. s. 15A. Penalty for assault with intent to kill by dangerous weapon is imprisonment not over 10 years in state prison or 2½ years in jail or a fine not over $1000.

*Minn.* Ch. 294, s. 1, Laws of 1927. Makes an additional penalty for felony committed while armed with a firearm, which penalty is in addition to that imposed for the felony. Additional punishment; "not less than five years."

*N. J.* Ch. 21, Laws 1927, s. 2. For committing crime of violence when armed with "pistol" or "other firearm," in addition to punishment for crime, shall be punished for first conviction by imprisonment not more than five years; upon second conviction, not more than ten years; upon third conviction, not more than fifteen years; upon fourth or subsequent conviction, imprisonment for life, or for an additional period of years in discretion of court, providing there is an averment that person charged was armed or had in his possession such instrument.

*N. Y.* Ch. 41, Cahill's Code, s. 1914. Person committing felony while armed shall have his punishment increased according to number of convictions. Ch. 419, L. 1926, s. 552-3. Person illegally carrying, etc., pistol or other dangerous weapon if previously convicted of felony or attempt to commit felony, or convicted for misdemeanors twice cannot be admitted to bail.

*N. D.* Act of 1923, s. 9803a2, Supplement to Compiled Laws of 1913. The N. D. act is similar, except it covers any "crime," but excepts those who have permit to carry "pistol or revolver." The penalty is fixed at the more drastic one of "not less than ten years."

*Ohio.* Act 1929, p. 502, H. Bill 285, amending s. 12441 Gen. Code. Entering financial institution where funds are kept to commit a felony with firearms punishable by imprisonment for life; 20 years or more if jury recommends mercy.

535

*Okla.* 1926 Supp. Comp. Stat. s. 1784a. Attempt to rob or robbery committed with firearms is a felony, and person convicted subjected to punishment by death, or imprisonment at hard labor for at least 5 years.

*Ore.* Ch. 3, 1921-27 Supp. s. 3. Commission of felony while armed "without permit" shall, in addition to punishment received for crime committed, be punished according to number of convictions; such additional punishment to commence immediately upon expiration of sentence imposed for crime of which he stands convicted. *Ibid.*, s. 4.

*R. I.* Ch. 1052, L. 1927, s. 2. Identical with proposed act.

*Tex.* 1928 Comp. Stat., Art. 340. If arms used in resisting civil process punishment is double. *Ibid.*, Art. 341. If arms used in resisting criminal arrest in such manner as to make one guilty of assault and battery or assault with intent to kill, or any other offense against the person, person resisting shall receive highest penalty for commission of such offenses in ordinary cases. *Ibid.*, Art. 329, 330. If one uses arms in aiding an escape his penalty shall be increased. *Ibid.*, Art. 1151. Assault with pistol, etc., is an assault with a "prohibited weapon" and makes subject to fine not exceeding $200 or to imprisonment in jail not exceeding 2 years, or to confinement in penitentiary not exceeding 5 years. *Ibid.*, 1408. Robbery with firearm, punishment is 5 years to death.

*Vt.* Act 127, 1927. Person carrying "dangerous or deadly" weapon while committing felony or while smuggling alien, or while violating Section 6558 of General Laws as amended by No. 204 of Act of 1921 shall be imprisoned from 3 months to 2 years.

*Wash.* Remington's Comp. Stat. 1927, s. 2264. Attempt to commit a felony while armed with pistol, revolver, or deadly weapon is punishable in the same manner as if it had been completed.

*Wis.* Wis. Statutes, 1927, s. 340.43 makes increased penalties for various offenses if committed while armed. Twenty-three years imprisonment is added if robbery is committed when armed, ss. 340.43 and 340.40. The maximum sentence for robbery if not armed is 7 years, while if a similar robbery is committed while armed, the maximum sentence is 30 years. Burglary, if committed while armed, is increased from 8 to 15 years.

1    SECTION 3. (*Being Armed Prima Facie Evidence of Intent.*)
2    In the trial of a person for committing or attempting to
3    commit a crime of violence, the fact that he was armed with a
4    pistol and had no license to carry the same shall be *prima facie*
5    evidence of his intention to commit said crime of violence.

*Hawaii.* Act 206, 1927, s. 3. Identical with provision that act be one capable of being committed or facilitated by means of a pistol, etc.

*Ia.* Code of Iowa, 1927, s. 12949. Proof that no permit had been issued to defendant in the county where offense alleged to have been committed, is *prima facie* evidence that defendant had no permit to carry a concealed weapon.

536

*Mich.* S. 6, Public Acts, 1927. Failure to produce license to carry firearms upon request of officer, is *prima facie* evidence of violation of the act.

*N. J.* Ch. 321, Laws 1927, s. 3. Identical with proposed section except that it includes "any other firearms." Presence of firearm in vehicle is presumptive evidence of possession by all persons occupying vehicle at time.

*N. D.* S. 9803a4. Similar to proposed section; the word " felony " is used in N. D. instead of the phrase " crime of violence."

*Ore.* Ch. 3, 1921-27 Supp. s. 3. Practically identical with proposed section.

*R. I.* Ch. 1052, L. 1927, s. 2. Identical with proposed act except it includes machine guns. *Ibid.*, s. 15. Negative allegation need not be averred, etc. *Ibid.*, s. 16. Officer may arrest without complaint and warrant.

----

*Cal.* St. 1923, p. 695. Making possession of firearm by one convicted of felony a crime, criminal intent need not be shown, unless purpose to require it can be discovered from language or effects of law. People *v.* Gonzales, 72 Cal. App. 626 (1925). To warrant conviction weapon need not have been concealed on person; mere possession or control and custody sufficient. *Id.*

*N. D.* See State *v.* Brown, 38 N. D., 340; 165 N. W. 520; State *v.* Williams, 48 N. D. 1259; 189 N. W. 625.

1   SECTION 4. (*Certain Persons Forbidden to Possess Arms.*)
2   No person who has been convicted in this state or elsewhere of
3   a crime of violence, shall own a pistol or have one in his
4   possession or under his control.

*Hawaii.* Act 206, 1927, s. 4. Identical but s. 23. *Ibid,* provides habitual criminals, anarchists, etc., cannot get a permit. *Ibid.*, s. 25 amending s. 2143, 1925 Rev. Laws. Permits aliens to have firearms upon request being filed by 2 reputable citizens that alien have permit issued him.

*Mich.* S. 8, Public Acts, 1927. Board may revoke any license or certificate of magistrate showing licensee has violated any provisions of act, or has been convicted of felony, is an unfit person to carry concealed weapons, or for any reasonable cause.

*Miss.* Code 1927. Judge may forfeit weapon found on defendant charged with crime.

*Nev.* Ch. 47, 1925, s. 2. Aliens and persons convicted of felony shall not have in possession or under control pistol or revolver.

*N. J.* Ch. 321, Laws 1927, s. 4. Identical with proposed section except that it includes purchasers who have been convicted of carrying "any . . . . . firearms."

*N. D.* S. 9803a5, Supplement to Compiled Laws of 1913. Similar to proposed section as regards felons. S. 9803a5 makes it unlawful for an alien as well as a felon to " own or have in his possession or under his control, a pistol or revolver."

537

*Ore.* Ch. 3, 1921-27, Supp. s. 2. Aliens and persons convicted of felony not to own or possess or have under their control firearms capable of concealment on person.

*R. I.* Ch. 1052, L. 1927, s. 3. Identical with proposed act.

*Wyo.* Ch. 106, 1925, s. 1. Possession of pistol or other firearm or weapon by aliens unlawful. $25-$100 or not more than 6 months or both. S. 3 excepts persons tending sheep or other animals on open range and persons who have procured hunting licenses.

-------

*Cal.* St. 1923, p. 696, s. 2. Prohibiting possession of pistol by one previously convicted of felony is not "*ex post facto*" law and is within police power. People *v.* Camperlingo, 69 Cal. App. 466 (1924). People *v.* James, 71 Cal. App. 374 (1925).

1    SECTION 5. (*Carrying Pistol.*) No person shall carry a
2 pistol in any vehicle or concealed on or about his person, except
3 in his place of abode or fixed place of business without a license
4 therefor as hereinafter provided.

*Ariz.* 1928 Rev. Code, s. 4724, 4725. Carrying " concealed " pistol or other firearm unlawful on person or into assemblies is a misdemeanor. Person carrying such weapon may be arrested without a warrant. *Ibid.*, s. 4616. Possession of " deadly weapon " with intent to assault is a misdemeanor. *Ibid.*, s. 5292. Person charged with felony may be searched for dangerous weapon by order of committing magistrate.

*Cal.* Act 1925, s. 1 amending act 1923. First violation is now a felony. 1-5 years.

*Fla.* Ray *v.* State, 121 So. 787. Defendant given six months for carrying concealed weapon. State *v.* Brunson, 111 So., 321. Carrying a concealed weapon held to be a misdemeanor. State *v.* Jones 121 So. 300. Carrying pistol in knapsack in hand or suspended from shoulder guilty of carrying concealed weapon " on or about his person."

*Hawaii.* Act 206, 1927, s. 5. No one shall carry, keep, possess or have under his control, except licensees. Persons " lawfully acquiring " pistol may keep in his dwelling house or his business office without license, and may lawfully carry it in pursuit of person making attack on person or property in said house or office.

*Ill.* Cahill's Code, 1927, s. 141 (1) (4). Act 1925. Punishment not more than $300 nor more than one year, or both.

*Ia.* Code of Iowa, 1927, s. 12936. Prohibits carrying concealed weapons. S. 12938. Sheriff may issue permit to a person to carry a concealed weapon for a limited time. S. 12947. Permittee must carry permit with him to show it on request of peace officer. Violation of s. 12936 a felony. Punishment: Not more than $500 fine or imprisonment not more than 2 years, or both such fine and imprisonment.

538

*Ky.* 1930 Carol's Ky. Stat. s. 1309. Carrying concealed a deadly weapon on or about person is a high misdemeanor and person convicted shall be disfranchised and excluded from right of suffrage for 2 years.

*Mass.* Ch. 269. 1929 Suppl. Cum. Stat. s. 10. Now includes "under his control in a vehicle," loaded or unloaded. Upon conviction of owner pistol may be confiscated.

*Mich.* Public Acts, 1927, s. 5. No person shall carry a dangerous weapon "concealed on or about his person or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or in other land possessed by him," nor shall he carry a pistol in any vehicle without a license.

*Minn.* Mason's Minn. St. 1927, s. 10255. Any person who shall, with intent to use the same against another, "conceal or possess" a pistol, etc., is guilty of a gross misdemeanor.

*Miss.* Code 1927, s. 878. Prohibits pointing or brandishing deadly weapon in threatening manner.

*Neb.* Comp. St. Neb. 1922, s. 9829. Whoever shall carry a concealed weapon shall, upon conviction, be fined in any sum not exceeding $1000 or imprisoned in the penitentiary not exceeding 2 years. The statutes provide a defense for carrying concealed weapons, if the circumstances were such as would justify a prudent man to carry same. In Roberts *v.* State, 110 Neb. 759, the court said that where the state proved beyond a reasonable doubt the carrying of concealed weapons the burden of proof is on the defendant who relies on the proviso as a defense.

*N. J.* Ch. 212, Laws of 1928, amending Ch. 321, Laws of 1927, s. 11. Almost identical with proposed section, but includes "concealing on land possessed by person."

*N. C.* Ch. 224, Laws 1929, amending S. 4410, Cons. Stat. Officers and soldiers of U. S. Army "in discharge of official duty, acting under orders requiring them to carry arms or weapons" permitted to carry arms and weapons; forbidden others by section 4410 Cons. Stat.

*N. D.* Suppl. to 1913 Com. Laws, s. 9803a6. Similar to proposed section but the prohibition is broader, to wit: "No person shall carry a pistol or revolver concealed in any vehicle or in any package, satchel, grip, suit case or carry in any way, except in his dwelling house or place of business, without a license," etc.

*Ore.* Ch. 3, 1921-27 Supp. s. 5. Unlawful for any person to carry concealed on person or in vehicle under his control any pistol, revolver or other firearm. But persons of 18 years of age may own or possess on residence or place of business, any such firearm capable of being concealed, without a license. Firearms carried openly in belt holsters shall not be deemed concealed. S. 7 (*Ibid*). Carrying concealed firearm a nuisance. Such weapons may be destroyed by officers to whom surrendered, except upon certification of a judge of court of record, or district attorney that preservation is necessary or proper to ends of justice, provided, weapon was not

539

stolen from lawful owner, when it will be returned to said owner upon issuance by judge of certificate that ends of justice will be thereby served.

*R. I.* Ch. 1052, L. 1927, s. 4. Practically identical with proposed act. Prohibits carrying " on land possessed by him."

*S. D.* Revised Code, 1919, s. 3981. Prohibits the carrying of concealed weapons, but excepts officers.

*Tenn.* Supp. Anno. Code, 1926, s. 6657a, ss. 1, 2, 3. Unlawful weapons on arrested person subject to confiscation.

*Tex.* 1928 Comp. Stat., Art. 485. Carrying arms in any assembly unlawful. Punishment $100-$500 or one month-one year. Art. 488 (P. C.). Dope seller carrying pistol or other weapon may be confined from 1-10 years in penitentiary. Art. 7038. Live stock sanitary commission inspector cannot carry on his person or in vehicle a pistol or other weapon.

*Utah.* Ch. 21, 1925, s. 46. All persons forbidden to use "firearms" in pursuit of birds or animals while intoxicated. S. 29. Unlawful for any person to carry "firearms" within limits of state game preserves, except upon state highways.

*Va.* Code 1926, s. 2324a. Owner must pay license tax on each pistol.

*W. Va.* Ch. 3, Laws 1925, H. Bill No. 7a, amending Ch. 48 Code as amended. Person carrying pistol and other weapons without state license guilty of misdemeanor, even though licensed one is forbidden to carry, expose, etc., pistol so as to cause or threaten breach of peace.

*Wis.* St. 1927, s. 340.69. It is provided that it is unlawful for any person, in a state of intoxication, going armed with a pistol, either concealed or not. The old provision of the law still remains making it unlawful to carry a concealed weapon, except police officers serving process.

---

*Ala.* Word "carry" in Acts 1909, p. 258, s. 2, means to "bear" weapon and does not necessarily impart the idea of locomotion. Danal *v.* State, 14 Ala. App. 97. This act applies only to a pistol not concealed. Little *v.* State, 16 Ala. App. 492.

*Cal.* St. 1917, p. 221 with reference to carrying weapon held constitutional. *Ex parte* Dare, 176 Cal. 83 (1917); *Ex parte* Rameriz, 193 Cal. 633 (1924), 34 A. L. R. 51; People *v.* Smith, 36 Cal. App. 88.

*Del.* Carrying of concealed deadly weapon in dwelling house is violation of statute. State *v.* Gagliotta, 2 W. Harr. 360 (1923).

*D. C.* Under Code 1901, s. 855, providing that one may carry concealed weapons from place of purchase to dwelling house it was error, where accused testified that he had just purchased the weapon and was taking it home, to instruct the jury to convict, notwithstanding they might find that fact from the evidence. Bell *v.* U. S., 49 App. D. C. 367 (1920). Defendant who had received revolver in payment of a debt and was carrying it to his home was not guilty of carrying a deadly weapon; mere fact that he did not go home immediately after receiving revolver is not conclusive on question of intent. Bolt *v.* U. S., 55 App. D. C. 120.

540

*Ga.* One arrested in one county and taken by officer to another where concealed weapon found upon him, cannot be convicted for carrying concealed weapons under Penal Code 1910, ss. 31, 347. James *v.* State, 153 Ga. 556 (1922). Though cropper had to go to landlord's house over public road for a mule he could not carry pistol on said road in the absence of emergency. 26 Ga. App. 637. Not a violation of Park's Ann. Pen. Code, 3.348 (a) for one driving a horse and buggy to have pistol under seat when not in contact with any portion of his person. Hayes *v.* State, 28 Ga. App. 67.

States may constitutionally regulate manner of bearing arms of offense and defense. Armond *v.* State, 18 Ga. App. 140 (1916). One carrying pistol outside of his residence or place of business without necessary license, and then carrying it concealed at same time and place, is guilty of two offenses. Bishop *v.* State, 21 Ga. App. 236 (1917); Foy *v.* State, 33 Ga. App. 676; Miller *v.* Do., 36, 304; Edwards *v.* Do., 36, 65; Brinkley *v.* Do., 37, 31; Middle Brooks *v.* Do., 37, 83; Moss *v.* Do., 37, 124; Crozier *v.* Do., 37, 160; Welch *v.* Do., 37, 380; Ray *v.* Do., 37, 510; Newman *v.* Friggin Foundry & Machine Co., 38, 518; Wright *v.* State, 39, 10; Fanning *v.* Do., 39, 531; Adams *v.* Do., 39, 572; Long *v.* Do., 39, 572.

*Ia.* Essential element of crime of carrying concealed weapons, created by Code Supp. 1913, s. 4775-1a is presence on defendant's person of concealed dangerous weapon which he is carrying without permit. State *v.* Burns, 181 Ia. 1098 (1917). Under same Code object of carrying concealed weapon is immaterial, but one must have consciously or intentionally carried the weapon to be guilty thereunder. State *v.* Williams, 184 Ia. 1070.

*Ky.* Pistol in overalls pocket in such manner that officer knew well enough what it was, was "concealed" within state prohibiting carrying of concealed weapons. Roberson *v.* Commonwealth, 207 Ky. 53 (1925).

*Mich.* Public Acts 1912, s. 7, relating to unlawful carrying of concealed weapons is constitutional. People *v.* Gogak, 205 Mich. 260 (1919). But part of Public Act s. 14, 1921, making it crime for alien to possess revolver unless permitted by sheriff is unconstitutional. People *v.* Zerillo, 219 Mich. 635 (1922); 24 A. L. R. 1115. If person knowingly carries dangerous weapon concealed upon his person, he is going armed with dangerous weapon concealed upon his person within Comp. Laws 1915, s. 15236. People *v.* Williamson, 200 Mich. 342 (1918). Only intent to carry need be shown. *Id.* Carrying concealed weapon through restraint or ignorance is good defense. *Id.*

*Miss.* Defective weapon concealed a violation. Mitchell *v.* State, 55 So. 354 (1911); 34 L. R. A. (N.S.). 1174, Note.

*Mo.* Rev. St. s. 4496, prohibiting carrying of concealed weapons is constitutional. State *v.* Keet, 269 Mo. 200 (1916); L. R. A. 1917 C. 60. The plea that concealed weapons are carried for self-defense is no justification. *Id.* Motive of carrying concealed dangerous weapon is immaterial in prosecution for said act. State *v.* Whitman, 248 S. W. 937 (1923). Offense of carrying concealed weapons is made out if concealment is in close proximity to accused as to be within reach and convenient control, though not actually

541

on the person. State *v.* Conley, 280 Mo. 21 (1919). Weapon would be concealed within meaning of Rev. Stat. 1919, s. 3275, if it was behind body of accused on seat of automobile and within his convenient reach; but if in plain view it was not concealed. State *v.* Mulcroney, 270 S. W. 375 (1925). Loaded revolver on floor of automobile at feet of defendant not discernible because of darkness is concealed weapon. State *v.* Renara, 273 S. W. 1078 (1925).

*N. H.* Laws 1917, c. 185, ss. 6, 7. Making it unlawful for alien who has not declared intention to become citizen to have firearm in his possession is not in violation of U. S. Const. Amend. 14, relating to due process, and denying equal protection, without regard to nationality. State *v.* Rheaume, 80 N. H. 319 (1922).

*N. J.* Statute creating crime of carrying concealed weapons is constitutional. State *v.* Angelo, 130 A. 458 (1925).

*N. C.* P. Loc. Laws 1919, c. 317, so far as it prohibits carrying of a pistol unconcealed off of one's own premises without a permit for which a fee of $5 and a bond of $500 is required, is unconstitutional. But carrying of pistols of such small size as to be easily concealed may be prohibited under the constitution. State *v.* Kernan, 181 N. C. 574 (1921).

*Ohio.* Gen. Code, s. 12819, when construed to prohibit concealed arms even in one's home, is not unconstitutional. Carrying weapon concealed while in bunkhouse is unlawful. State *v.* Nieto, 101 Ohio St. 409.

*Okla.* Fact that gun concealed was a 44 caliber "army gun" and was carried to resist a threatened attack on life is not a sufficient defense. Shepherd *v.* State, 192 P. 235 (1920).

*S. C.* Carrying pistol about in satchel or suit case is not violation of Cr. Code 1912, s. 157, prohibiting carrying of unlawful weapon. State *v.* Weston, 108 S. C. 383.

*Tenn.* In prosecution for unlawfully carrying a pistol it is not necessary to prove ownership. Lewallan *v.* State, 148 Tenn. 326 (1923). Where defendant reached over a nearby log, secured a pistol and presented it in a threatening manner there was sufficient carrying of a pistol for purpose of being armed to sustain a conviction. *Ibid.* It is no defense to prosecution for carrying a pistol that it be an army and navy pistol, if carried concealed, instead of openly in hand. Liles *v.* State, 138 Tenn. 392 (1917).

*Tex.* Defendant not guilty of unlawfully carrying pistol handed him by another to keep temporarily who took weapon back shortly after. Wallace *v.* State, 82 Tex. Cr. R. 658 (1918). Defendant not guilty of violation of pistol law where he had made trade and pistol was unexpectedly turned over to him by seller at a social gathering from whence he carried it home. Gates *v.* State, 82 Tex. Cr. R. 655 (1918). One who borrows pistol and carried it home by most practicable route does not violate law prohibiting unlawful carrying of pistol. Wilson *v.* State, 80 Tex. Cr. R. 356 (1919). Fact that accused would be justified in carrying pistol from place of business to his residence does not authorize him to arm himself and seek an antagonist,

542

although he found him en route to his home. Moore v. State, 91 Tex. Cr. R. 156. Provisions of Penal Code 1911, Art. 475 forbidding carrying firearms were not passed to punish one who had momentary possession of a pistol where the facts negative the intention to violate the law. Davis v. State, 91 Tex. Cr. R. 156. Person may carry pistol from home to store or from one store to another with *bona fide* intent of leaving at place to which carried if it is not carried habitually, or in roundabout ways or while loitering along streets. Cassi v. State, 86 Tex. Cr. R. 369 (1919). See also Anderson v. State, 96 Tex. Cr. R. 578 (1924). But see Taylor v. State, 88 Tex. Cr. R. 112 (1921), which makes a distinction of a case where person carries pistol not to leave it at destination but merely to have it with him. Person cannot be convicted where he gets pistol from brother to whom he had loaned it and carried it 30 miles to another town where he lived. Rosebud v. State, 87 Tex. Cr. R. 267 (1920). Where one has fight in a town other than that of his residence and borrows pistol from father-in-law with the avowed purpose of carrying it home and keeping it at his place of business and is arrested at the depot with it in his possession he is not guilty of unlawfully carrying a pistol. Farris v. State, 94 Tex. Cr. R. 306. One reasonably believing he was appointed an officer and acted under belief and exercised authority under that appointment would not be guilty of carrying a pistol. Barnett v. State, 89 Tex. Cr. R. 45. Lack of intent to violate the law is no justification. Lewis v. State, 84 Tex. Cr. R. 409 (1919). Carrying pistol about person and on his own premises is lawful. Mills v. State, 192 S. W. 241 (1917). Carrying pistol on own premises is not unlawful. Rogers v. State, 85 Tex. Cr. R. 421 (1919). Where divorce decree placed community property in wife's possession and prohibited husband from interfering with her management thereof premises were not his premises within meaning of Penal Code, 1911, Art. 476. Solosky v. State, 90 Tex. Cr. R. 537 (1922). Pistol behind the front cushion of a jitney driver's automobile on which he sat to drive was carried "about the person" within the statute. Wagner v. State, 80 Tex. Cr. R. 66 (1916). Pistol carried in the box of a buggy seat is carried "about the person" of the driver. Emerson v. State, 80 Tex. Cr. R. 354 (1916). Pistol pushed between seat of car and back of cushion immediately behind steering wheel is sufficient carrying "on or about person." Paulk v. State, 97 Tex. Cr. R. 415 (1924). Pistol in a hand bag placed between the seats on floor of automobile was on or about driver's person in violation of Pen. Code 1911, Art. 475. "About" means nearby, close at hand, convenient of access and within such distance of party so having it as that such party could without materially changing his position get his hand on it. Welch v. State, 97 Tex. Cr. R. 335 (1924). Pistol in hand satchel or running board of automobile is carried on or about driver's person. Armstrong v. State, 98 Tex. Cr. R. 335 (1924).

*Va.* Carrying in the hands a pair of saddle bags with lids down containing weapon not carrying concealed. Sutherland v. Comm. 65 S. E. 15 (1909); 23 L. R. A. (N. S.) 173, Note.

*W. Va.* Buyer of pistol who carried it by auto from the store to his garage, located within 35 or 40 yards of his dwelling, on lot other than that on which dwelling stood, who while in such garage loaded pistol and fired 3 or 4 shots into the floor to try its shooting qualities and immediately carried it unloaded along the travelled way to his dwelling, all for a lawful purpose and in good faith, was not guilty of carrying pistol in violation of Code 1913, c. 148, s. 7, (Sec. 5291.) State *v.* Kinney, 92 W. Va. 272 (1922). Person having pistol in possession for examination only upon invitation of owner who had it in place where he had a right to carry it, State *v.* Underwood, 89 W. Va. 548. Unlicensed carriage in a grip, etc., in the hand or connected with the person is within the meaning of the phrase "about his person" in Penal Code 1913, c. 148, s. 7 (s. 5291). State *v.* Glazovitch, 88 W. Va. 612.

1   SECTION 6. (*Exceptions.*) The provisions of the preceding
2   section shall not apply to marshals, sheriffs, prison or jail
3   wardens or their deputies, policemen or other duly appointed
4   law-enforcement officers, or to members of the army, navy, or
5   marine corps of the United States or of the national guard or
6   organized reserves when on duty, or to the regularly enrolled
7   members of any organization duly authorized to purchase or
8   receive such weapons from the United States or from this
9   state, provided such members are at or are going to or from
10  their places of assembly or target practice, or to officers or
11  employees of the United States duly authorized to carry a con-
12  cealed pistol, or to any person engaged in the business of
13  manufacturing, repairing, or dealing in firearms or the agent
14  or representative of any such person having in his possession,
15  using, or carrying a pistol in the usual or ordinary course of
16  such business, or to any person while carrying a pistol unloaded
17  and in a secure wrapper from the place of purchase to his home
18  or place of business or to a place of repair or back to his home
19  or place of business or in moving from one place of abode or
20  business to another.

*Ariz.* 1928 Rev. Code, s. 4721. Excepts "peace officers." Judges of superior courts are not "peace officers," 28 Ariz. 383, *In re:* Abbey, 31 A. L. R. 63; 50 A. L. R. 1534; 31 A. L. R. 1128; 8 R. C. L. 287.

*Cal.* Act 1923, s. 6, 1; Act 1925, s. 6, 1. Excepts law enforcement officers, military officers and organizations, merchants transporting, guards and messengers of common carriers, banks, members of shooting clubs and licensed hunters and fishermen.

544

*Hawaii.* Act 206, 1927, s. 6. Identical.

*Ill.* Cahill's 1927 Code, s. 141 (4) (7) Act 1925. Citizen not denied right to keep in home or place of business any firearm "reasonably necessary for protection thereof."

*Ia.* Code of Iowa, 1927, s. 12939. Chief of police may make application for permits for members of their respective departments. Owners, managing officers, superintendents of banks, trust companies, mining, transportation, manufacturing and mercantile companies may make application for and in behalf of their employees.

*Ky.* 1930 Carrol's Stat. s. 1313. Excepts sheriffs and other ministerial officers in discharge of their official duties, U. S. mail carriers.

*Mich.* Pub. Acts, 1927, s. 12. Exceptions as to peace officers, member of army, navy or marine corps, or of organization authorized by law to purchase or receive weapons from the United States or from the state, or military organizations when on duty or drill, a person holding a permit to carry issued in another state, the regular transportation of pistols as merchandise, and any person while carrying an unloaded pistol to his home, or place of business to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

*Neb.* Excepts those (see Comp. Stat. 1922, s. 9820) "engaged in lawful business under such circumstances as would justify a prudent person in carrying the weapon."

*N. J.* Ch. 212, Laws of 1928 amending Ch. 321, Laws 1927, s. 11. Excepts in addition to above, fish and game wardens, railway, canal and steamboat police, prosecutor's detectives; constable, railway police, canal police, steamboat police; state police, motor vehicle inspector; officer of society of Prevention of Cruelty to Animals; guards employed by railway express companies, banking or building and loan institutions of state; court attendants; justices of peace; nothing in act construed to person having permit pursuant to provisions of act; public utility corporations carrying explosives; does not require "firearm" to be "wrapped" when carrying to and fro from home, and permits "gun, rifle and knife," without mentioning pistol or revolver, to be carried in woods or fields or upon waters of state for hunting or target practice; does not except from act persons dealing in firearms.

*N. D.* Suppl. Comp. Laws 1913, s. 9803a7. Almost identical with the proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 6. Excepts from s. 5, sheriffs and other "duly appointed peace officers," persons summoned to preserve peace; merchants possessing or transporting unloaded firearms, members of U. S. military forces and national guard on duty; organizations by law authorized to receive such weapons from U. S. or state, military or civil organizations while parading or going to and from respective meeting places; members of shooting clubs, licensed hunters and fishermen.

*R. I.* Ch. 1052, L. 1927, s. 5. Identical with proposed act.

18                                        545

*Tex.* 1928 Comp. Stat. Art. 480 (P. C.) Art. 485 does not apply to peace officers or persons permitted by law to carry arms.

*Utah.* Ch. 31, 1927, s. 29. Excepts deputy game wardens or "other law officers in performance of their duties; also forest officers, grazers of live stock and other persons engaged in destruction of predatory animals, or in their pursuit or calling."

*Va.* Code 1926, s. 2324c. Excepts "officers authorized by law to carry pistol," etc., provided such officer list his pistol with treasurer of county or city.

*W. Va.* Ch. 3, Laws 1925, H. B. 7a. Amending Ch. 48 Code as amended. Excepts person carrying weapon upon own premises, or carrying weapon unloaded from place of purchase to home, or place of repair to home, or from home to place of repair; but this does not apply to place of employment; agents, etc., of express companies (acting as common carriers) having care of valuables, etc., may carry pistols, etc., providing express company executes bond in penalty of $30,000 payable to state to pay damages resulting from accidental and illegal use of weapons by their agents, etc.

*Wis.* Stat. 1927, s. 340.69. Exempts any officer authorized to serve process.

---

*Ala.* Under Acts 1909, p. 258, s. 2 which excepts certain police and safety officers, a police officer is not entitled to carry a concealed weapon. Johnson *v.* State, 16 Ala. Supp. 72 (1917).

*Ariz.* Under Pen. Code, 1913, s. 419, judges of superior court are not "peace officers" within exception in s. 426. *Ex parte* Abbey, 28 Ariz. 383 (1925).

*Ark.* Under C. and M. Digest, s. 2801 permitting a person to carry a weapon on his premises, guards employed by a railroad company to protect employees are liable for carrying concealed weapons although on property belonging to company. Brown *v.* State, 159 Ark. 498 (1923), 31 A. L. R. 1126. Where defendant was deputized by town marshal to assist in preventing an expected disturbance which did not occur did not bring his action in carrying a concealed weapon within the exception of s. 2801, Crawford and Moses Digest, excepting persons summoned to aid officers while actually engaged in guarding prisoners. Allison *v.* State, 161 Ark. 301 (1923).

*Ky.* Person not entitled to carry concealed weapon though the sheriff had nominated him as his deputy and oath administered by clerk of court but he had not been approved by order of court as required by Ky. St. ss. 4141, 4560 (1922). Wells *v.* Commonwealth, 195 Ky. 754 (1922). A game warden, appointed under Ky. St. s. 1925dc6, is an "officer" within the meaning of s. 1313 who is entitled to carry a concealed weapon. Wallace *v.* Commonwealth, 197 Ky. 233 (1923). One appointed by a sheriff special bailiff to execute a bench warrant becomes a ministerial officer and while actually engaged in a *bona fide* effort to execute the process is entitled to carry a concealed weapon. Wells *v.* Commonwealth, 200 Ky. 241 (1923).

546

*Mo.* Under Rev. St. 1909, s. 4496 fact that defendant was postmaster and had government money about his person is no defense for carrying a concealed weapon. State *v.* Jackson, 283 Mo. 18 (1920). While justice of peace has no right to carry concealed weapons as conserver of peace he has no right under s. 4496 to carry a pistol because his life had been threatened a short time before. State *v.* Davis, 284 Mo. 695 (1920). State deputy beverage inspector not an "officer" entitled to carry a concealed weapon within exceptions of Rev. St. 1919, s. 3275. State v. Hogan, 273 S. W. 1060 (1925).

*N. M.* Officers and members of mounted police authorized by laws 1905, c. 9 as amended, are not subject to deadly weapon act. State *v.* Jordi, 24 N. M. 426 (1918). A fugitive from justice is not a "person" travelling within Code 1915, s. 1708, permitting travellers to carry arms. State *v.* Starr, 24 N. M. 180 (1918). One accused of murder not a traveller having reached his objective within meaning of Code 1915, s. 1708. State *v.* Sedillo, 24 N. M. 549 (1918).

*Tex.* See Cassi *v.* State, cited in section 5. Person carrying home pistol received in part payment of debt did not unlawfully carry it provided he did not deviate from trip. Elson *v.* State, 95 Tex. Cr. R. 341 (1923). Judge of city's corporation court authorized to carry pistol when not in actual discharge of duties. Tippet *v.* State, 80 Tex. Cr. R. 373. A citizen specially appointed under Code Cr. Proc. 1911, Arts. 278, 979, to execute a warrant, so far as the particular case is concerned, has the right to carry a pistol. Stephenson *v.* State, 93 Tex. Cr. R. 578 (1923). A driver of an automobile for hire was liable for carrying a pistol, although he had been commissioned as deputy sheriff, where he was not at the time engaged in the actual discharge of any duty as deputy sheriff. Gandara *v.* State, 94 Tex. Cr. R. 535 (1923). Where traveller turns aside from his journey on business disconnected with his journey the fact that he was originally a traveller does not exempt him from punishment for unlawfully carrying a pistol on or about his person. Pecht *v.* State, 82 Tex. Cr. R. 136 (1917). One who drove an automobile to a city 40 miles distant and back on the same day in broad daylight is not a "traveller" within statute permitting traveller to carry pistol. George *v.* State, 90 Tex. Cr. R. 179 (1921). Fact that accused was going from a point in one county to a point 35 miles distant in another county was not exempt as a traveller. Wortham *v.* State, 95 Tex. Cr. R. 135 (1923). Accused who carried pistol in his automobile did not exempt him as a traveller. Welch *v.* State, 97 Tex. Cr. R. 617 (1924).

*W. Va.* The sergeant of a town has the right to carry a pistol within his jurisdiction, without a license, provided his official bond is in the penalty of not less than $3500. Lester *v.* Trail, 85 W. Va. 386.

1    SECTION 7. (*Issue of Licenses to Carry.*) The judge of a
2    court of record, the chief of police of a city or town, the sheriff
3    of a county, or persons authorized by any of them, may upon

547

4   the application of any person issue a license to such person to
5   carry concealed upon his person a pistol or revolver within this
6   state for not more than one year from date of issue, if it
7   appears that the applicant has good reason to fear an injury to
8   his person or property, or has any other proper reason for
9   carrying a pistol or revolver, and that he is a suitable person to
10  be so licensed. The license shall be in triplicate, in form to be
11  prescribed by the Secretary of State, and shall bear the name,
12  address, description [photograph, finger prints], and signa-
13  ture of the licensee and the reason given for desiring a license.
14  The original thereof shall be delivered to the licensee, the
15  duplicate shall within [seven days] be sent by registered mail
16  to the [Secretary of State] and the triplicate shall be preserved
17  for six years by the authority issuing said license. The fee for
18  issuing such license shall be $————.

*Hawaii.* Act 206, 1927, s. 7. Identical. But s. 23, *Ibid.,* provides habitual criminals and anarchists, etc., not entitled to permit.

*Ind.* Ch. 98, 1929, amending s. 7, Act 1924, p. 495. Permit to carry pistol or revolver, concealed or otherwise, may be issued. Application must be signed by judge of circuit court of county where applicant resides; if non-resident, sheriff or chief of police or chief peace officer of town or city ·here applicant resides. If petition is filed in circuit court with 10 days' notice, alleging applicant is not a fit and proper person to have permit, court shall proceed to hear said petition and shall enter judgment accordingly.

*Ia.* Code, 1927, s. 12938-12948, inclusive. Provide for issuing permits to carry concealed weapons, including pistol, revolver and pocket billy. S. 12939. Permits issued only on personal application to chiefs of police, al-though officers of companies may make applications in behalf of employees. S. 12941. Sheriff issues permits to all peace officers who, in course of their duty carry weapons, and to such persons as he judges should be permitted to go armed. Permits not transferable. All permits expire on December 31, following date of issue. Person must carry permit when carrying concealed weapon, and must produce it on request of any peace officer. Sheriff keeps a record of all permits issued.

*Mass.* Ch. 140, 1929 Supp. Cum. Stat. s. 131, 131a. Licenses not issuable to aliens, person convicted of felony, addicted drug fiend, minor under 15 years. All licenses revocable at will of either party by written notice. Issuance of license in violation of this section punishable by 6 months to 2 years. Must have residence or place of business in jurisdiction of application. Permits to purchase for proper purpose may be granted to persons with permits to carry.

548

*Mich.* Pub. Acts, 1927, s. 6, p. 889. The prosecuting attorney and certain other officers constitute boards to issue permits to carry concealed weapons. Person must be over 19 years, have resided in the state six months, must fear injury to his person or property, or has other proper reasons, and must be a suitable person to be so licensed; not issued to a convicted felon or person adjudged insane. A majority of the board must approve the permit. Permits made in triplicate, and third copy filed for six years. Permit is thumb printed by applicant. License must be carried at all times when carrying pistol S. 8. Provides that licenses can be revoked on certificate of magistrate for cause. S. 9. Requires the registration of all pistols in the state. S. 14. Provides that all pistols carried or possessed contrary to the act are declared forfeited to the state. Search warrants may be issued (s. 13) for any pistol unlawfully possessed or carried.

*Mo.* S. 36821g, 1927 Suppl. Rev. Stat. Permits issued by clerk of circuit court upon satisfactory proof of good character, lawful age, and that granting will not endanger public safety. It shall contain description of person and of weapon and be countersigned by permittee. Good for 30 days. Fee is 50 cents. Permit must be returned to circuit clerk within 30 days after its expiration by person receiving it from permittee. Permit shall not be altered or obtained by false representation and shall not be used by another than permittee.

*N. J.* Ch. 321, Laws 1030, s. 2. amending Ch. 521, Laws 1927, s. 9. Judges of any court, except justice of the peace, sheriffs and chiefs of police and secretary of state only have power to issue permit (latter may issue though others may have refused permit) to any person of good character and good repute and not under disability set forth in other sections of act (e. g., s. 7 minor under 18 years, unsound mind, drug addict, conviction. Acts of violence set out in act). Application for permit required in writing, setting forth "name, residence, place of business, age, occupation, sex, color, physical description, citizen or not, convictions, references to two reputable citizens"; delivered to licensing authority with fee of 50 cents (no time for such delivery set); permit unless good cause shown, must be granted in 7 days from receipt of application by licensing authority, it shall be in triplicate, each containing following: "make, model, calibre, serial number, of pistol or revolver," one copy to permittee, one copy to seller, third copy forwarded to Secretary of State, by seller within 3 days.

*N. Y.* Ch. 41, Cahill's Code, s. 1897-10. If licensee applies before date of renewal term of existing license is extended until application disposed of.

*N. D.* Supp. to 1913 Comp. Laws, 9803a8. Almost identical with proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 8. Sheriff or other head of police department of any city, county, etc., to issue permit for one year upon proof of good moral character and that good cause exists. Applications shall state name, occupation, residence, business address and description of applicant; also

549

description of weapon. A record of licenses issued shall be kept, applications shall be upon forms prescribed by attorney-general.

*R. I.* Ch. 1052, L. 1927, s. 6. Practically identical with proposed act. "Licensing authorities" issue licenses. Form of license prescribed by "attorney-general." License shall bear "finger-print" in addition to other information required in proposed act. Applicant must give bond of $300 to keep peace. Permit good for one year.

*Va.* Code 1926 s. 2324a. Application for license must contain name of owner, make and calibre of pistol. License good from January 1 to January 1 following. License tax to be paid to treasurer of county or city; upon paying entitled to license and showing year, city or county, license serial number, number, calibre, make and owner of pistol or revolver. The same shall be recorded by treasurer in a book.

*W. Va.* Ch. 3, Laws 1925-II. Bill s. 7a, amending Ch. 148 Code as amended. Any person may get license to carry pistol, etc., "in any county of state," but applicant must show in addition to requirements under s. 7, that: he is a citizen, a *bona fide* resident of state for 1 year prior to date of application, and of the county 60 days prior thereto. Applicant must pay $20 and file bond in penalty of $3500 to secure payment of damages resulting from accidental, improper, negligent and illegal use of weapon. Such license good for one year. Deputy sheriff and railway police's license is co-extensive with state without special application. Supt. of Public Safety shall be furnished with copy of order of court granting license. Railroad, however, must file bond of $10,000 to cover improper use of fire-arms. In times of public danger person issuing warrants may authorize constable and posse to carry weapons and sheriff may authorize deputy sheriff at such time. It is duty of all persons to report violations of section; any licensing authority for sufficient cause may revoke license.

---

*Ga.* Where defendant in March 1916 procured in W. county a license to carry a pistol pursuant to Acts 1910, p. 134, his act within 3 years thereafter is openly carrying a pistol in T. county would not authorize his conviction of carrying a pistol without a license. Rogeres *v.* State, 19 Ga. App. 751 (1917). While ordinary granting license must keep record of licensee's name, name of maker of pistol, its calibre and number, only name of licensee need appear in license. Donalson *v.* State, 24 Ga. App. 73 (1910). One may only carry identical pistol for which license is given. *Id.* A "pistol toter's license" merely authorizes carrying of pistol openly and not concealed nor to a place of public worship. Sockwell *v.* State, 27 Ga. App. 576.

*Ill.* Under s. 4, Deadly Weapon Act, 1919, providing for issuance of written licenses there is no requirement that the place of residence of the applicant should be within the territorial jurisdiction of the officer issuing the license, aside from the requirement that the applicant be a citizen of the state. People *v.* O'Donnell, 223 Ill App. 161.

550

*N. Y.* A license to carry a revolver not issued by the police commissioner of New York City, under P. L. s. 1897 was illegal and void. People *ex rel.* Misosi *v.* Warden of Brooklyn Prison, 238 N. Y. 585 (1924). Penal Law 33, 1897, 1898 does not require licensee to have license with him at time he is carrying the concealed firearm. People *v.* Stuyvesant. 189 N. Y. S. 232 (1921). Under Penal Law, s. 1897 (4, 9) as amended by L. 1921, c. 297, s. 1, a permit issued by a justice of the peace is void. People *v.* Tarantolo, 194 N. Y. Supp. 672 (1922). Permit must be issued in county where person resides. *Id.* New York City police commissioner has exclusive authority to issue permits to residents of New York City under P. L. S. 1897 (7-11), as amended by Laws 1921, c. 297. People *v.* Cafoni, 198 N. Y. S. 331 (1922).

*W. Va.* Code Supp. 1918, s. 5233, and Code 1913, s. 5291, Code, c. 145, s. 31, and c. 148, s. 7 extends condition of bond and liabilities of railway conductor to room in boarding house or hotel where he spends night while absent from his home in discharge of his duties as railway conductor. State *v.* Hazlett, 94 W. Va. 436.

1    SECTION 8. (*Delivery to Minors and Others Forbidden.*)
2    No person shall deliver a pistol to any person under the age
3    of eighteen or to one who he has reasonable cause to believe has
4    been convicted of a crime of violence, or is a drug addict, an
5    habitual drunkard, or of unsound mind.

*Ala.* Code 1928, s. 4046. Person selling pistol, etc., to minor shall be fined $50-$500 on conviction.

*Ariz.* 1928 Rev. Stat. s. 4700. Selling firearms to minor under 14 years is misdemeanor.

*Ga.* Code 1926, s. 350 (s. 344), Acts 1876, p. 102. Person knowingly selling or furnishing to minor guilty of misdemeanor except where done in circumstances justifying use in defense of life, or property.

*Hawaii.* Act 206, 1927. Cannot "sell, barter, hire lend," or give to person under 18 years of age.

*Ill.* Cahill's 1927 Code, s. 141 (3) Act 1925. No one may sell or give to aliens or minor under 18 years any firearm that may be concealed. Fine not more than $300 or not more than six months or both.

*Ind.* Acts 1913, p. 47. Unlawful to give or sell pistol or any dangerous weapon to an intoxicated person or one in habit of becoming intoxicated.

*Ia.* Code, 1927 s. 12958. Recites that no person shall sell, present or give any pistol, revolver or toy pistol to any minor. S. 12936. Recites that no person under 14 allowed to carry firearms of any description.

*Ky.* 1930 Carroll's Ky. Stat. s. 1309. Selling to minor is a high misdemeanor and person guilty shall be disfranchised and shall operate to exclude such person from right of suffrage for 2 years. *Ibid.*, s. 1239a. Giving deadly firearms to prisoners is a felony.

551

*Mass.* Ch. 140, 1929 Supp. Cum. Stat. s. 130, 131. Minors, 15 years or over, without license, are also prohibited. Penalty is now **$100-$500.**

*Mich.* Pub. Acts 1927, s. 2. No license granted to any person under 19 years of age.

*Minn.* Mason's Statutes, 1927, s. 10256. Any one who "in any city in this state, shall sell, give, loan or in any wise furnish any firearm or ammunition to a minor under the age of 18, without the written consent of his parents or guardian, or of a police officer or magistrate of such city, is guilty of a misdemeanor," etc.

*Nev.* Ch. 47, 1925, s. 2. Aliens and persons convicted of felony shall not have in possession or under control pistol, revolver, or other firearm capable of being concealed on person but this does not apply to "sheriffs, constables, marshals, policemen, whether active or honorably retired, or other duly appointed police officer, nor any person summoned by such officer to assist in making arrest or preserving peace, while so summoned, nor to members of the army, navy and marine corps of the United States when on duty."

*N. J.* Ch. 321, Laws 1927, s. 7. Does not include drunkards.

*N. D.* Supp. to Compiled Laws 1913, s. 9803a9. Practically identical with proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 10. Sales to aliens and persons convicted of a felony and to minors under 18 years of age forbidden.

*Tex.* 1928 Comp. Stat., Art. 489. Sale to any minor without written consent of person in *loco parentis* unlawful. $25-$200 or 10-30 days or both.

*W. Va.* Ch. 3, Laws 1925, s. 7b. Amending Ch. 148 Code as amended. Aliens not permitted firearms.

*Wis.* St. 1927, s. 340.69. Provides that "any minor or person in state of intoxication who shall go armed with any pistol or revolver, or any dealer or other person who shall sell, loan or give any pistol or revolver to any minor" shall be punished, etc. "It shall be the duty of all sheriffs, constables and other public police officers to take from any minor any pistol or revolver found in his possession," etc.

---

*N. C.* Regulation prohibiting carrying of deadly weapon when intoxicated, or to a church, polling place, or public assembly, or in a manner to inspire terror would be constitutional. State *v.* Kernan, 181 N. C. 574.

*Penn.* Evidence that a boy, while illegally purchasing a gun, wore short trousers and a blouse waist is admissible in civil suit to recover damages to show defendant knowingly sold gun to a minor less than 16 years. McMillian *v.* Steel, 275 Pa. 584 (1923).

1    Section 9. (*Sales Regulated.*)  No seller shall deliver a
2  pistol to the purchaser thereof until forty-eight hours shall
3  have elapsed from the time of the application for the purchase
4  thereof, and, when delivered, said pistol shall be securely
5  wrapped and shall be unloaded. At the time of applying for

552

6   the purchase of a pistol the purchaser shall sign in triplicate
7   and deliver to the seller a statement containing his full name,
8   address, occupation, color, place of birth, the date and hour of
9   application, the caliber, make, model, and manufacturer's
10  number of the pistol to be purchased and a statement that he
11  has never been convicted in this state or elsewhere of a crime
12  of violence. The seller shall within six hours after such appli-
13  cation sign and attach his address and forward by registered
14  mail one copy of such statement to the chief of police of the
15  city or town or the sheriff of the county of which the seller is
16  a resident; the duplicate duly signed by the seller shall within
17  seven days be sent by him with his address to the [Secretary
18  of State]; the triplicate he shall retain for six years. This
19  section shall not apply to sales, at wholesale.

*Ala.* Code 1928, s. 5442. Dealers shall close shops during riot and not sell or otherwise transfer arms, etc. Any violating is guilty of high mis-demeanor. (207 Ala. 569.) *Ibid.,* 3. 5446. Commanding officer in command of state troops aiding in enforcement of laws has power to order firearms dealer's shops closed.

*Ariz.* 1928 Rev. Stat. s. 4710. Selling to Indians a misdemeanor.

*Hawaii.* Act 206, 1927, s. 9. Purchaser must sign statement giving in addi-tion to information required by proposed act also race, color, place of birth, and fact that he has never been convicted of crime of violence. Pistol shall not be delivered on same day of application. Practically indentical. Act follows proposed act as set out in 2nd report of Committee on Uniform Firearms' Act dated September 25-31, 1925. Act 206, 1927, s. 18 amending s. 2136, 1925 Rev. Laws. All others shall, unless attended to by regular dealers file report of pistol within two weeks from acquiring of possession, giving usual description. Act 206, 1927, s. 21 amending s. 2139, 1925 Rev. Laws. Dealers shall furnish to sheriff on January 1 and July 1 of each year list of firearms handled by him during preceding six months. It is duty of sheriff to inspect dealer's premises to verify accuracy of reports. Act 206, 1927, s. 22, amending s. 2140, 1925 Rev. Laws. Dealer shall make report of all sales within 7 days. It is in conformity with s. 9 and 11 of Small Acts cited above and below. According to s. 23 must forward copy of purchaser's permit to sheriff and retain other copy for 60 days. Act 206, 1927, s. 23, amending s. 2141, 1925 Rev. Laws. Dealer or any one else shall not deliver firearm to a person unless said person presents a permit in duplicate which must be pre-sented within 30 days from date of issue.

*Ill.* Cahill's 1927 Code, s. 141 (2) Act 1925. Dealers in firearms which may be concealed upon person shall keep a register of all sales or gifts. Form of

553

register prescribed by law; the usual information required. Register must be open for inspection on demand by police officer, etc.

*Ia*. Code 1927, s. 12953. Seller must report sale within 24 hours to county recorder with age, occupation, name and residence of purchaser, with description of the weapon. Violation a misdemeanor. Unlawful to deal in firearms without reporting transactions within 24 hours with full information as to sale, to the recorder, who shall make a permanent record. Punishment specified for a violation, is a misdemeanor, and on being convicted of second offense permit is revoked.

*Mich.* Comp. Laws Mich. ss. 7164 (70), 7164 (74). Makes it unlawful to sell unless buyer has a license. Pub. Acts 1927, No. 374, s. 2, requires a license to purchase. Also provides that any person who shall sell to another any pistol without complying with the requirements shall be guilty of a misdemeanor. Seller endorses full required information on back of license and within 48 hours mails license to commissioner of safety. Section does not apply to pistols sold at wholesale nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

*Minn.* Mason's Statutes, 1927, s. 10255. Makes it unlawful to manufacture, sell, keep or carry deadly weapons. The statute is apparently directed against the carrying of a concealed weapon by a person with intent to use it harmfully against others, although the particular ones are not then identified in the mind of the accused. 163 Minn. 317; 203 Minn. 989.

*Miss.* Code 1928. s. 874. Every dealer, pawnbroker, merchant selling pistols, etc., shall keep record showing description of weapons and cartridges, name of purchaser and date of sale, which must be open to public inspection at any time.

*Mo.* S. 3682g and g2, 1927 Supp. Rev. Stat. (Laws 1921). All pistols or other firearms in possession of "wholesaler or dealer" must have name of maker and model and serial number of firearm stamped thereon, and no one can buy or otherwise procure possession of a weapon that may be concealed unless it is so stamped. He must keep record of sale which shall be open to inspection at all times by peace officers. S. 3682g1 (*Ibid*). Purchaser must first deliver permit to purchase to seller within 30 days from date of its issuance. S. 3682g3 (*Ibid*). Dealer or manufacturer may ship into other states such weapons even though not stamped. Act 1925, s. 1 amending Act 1023. First violation is now a felony.

*N. J.* Ch. 321, Laws 1927, s. 6. Seven days must elapse before pistol or revolver is delivered to purchaser. Purchaser must have permit to carry or purchase; pistol must be unloaded and securely wrapped.

*N. D.* Supp. to 1913 Comp. Laws, s. 9803a10. Almost identical with proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 9. "Every person" engaged in "transferring," a "firearm" capable of being concealed upon the person shall keep a record of sales, with data as to sale and description of firearm. Purchaser and salesman must sign their names to the record and the purchaser, affix

554

his record, in duplicate. The duplicate sheet shall be mailed the same day to chief police officer of town or county wherein sale is made. Section does not apply to wholesale and retail dealers in regular or ordinary transportation of unloaded firearms as merchandise. S. 10. Firearm shall not be delivered to purchaser upon day of application; when delivered it must be wrapped and unloaded. Firearms cannot be sold or otherwise transferred if neither party to transaction has no dealer's license unless the transferee is known to the other party.

*R. I.* Ch. 1421, L. 1929, s. 1. Pistol or other firearm which may be concealed on person shall be sold, or otherwise disposed of, to licensee. Violation is a misdemeanor. S. 2. Anyone selling pistol shall keep register in which will be kept usual data of sale. Purchaser required to produce license. Seller must record in register date and number of permit and name of licensing authority. Violation is a misdemeanor. Register shall be open at reasonable hours for inspection. Section does not apply to wholesale dealers.

*Tex.* 1928 Comp. Stat. Art. 5835. Military officers aiding in enforcement of law pursuant to civil authority may order closed any place where arms are sold.

*Va.* Code 1926, s. 2324b. Dealer shall keep record of sales; all repairers shall report to treasurer once a month all pistols in their possession for such purpose. S. 2324c. Dealers cannot sell ammunition for pistols, etc., unless purchaser displays license card for current year.

*W. Va.* Ch. 3, L. 1925, s. 7b. Amending Ch. 148 Code as amended. Dealers licensed shall take name, address, age and general appearance of purchaser, as well as maker of gun, manufacturer's serial number and caliber and report it in writing to Supt. of Safety. No one can sell, rent, give or lend to "unnaturalized person."

---

*Ill.* State police regulation which prohibits sale of deadly weapons which can be carried about person is constitutional. Biffer *v.* Chicago, 278 Ill. 562 (1917).

*Ia.* Exception in Code Supp. 1913, s. 4775-12a, that the act shall not affect wholesale dealers or jobbers refers only to section 4775-9a, prohibiting dealers from selling, etc., concealed weapons without first procuring permit, and not to section 4775-1a as to carrying weapons. State *v.* Cochran, 179 Iowa, 1304 (1917).

1    Section 10. (*Dealers to be Licensed.*) No retail dealer
2   shall sell or otherwise transfer, or expose for sale or transfer,
3   or have in his possession with intent to sell, or otherwise trans-
4   fer, any pistol without being licensed as hereinafter provided.

*Ala.* Code 1928, ss. 2152 (1), 2164. Any city may fix and collect licenses of dealers of firearms and to regulate, restrain, or prohibit their sales when

public good demands it and may or may not by proclamation cause place of sale to be closed until next meeting of town council.

*Ga.* Code 1930, s. 993 (257). Dealer must pay license tax. $50 for towns 10,000 people or less; $100 for towns over 10,000 population.

*Hawaii.* Act 206, 1927, s. 10. Identical with proposed act.

*Ia.* Code, 1927, s. 12951. Unlawful to deal in firearms without license. Failure to make reports required by the act is a misdemeanor, "and on being convicted of a second offense his permit shall be revoked." S. 12954.

*Ky.* 1930 Carrol's Stat. 4224. License tax to sell pistols is $100.

*Mass.* Ch. 140, 1927 Suppl. Cum. Stat. s. 128. Punishment now 6 months to 2 years.

*Miss.* Code 1927, s. 7728. Dealer in cartridges shall pay privilege tax of $10-$50.

*N. J.* Ch. 321, Laws 1927, s. 6. Includes in addition "any firearms" but only prohibits sales and possession with intent to sell.

*N. C.* Ch. 101, L. 1925, s. 72. Each dealer shall pay license tax of $25 annually, a license must be procured for each separate place of business.

*N. D.* Suppl. to 1913 Comp. Laws, s. 9803a11. Similar to proposed section.

*Tex.* 1928 Comp. Stat. Art. 7008. Dealers in pistols shall pay an occupation tax of 50% on gross receipts on all firearms and make quarterly report.

*Va.* Code, s. 194, Appendix I, s. 194. Dealers must pay license tax of $20 each year to sell.

1    Section 11. (*Dealers' Licenses, by Whom Granted and*
2    *Conditions Thereof.*) [The duly constituted licensing authori-
3    ties of any city, town, or political subdivision of this state may
4    grant licenses in forms prescribed by the [Secretary of State]]
5    effective for not more than one year from date of issue, permit-
6    ting the licensee to sell pistols at retail within this state subject
7    to the following conditions in addition to those specified in
8    Section 9 hereof, for breach of any of which the license shall
9    be forfeited and the licensee subject to punishment as provided
10   in this act:

11    1. The business shall be carried on only in the building
12   designated in the license.

13    2. The license or a copy thereof, certified by the issuing
14   authority, shall be displayed on the premises where it can
15   easily be read.

16    3. No pistol shall be sold (a) in violation of any provision of
17   this act, nor (b) shall a pistol be sold under any circumstances
18   unless the purchaser is personally known to the seller or shall
19   present clear evidence of his identity.

556

20  4. A true record in triplicate shall be made of every pistol
21  sold, in a book kept for the purpose, the form of which may be
22  prescribed by the [Secretary of State] and shall be personally
23  signed by the purchaser and by the person effecting the sale,
24  each in the presence of the other, and shall contain the date of
25  sale, the caliber, make, model, and manufacturer's number
26  of the weapon, the name, address, occupation, color, and place
27  of birth of the purchaser, and a statement signed by the pur-
28  chaser that he has never been convicted in this state or else-
29  where of a crime of violence. One copy shall within six hours
30  be sent by registered mail to the chief of police of the city or
31  town or the sheriff of the county of which the dealer is a resi-
32  dent; the duplicate the dealer shall within seven days send to
33  the [Secretary of State]; the triplicate the dealer shall retain
34  for six years.

35  5. No pistol or imitation thereof or placard advertising the
36  sale thereof shall be displayed in any part of any premises
37  where it can readily be seen from the outside.

38  The fee for issuing said license shall be $———.

*Ariz.* 1928 Rev. Code s. 4726. Displaying rudely a deadly weapon is a misdemeanor.

*Hawaii.* Act 206, 1927, s. 11. Practically identical with s. 11 of Uniform Act as set out in 2d report of committee on Uniform Firearms' Act, dated August 8-15, 1929.

*Ia.* Code 1927, s. 12957. Prohibits display "in any window facing a public street or alley any pistol," etc., "except war relics." Made a mis-demeanor to violate same. S. 12953. Seller must make full report of trans-action within 24 hours. Violation misdemeanor.

*Mass.* Ch. 140, 1927, 1929 Supp. Cum. Stat. ss. 122, 122a, 123, 125, 127. Two additional clauses: (8) that pistol or revolver or machine guns shall not be sold, rented, leased to person not having permit, (9) licensed vendor shall on permit date as to sale and transmit to commissioner of public safety. Eigh' clause is now tenth clause. If license declared forfeited licensee shall be disqualified for one year to receive another license. License may be transferred from one location in the town to another.

*Mich.* Pub. Acts, 1927 s. 15. It is unlawful "to sell or deliver, or offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, magazine, newspaper or other form of written or printed matter offering to sell or deliver," to any person within the state from any place without the state any pistol or weapon. Does not apply to sales at wholesale or to sales by governmental agencies. Comp. Laws of Mich.

557

s. 7164 (70) and 7164 (74). Makes it unlawful to sell unless seller sells to a person having a license to purchase.

Pub. Acts, 1927, No. 374, s. 2. Provides that there must be a license to purchase. Makes it a misdemeanor to sell to any person who has not a license to purchase. Seller must endorse full information of the transaction on the back of the license to purchase and within 48 hours mail it to the commissioner of safety. Section does not apply to wholesale transactions or to the exchange of pistols kept solely as relics, souvenirs or curios.

*Minn.* Mason's Stats. 1927, s. 10255. Makes it unlawful to manufacture, sell, keep or carry deadly weapons. The statute is primarily directed against the carrying of concealed weapons by a person with intent to use same wrongfully against other persons, although the particular ones are not identified in the mind of the accused.

*N. J.* Ch. 321, Laws 1927, s. 6. Common Pleas judge of any court is licensing authority. Permit only good within town, city, or political subdivision. Purchaser need not sign; no time stipulated as to when seller should sign; information inscribed is date of sale, caliber, make, model, manufacturer's number of weapon, name, address and permit number of purchaser; only one copy necessary; no copies to anyone.

*N. D.* Supp. to 1913 Comp. Laws, s. 9083a10. Resembles proposed section. S. 9803a12. Similar to proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 11. "Duly constituted authorities" may grant licenses, good for 1 year, to sell at retail firearms capable of being concealed provided (1) business carried on in building designated in license, (2) license or copy displayed on premises, (3) pistol or revolver not delivered on day of purchase, and when delivered shall be unloaded and wrapped; (4) no advertising displayed.

*R. I.* Ch. 1380, L. 1929, enacted April 19, 1929. Pistols, etc., shall not be displayed in places of business so as to be observed from street, exception as to sporting goods houses that obtain permit. Ch. 1421, L. 1929, s. 2, enacted April 27, 1929. Practically identical with sub-section 5 of proposed act.

*Tex.* 1928 Comp. Stat. Art. 474. Person displaying pistol shall be fined not exceeding $100.

*Va.* Code, Appendix I, 1928, s. 194. License tax fee is $20. License expires on Dec. 31st, each year. License not pronted.

*W. Va.* Ch. 3, Laws 1925, s. 7b. Amending Ch. 148 Code as amended. "Pistol, etc." not permitted to be placed on display for rent or sale.

1     SECTION 12. (*Certain Transfers Forbidden.*) No person
2  shall make any loan secured by mortgage, deposit, or pledge of
3  a pistol; nor shall any person lend or give a pistol to another
4  or otherwise deliver a pistol save as provided in this act.

*Mass.* Ch. 140, 1929 Supp. Cum. Stat. s. 131B. Practically identical; includes machine guns.

*Mich.* Pub. Acts, 1927, s. 10. "No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor," etc.

*N. J.* Ch. 321, Laws 1927, s. 8. Identical except does not provide for loans or gifts.

1    SECTION 13. (*False Information Forbidden.*) No person
2    shall, in purchasing or otherwise securing delivery of a pistol
3    or in applying for a license to carry the same, give false infor-
4    mation or offer false evidence of his identity.

*Hawaii.* Act 206, 1927, s. 12. Identical with proposed section.

*Ia.* Code 1927, s. 12955. Purchasing a pistol under a fictitious name made a misdemeanor.

*Mass.* Ch. 140, 1927 Suppl. Cum. Stat. s. 129. Word "renting" substituted for word "exchanging."

*N. J.* Ch. 321, Laws 1927, s. 12. Practically identical with proposed section.

*N. D.* Supp. to 1913 Comp. Laws, s. 9083a13. Similar to proposed section.

*Ore.* Ch. 3, 1921-27, s. 9. Person signing fictitious name or address is guilty of misdemeanor.

*R. I.* Ch. 1052, L. 1927, s. 11. Identical with proposed section.

1    SECTION 14. (*Alteration of Identifying Marks Prohibited.*)
2    No person shall change, alter, remove, or obliterate the name
3    of the maker, model, manufacturer's number, or other mark
4    of identification on any pistol. Possession of any pistol upon
5    which any such mark shall have been changed, altered, re-
6    moved, or obliterated, shall be *prima facie* evidence that the
7    possessor has changed, altered, removed or obliterated the
8    same.

*Hawaii.* Act 206, 1927, s. 13. Identical with proposed section.

*Mich.* Pub. Acts 1927, s. 11. "No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol. Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same." Punishment $500 fine, or 2 years imprisonment, or both.

*N. J.* Ch. 321, Laws 1927, s. 15. Identical with proposed act, except it does not include *prima facie* presumption clause.

*N. D.* Supp. to 1913 Comp. Laws, s. 9083a14. Similar to proposed section. The N. D. act makes it "presumptive evidence," while in the proposed act it is made "*prima facie* evidence."

*Ore.* Ch. 3, 1921-27, s. 13. Practically identical with proposed section.

*R. I.* Ch. 1052, L. 1927, s. 12. Practically identical with proposed section, except for use of "firearm" instead of "pistol."

1     SECTION 15. (*Existing Licenses Revoked.*) All licenses
2   heretofore issued within this state permitting the carrying of
3   pistols or revolvers concealed upon the person shall expire at
4   midnight of the ——— day of ———, 19—.

*Hawaii.* Act 206, 1927, s. 14. Practically identical with proposed section.

*Mich.* Pub. Acts 1927, No. 372, s. 17. Has repealing clause repealing former acts.

*N. J.* Ch. 321, Laws 1927, s. 19. Ninety days before expiration of existing licenses.

*N. D.* Supp. to 1913 Comp. Laws, s. 9803a15. Identical with proposed section except that of brackets.

*Ore.* Ch. 3, 1921-27, s. 14. Practically identical with proposed section.

1     SECTION 16. (*Exceptions.*) This act shall not apply to
2   antique pistols unsuitable for use as firearms and possessed as
3   curiosities or ornaments.

*Hawaii.* Act 206, 1927, s. 15. Practically identical with proposed section but need not be possessed as curiosities or ornaments.

*Mass.* Ch. 140, 1929, Supp. Cum. Stat., s. 121. Contains a similar provision.

*Mich.* Pub. Acts, 1927, s. 2. Excepts pistols kept solely as relics, souvenirs or curios.

*N. J.* Ch. 321, Laws 1927, s. 18. Identical with proposed section.

*N. D.* Supp. to 1913 Comp. Laws, s. 9083a16. Similar to proposed section.

*Ore.* Ch. 3, 1921-27 Supp. s. 15. Practically identical. "Incapable" used instead of "unsuitable."

*R. I.* Ch. 1052, L. 1927, s. 13. Practically identical with proposed section.

*Va.* Code 1926, s. 2324c. Excepts "obsolete" pistols kept as souvenir memento, or relic insofar as tax required though it must be registered.

1     SECTION 17. (*Penalties.*) Any violation of any provision of
2   this act shall constitute an offense punishable by a fine of not
3   more than [$———] or imprisonment for not more than
4   [———] or both, or by imprisonment in the penitentiary
5   for not less than [———], nor more than [———].

*Hawaii.* Act 206, L. 1927, s. 17, s. 24, 26. Penalty provisions.

*Ill.* Cahill's 1927 Code, s. 141 (6), Act 1925. Carrying concealed weapons within five years after a conviction for murder, robbery, burglary or assault with intent to kill is a felony. Punishment 1-10 years.

*Mich.* Pub. Acts, Session Laws, 1927, No. 372. Provides penalties in different sections.

*Neb.* Ch. 40, 1925, amending s. 4305, Comp. Stat. 1922. City council has power to prevent and punish carrying of concealed weapons.

*Nev.* Ch. 47, 1925, s. 2. Person violating section guilty of felony and punishable by one to five years in state prison. Ch. 31, 1927, s. 29. Person violating section guilty of misdemeanor.

*N. J.* Ch. 321, Laws 1927. Penalty provisions given in each appropriate section.

*N. C.* Ch. 51, Laws 1920, repeals Ch. 57, Laws 1027, amending s. 4410 of Com. Stat.

*N. D.* Supp. to 1913 Comp Laws. Penalties provided in various sections of act.

*Ore.* Ch. 3, 1921-27. Penalty provisions in various sections.

*R. I.* Ch. 1052, L. 1927, s. 14, 18. Penalty provisions. Ch. 1421, L. 1927, s. 3. Penalty provisions.

*Va.* Code 1926, s. 2324d. Violation of act is misdemeanor, liable to fine of $25-$50 or 30-60 days on state road force, or both.

*W. Va.* Ch. 3, Laws 1925, s. 7a amending Ch. 148 of Code as amended. Carrying pistol, etc., is a misdemeanor; for second offense penalty of one to five years; except infants under 18 years; upon second conviction at discretion of court, may be committed to industrial home.

---

*Ia.* Sentence for carrying concealed weapons for not exceeding two years should be reduced to 30 days in county jail where accused was 18 years of age. State *v.* Powers, 180 Iowa 693 (1917).

*Ky.* Held error to inflict working penalty on one convicted of carrying concealed deadly weapon, punishment for which was fine and disfranchisement. Marrs *vs.* Comm. 205 Ky. 18 (1924).

*La.* Act No. 43 of 1906 does not authorize both fine and imprisonment. State *v.* Daniel, 141 La. 423 (1917).

*Neb.* Sentence for carrying concealed weapons of not less than one year and not more than two years not excessive. 110 Neb. 759 (1923).

*N. Y.* Sentence from one year to a year and four months for carrying revolver is excessive. People *v.* Miles, 158 N. Y. S. 819 (1916).

*N. C.* Carrying concealed weapon for purpose of self-defense is no extenuation of the crime. State *v.* Woodlief, 172 N. C. 885 (1916). Discretion not abused by court in sentencing defendant to imprisonment for four months for carrying pistol concealed. State *v.* Mangum, 187 N. C. 477.

1  SECTION 18. (*Constitutionality.*) If any part of this act is
2  for any reason declared void, such invalidity shall not affect the
3  validity of the remaining portions of this act.

561

*Hawaii.* Act 206, 1927, s. 28. Identical with proposed section.

*Ind.* Acts 1925, s. 19. Practically identical with proposed section.

*Ore.* Ch. 3, 1921-27, s. 16. Practically identical with proposed section.

1     SECTION 19.  (*Short Title.*) This act may be cited as " Uni-
2 form Firearms Act."

*Hawaii.* Act 206, 1927, s. 29. First 17 sections designated "Small Arms Act."

*N. J.* Ch. 321, Laws 1927, Supplement to " An Act for the punishment of Crimes."

*N. C.* Ch. 57, Laws 1923, all section amending s. 4410 of consolidated statutes relating to concealed weapons, repealed by Ch. 51, Laws 1929, s. one and two. Merely covers punishment of crime.

*R. I.* Ch. 1052, Laws 1927, s. 20. Called " Firearms Act."

1     SECTION 20.  (*Uniform Interpretation.*) This act shall be
2 so interpreted and construed as to effectuate its general purpose
3 to make uniform the law of those states which enact it.

1     SECTION 21.  (*Effective Date.*) This act shall take effect on
2 the ———— day of ————, 19—.

*R. I.* Ch. 1052, L. 1927, s. 20. Act goes into effect upon passage.

1     SECTION 22.  (*Certain Acts Repealed.*) All laws or parts of
2 laws inconsistent herewith are hereby repealed.

*Hawaii.* Act 206, 1927, s. 16. Practically identical with proposed section. S. 30. Provisions of Ch. 128, 1925 Rev. Laws not repealed except where plainly inconsistent.

*Mich.* Pub. Acts 1927, s. 17. Has a repealing clause repealing 1925 and several other acts of that state.

*N. J.* Ch. 321, Laws 1927, s. 20. Identical with proposed section, except " acts" used instead of " laws."

*N. D.* Supp. to 1913 Comp. Laws of N. D., s. 9803a17. Identical with proposed section.

*Ore.* Ch. 3, 1921-27, Supp. s. 17. Practically identical with proposed section.

*W. Va.* Ch. 3, L. 1925, ss: 7a, 7b, amending Ch. 148 Code as amended. Identical with proposed section.

NOTE BY SECRETARY: The foregoing third revised draft of the Uniform Firearms Act was considered by the National Conference at its meeting in Chicago, August 11-16, 1930; some changes were made in it and the draft, as so changed, was then adopted and approved by the Conference as a uniform act. The act as so adopted and an explanatory statement of the act follow:

562

# THE UNIFORM FIRE ARMS ACT

AN ACT REGULATING THE SALE, TRANSFER AND POSSESSION OF
CERTAIN FIREARMS, PRESCRIBING PENALTIES AND RULES OF
EVIDENCE, AND TO MAKE UNIFORM THE LAW WITH REFER-
ENCE THERETO.

1     SECTION 1. *Definitions.* "Pistol," as used in this act, means
2 any firearm with barrel less than twelve inches in length.
3     "Crime of Violence," as used in this act, means any of the
4 following crimes or an attempt to commit any of the same,
5 namely, murder, manslaughter, rape, mayhem, assault to do
6 great bodily harm, robbery, burglary [housebreaking, breaking
7 and entering, kidnapping and larceny].[1]
8     "Person," as used in this act, includes firm, partnership,
9 association or corporation.

1     SECTION 2. *Committing Crime When Armed.* If any person
2 shall commit or attempt to commit a crime of violence when
3 armed with a pistol, he may in addition to the punishment
4 provided for the crime, be punished also as provided by this act.

1     SECTION 3. *Being Armed Prima Facie Evidence of Intent.*
2 In the trial of a person for committing or attempting to
3 commit a crime of violence, the fact that he was armed with
4 a pistol and had no license to carry the same shall be *prima*
5 *facie* evidence of his intention to commit said crime of violence.

1     SECTION 4. *Certain Persons Forbidden to Possess Arms.*
2 No person who has been convicted in this state or elsewhere
3 of a crime of violence, shall own a pistol or have one in his
4 possession or under his control.

1     SECTION 5. *Carrying Pistol.* No person shall carry a pistol
2 in any vehicle or concealed on or about his person, except in
3 his place of abode or fixed place of business, without a license
4 therefor as hereinafter provided.

[1] Crimes here enumerated to be modified to suit local definitions.

Section 6. *Exception.* The provisions of the preceding
section shall not apply to marshals, sheriffs, prison or jail
wardens or their deputies, policemen or other law-enforcement
officers, or to members of the army, navy, or marine corps of
the United States or of the national guard or organized re-
serves when on duty, or to the regularly enrolled members of
any organization duly authorized to purchase or receive such
weapons from the United States or from this state, provided
such members are 'at or are going to or from their places of
assembly or target practice, or to officers or employees of the
United States duly authorized to carry a concealed pistol, or
to any person engaged in the business of manufacturing, re-
pairing, or dealing in firearms or the agent or representative
of any such person having in his possession, using, or carrying
a pistol in the usual or ordinary course of such business, or to
any person while carrying a pistol unloaded and in a secure
wrapper from the place of purchase to his home or place of
business or to a place of repair or back to his home or place of
business or in moving from one place of abode or business to
another.

Section 7. *Issue of Licenses to Carry.* The judge of a
court of record, the chief of police of a municipality, the
sheriff of a county, may upon the application of any person
issue a license to such person to carry a pistol in a vehicle or
concealed on or about his person within this state for not more
than one year from date of issue, if it appears that the appli-
cant has good reason to fear an injury to his person or
property, or has any other proper reason for carrying a pistol,
and that he is a suitable person to be so licensed. The license
shall be in triplicate, in form to be prescribed by the Secretary
·of State, and shall bear the name, address, description, and
signature of the licensee and the reason given for desiring a
license. The original thereof shall be delivered to the licensee,
the duplicate shall within [seven days] be sent by registered
mail to the [Secretary of State] and the triplicate shall be
preserved for six years, by the authority issuing said license.
The fee for issuing such license shall be $...... which fee
shall be paid into the [.................... Treasury].

564

SECTION 8. *Delivery to Minors and Others Forbidden.* No person shall deliver a pistol to any person under the age of eighteen or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind.

SECTION 9. *Sales Regulated.* No seller shall deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in this state or elsewhere of a crime of violence. The seller shall within six hours after such application, sign and attach his address and forward by registered mail one copy of such statement to the chief of police of the municipality or the sheriff of the county of which the seller is a resident; the duplicate duly signed by the seller shall within seven days be sent by him with his address to the [Secretary of State]; the triplicate he shall retain for six years. This section shall not apply to sales at wholesale.

SECTION 10. *Dealers to be Licensed.* No retail dealer shall sell or otherwise transfer, or expose for sale or transfer, or have in his possession with intent to sell, or otherwise transfer, any pistol without being licensed as hereinafter provided.

SECTION 11. *Dealers' Licenses, by Whom Granted and Conditions Thereof.* The duly constituted licensing authorities of any city, town, or political subdivision of this state may grant licenses in forms prescribed by the [Secretary of State] effective for not more than one year from date of issue, permitting the licensee to sell pistols at retail within this state subject to the following conditions in addition to those specified in Section 9 hereof, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in this act.

565

10  1. The business shall be carried on only in the building
11  designated in the license.

12  2. The license or a copy thereof, certified by the issuing
13  authority, shall be displayed on the premises where it can
14  easily be read.

15  3. No pistol shall be sold (*a*) in violation of any provision
16  of this act, nor (*b*) shall a pistol be sold under any circum-
17  stances unless the purchaser is personally known to the seller
18  or shall present clear evidence of his identity.

19  4. A true record in triplicate shall be made of every pistol
20  sold, in a book kept for the purpose, the form of which may
21  be prescribed by the [Secretary of State] and shall be per-
22  sonally signed by the purchaser and by the person effecting the
23  sale, each in the presence of the other, and shall contain the
24  date of sale, the caliber, make, model and manufacturer's
25  number of the weapon, the name, address, occupation, color,
26  and place of birth of the purchaser, and a statement signed by
27  the purchaser that he has never been convicted in this state or
28  elsewhere of a crime of violence. One copy shall within six
29  hours be sent by registered mail to the chief of police of the
30  municipality or the sheriff of the county of which the dealer
31  is a resident; the duplicate the dealer shall within seven days
32  send to the [Secretary of State]; the triplicate the dealer
33  shall retain for six years.

34  5. No pistol or imitation thereof or placard advertising the
35  sale thereof shall be displayed in any part of any premises
36  where it can readily be seen from the outside.

37  The fee for issuing said license shall be $.......... which
38  fee shall be paid into the [.................... Treasury].

1  SECTION 12. *Certain Transfers Forbidden.* No person
2  shall make any loan secured by a mortgage, deposit, or pledge
3  of a pistol; nor shall any person lend or give a pistol to
4  another or otherwise deliver a pistol contrary to the provisions
5  of this act.

1  SECTION 13. *False Information Forbidden.* No person shall,
2  in purchasing or otherwise securing delivery of a pistol or in
3  applying for a license to carry the same, give false information
4  or offer false evidence of his identity.

566

1    SECTION 14. *Alteration of Identifying Marks Prohibited.*
2 No person shall change, alter, remove, or obliterate the name
3 of the maker, model, manufacturer's number, or other mark
4 of identification on any pistol. Possession of any pistol upon
5 which any such mark shall have been changed, altered, re-
6 moved, or obliterated, shall be *prima facie* evidence that the
7 possessor has changed, altered, removed or obliterated the same.

1    SECTION 15. *Existing Licenses Revoked.* All licenses here-
2 tofore issued within this state permitting the carrying of pistols
3 concealed upon the person shall expire at midnight of the
4 ........ day of ................, 19...

1    SECTION 16. *Exceptions.* This act shall not apply to antique
2 pistols unsuitable for use as firearms and possessed as curiosi-
3 ties or ornaments.

1    SECTION 17. *Penalties.* Any violation of any provision of
2 this act constitutes an offense punishable by [a fine of not more
3 than [$............] or imprisonment for not more than
4 [............] or both, or by imprisonment in the peniten-
5 tiary for not less than [................], nor more than
6 [................]].

1    SECTION 18. *Constitutionality.* [If any part of this act is
2 for any reason declared void, such invalidity shall not affect
3 the validity of the remaining portions of this act.]

1    SECTION 19. *Short Title.* This act may be cited as the
2 "Uniform Firearms Act."

1    SECTION 20. *Uniform Interpretation.* This act shall be so
2 interpreted and construed as to effectuate its general purpose
3 to make uniform the law of those states which enact it.

1    SECTION 21. *Effective Date.* This act shall take effect on the
2 ........ day of ................, 19.....

1    SECTION 22. *Certain Acts Repealed.* All laws or parts of
2 laws inconsistent herewith are hereby repealed.

567

# EXPLANATORY STATEMENT REGARDING
## UNIFORM FIREARMS ACT

The National Conference of Commissioners on Uniform State Laws is composed of Commissioners appointed by legislative or executive authority from the states, the District of Columbia, the Territory of Alaska, the Territory of Hawaii, and the Insular Possessions of the United States. The organization meeting was held at Saratoga, New York, in August, 1892; and annual meetings have been regularly held since that time, immediately preceding the meetings of the American Bar Association. The purpose of the organization, as its name imports, is to promote uniformity of legislation on subjects of common interest throughout the United States. Proposed acts are carefully drawn by special committees of trained lawyers, assisted by experts in many instances, and are printed, distributed and discussed in the Conference at more than one annual session. When finally approved by the Conference, the uniform acts are submitted to the American Bar Association and recommended for general adoption throughout the jurisdiction of the United States. Each uniform act is thus the fruit of one or more tentative drafts submitted to the criticism of the Commissioners in annual conference and of the American Bar Association, and represents the experience and judgment of a select body of lawyers chosen from every part of the United States.

### RELATION OF ACT TO PAST AND RECENT FIREARMS' LEGISLATION

The Conference at its fortieth annual meeting held at Chicago, August 11-16, 1930, approved the Uniform Firearms Act and voted that it be recommended to the states for adoption. On August 21st the American Bar Association, meeting at the same place, approved the act. This was in effect a second approval of the subject-matter by both bodies, inasmuch as the Conference and Bar Association had at a previous meeting held at Denver, Colorado, in July, 1926,

568

approved an act in substantially the same form. The matter was, however, after the Denver meeting taken under reconsideration by both bodies and for that reason temporarily withdrawn from state legislatures. After four additional years of reconsideration the principles of the former draft have been reaffirmed in the new draft and that new draft with only a few changes from the former draft is now recommended to the states for adoption.

When the subject-matter of the act was first brought to the attention of the National Conference at Minneapolis in August, 1923, much had already been acomplished in the direction of uniform firearms legislation by the United States Revolver Association, a disinterested non-commercial organization of marksmen. Its legislative committee had drafted a uniform law which had already been adopted with some few changes by North Dakota, and New Hampshire. California had also adopted it with some qualifications and additions. The law was thereafter adopted in Indiana in 1925, and much of its subject-matter was enacted in the Oregon, West Virginia and Michigan acts of the same year. The extent to which the Revolver Association Act had thus already gained ground as well as the intrinsic merits of that act induced the committee of the Conference to select it as the model of the draft of the Uniform Act approved by the Conference in 1926. During these four years in which the subject-matter has been under reconsideration and prior to the final approval by the Conference and the Bar Association in 1930, the substance and form of the act has gained additional recognition. Much of its text has been incorporated in recent acts in Massachusetts, Michigan, New Jersey and Rhode Island, and to a very great extent in a 1927 act of Hawaii. The act with some minor changes was adopted by the United States House of Representatives in 1929, too late, however, to reach the Senate. With some changes it again passed the House early in 1930, and at the end of that year is still pending in the Senate.

It is believed that the favor thus already shown to the principles of the act is due to recognition by the various state legislatures of the necessity of uniform legislation on the subject of small firearms, and the soundness of the principles of regulation embodied in the act. These principles are believed to be consonant with legislative precedent and practical experience, and superior to minority

569

views reflected in some past legislation and in a few recent enactments. For example, the uniform act adopts the principle of a strict regulation of the sale and purchase of pistols at the same time that it rejects the comparatively rare provision of a license to purchase, on the theory that the securing of a pistol by a householder as a legitimate means of defense should not be made difficult. The principle of license to purchase was for a long time limited to New York where it was first adopted in 1888. It has in recent years received recognition in Massachusetts, Michigan, New Jersey and Hawaii, and has been approached in West Virginia and perhaps one or two other places. But beyond that the theory of license to purchase has not been recognized. The Uniform Act also rejects such extreme theories of regulation as that embodied in the Arkansas Law of 1923, requiring a state-wide registration of pistols, which principle though repealed subsequently in Arkansas has more recently found some recognition in the Michigan Act of 1927, and is approached by the Virginia Act of 1926.

It will be noted that the act deals with pistols and revolvers only. The Conference after careful consideration decided to confine the act to small arms of this nature as a subject by itself, leaving the matter of other dangerous weapons of not legitimate use to be regulated in separate acts.

GENERAL PRINCIPLES OF ACT

The general principles embodied in the act may be summarized as follows:

1. Without making it difficult for a law-abiding citizen to secure arms for the protection of his home, as by the inconvenient requirements of a license to purchase, the act seeks by strict regulation of dealers, identification of purchasers, and strict licensing of those who carry concealed firearms, to keep such weapons out of the hand of criminals and other prohibited classes.

2. A heavier penalty is provided for a crime of violence by one who is armed, whether legally or not, and the possession of a pistol by a criminal is made *prima facie* evidence of intent.

3. The universal principle is adopted as in all state statutes forbidding the carrying of concealed weapons with a complete enumera-

570

tion of classes of excepted persons and without sufficient exceptions to suit special circumstances. It prohibits carrying pistols in a vehicle whether concealed or not.

4. The act forbids the possession under any circumstances of pistols by persons who have committed crimes of violence as defined by the act.

5. The general principle of forbidding the transfer of pistols to minors is included.

6. A detailed method of identification is provided in the case of sales by private persons and transfers by dealers, requiring licenses of dealers.

7. A complete system is set up for granting licenses to carry concealed weapons in cases where the character of the applicants and emergencies justify the same.

8. The provisions of the act are made effective by prohibitions against the giving of false information by purchasers and applicants for licenses, and the alteration of identification marks on weapons.

9. Pawning pistols or trading in them by way of mortgage is forbidden.

10. A general penalty provision is contained in the act with terms of imprisonment and amounts of fines left blank so as to suit the needs of the particular state enacting the law.

In general it is submitted that the proposed Uniform Act embodies sound forms of regulation which have stood the test of experience in this country and that it embodies such new ideas as have been presented from time to time by individuals and organizations working in the same subject-matter. Thus at the same time that it preserves the traditional methods of firearms' regulation it takes advantage of enlightened experience of recent years. It comes as near, it is believed, as it is possible to come in meeting the two divergent views of a too drastic regulation on the one hand and a too liberal lack of regulation on the other.

COMMENTS ON INDIVIDUAL SECTIONS

Section 1. A "pistol" is defined as a firearm with barrel less than twelve inches in length, in accordance with definitions already prevailing in state statutes. It thus includes a revolver or any small

571

firearm capable of being concealed on the person. Other kinds of dangerous weapons are not included. "Crime of violence," which is used in numerous places in the act, is defined to cover such crimes as are ordinarily committed with the aid of firearms.

Section 2. An additional penalty is provided for persons committing crimes of violence when armed. This provision is found, not only in recent enactments following the Revolver Association Act, but in other states, some of long standing.

Section 3. The fact that a criminal is armed with a pistol without license is deemed *prima facie* evidence of his intention to commit the crime of violence with which he is charged. This provision is also found not only in those states which have followed the Revolver Association Act, but in a number of other states.

Section 4. One convicted of a crime of violence is absolutely forbidden to own or possess a pistol or revolver. This provision also has numerous precedents in existing state legislation and is useful in keeping firearms out of the hands of criminals.

Section 5. This section forbids the carrying of concealed weapons and is similar to provisions prevailing in practically every jurisdiction in this country. It adopts the modern theory of making the prohibition extend not only to weapons concealed on the person but also weapons carried in vehicles whether concealed or not. It is intended thus to remove the easy method by which a criminal on being pursued may transfer a weapon from his pocket to a concealed place in a vehicle.

Section 6. This section enumerates all the classes of persons who, it seems, should be excepted from the provisions of Section 5, the list being adopted after a comparison of persons named in existing state statutes. The exception of a concealed weapon in a dwelling house or place of business is contained in the preceding section; this section extends the exceptions to cases where the weapon may be in process of being carried for mere purposes of legitimate transfer or for repair.

Section 7. This section defines the method for application and issuance of licenses to carry concealed weapons and for the preservation of the record of the same. It is in line with existing provisions. No bond provision has been added because it is believed that, if a proper showing is made on the part of the applicant as

572

to character and necessity, the bond provision should not be introduced to make the obtaining of the license difficult and burdensome.

Section 8. The provisions of this section forbidding the delivery of a weapon to a minor, a criminal or incompetent, are similar to those now generally prevailing. The age of eighteen years named in the section has been deemed more desirable than the younger age named in a number of statutes and the higher age named in some. It is believed that in ordinary instances youths will be of sufficient maturity at eighteen, and that the naming of a higher age might make it impossible to deliver weapons to mature youths who might need them.

Section 9. The provision of this section forbidding a seller to transfer on the day of purchase is intended to avoid the sale of a firearm to a person in a fit of passion. The section further requires identification of purchaser and weapon and the preservation of this identification.

Section 10. This section requires a license of dealers and is in line with existing statutes.

Section 11. This section constitutes the conditions under which licenses will be granted to dealers and for the breach of which such licenses will be forfeited. These conditions are in line with all modern legislation on the subject and constitute the chief safeguard against firearms coming into the possession of undesirables.

Section 12. This section in prohibiting a loan of a pistol secured by any of the methods mentioned is intended primarily to prohibit dealing in pistols by pawnbrokers.

Section 13. This section prohibits the giving of false information in purchasing a firearm or in applying for a license to carry the same. The principles of the section have been adopted not only by those states adopting the Revolver Association Act, but by a number of other states.

Section 14. This section, also designed to preserve the identification of weapons in connection with transfers, forbids the changing of identifying marks and provides that the possession of pistols from which such identifying marks have been obliterated shall be *prima facie* evidence that the possessor has changed the same. It has been adopted by all states which have enacted the Revolver Association Act.

573

Section 15. This section revokes all existing licenses on a date to be inserted by the enacting state.

Section 16. This section is designed to remove from the operation of the act firearms that are kept merely as curiosities. It has been adopted already in those states which have passed the Revolver Association Act.

Section 17. This is the general section which provides penalties for violations of the various provisions of the act. The amounts of fines and the lengths of imprisonment are left blank so that these may be fixed according to the needs and usages of the particular state. This section is so framed as to be applicable to different state definitions of misdemeanors and felonies. A general penalty section has been thought more scientific than the naming of penalties in connection with specific sections.

Section 18. This section is intended to avoid the invalidity of the entire act by a judicial holding that a particular part is unconstitutional. It has been included by the Conference as one of its model sections contained in most uniform acts.

Section 19. This section, in accordance with the practice of the Conference, provides for a short designation of the act to avoid the longer definition at the beginning. In the selection of the words, "Uniform Firearms Act," the definite article "the" has been omitted in order to reduce the short title to its smallest terms.

Section 20. This section is the usual section in uniforms acts embodying the legislative intent that the act shall be so interpreted as to make uniform the laws of the states.

Section 21. This section is the usual section found in uniform acts providing for an effective date.

Section 22. This section is the usual section in uniform acts and contained in the Revolver Association Act, repealing existing laws inconsistent with the Uniform Act.

574

# THE UNIFORM FIREARMS ACT

Recent Development of Firearms Legislation and History of Act——Proposed Measure Preserves Fundamental Provisions of Revolver Association Act—License to Carry As Against License to Purchase or Possess—Summary of Provisions

CHARLES V. IMLAY

*Chairman, Committee on Uniform Firearms Act, Conference of Commissioners on Uniform State Laws*

UNDER the head of "Current Legislation" in the September, 1925, number of this Journal,[1] Mr. Joseph P. Chamberlain reviewed under the title of "Legislatures and the Pistol Problem" a number of recent state statutes enacted to regulate the sale and possession of pistols and revolvers, the general trend of these enactments and their relation to prevailing laws in the various states. At the time Mr. Chamberlain's article was printed, the subject of firearms legislation had just been presented in an exhaustive report to the National Conference of Commissioners on Uniform State Laws by a committee of that body at its sessions in Detroit, August 25-31, 1925, and a first tentative draft of a proposed "Uniform Act to Regulate the Sale and Possession of Firearms" had been discussed in full by the Conference.[2] The proposed act was recommitted by the Conference to its committee and was brought again before the Conference at its sessions in Denver, July 6-12, 1926, in the form of a second tentative draft. As a result, the Conference, after another full discussion, has approved and recommended for adoption by the states, the completed Uniform Firearms Act, which received the approval of the American Bar Association along with other acts presented to the Association at the same place on July 15th by the Standing Committee on Uniform State Laws.

When the subject matter of the Act was first brought to the attention of the National Conference at its meeting at Minneapolis in August, 1923, a movement in the direction of uniform firearms legislation inaugurated by the United States Revolver Association was well under way. That Association, a non-commercial organization of amateur experts in the use of revolvers, had through its legislative committee drafted a proposed uniform law, which had already been enacted in whole or in part in a number of states. The California Act of 1923[3] which had just been passed follows the Revolver Association Act very closely. North Dakota[4] had adopted it on March 7, 1923, practically verbatim. New Hampshire had on May 4, 1923,[5] adopted it with some changes.

Because then of the favor already shown the Revolver Association Act, as well as its intrinsic merits for clearness and simplicity, that law was made the model for discussion by the Conference. Although the draft finally approved by the Conference shows some variations from the model law in the way of additions or omissions and in changes in phraseology, the fundamental principles of the model law have been preserved. And the decision of the committee of the Conference in selecting this model law has received further support in statutes passed since the matter of firearms legislation came before the Conference. The Indiana Act of 1925[6] is almost a verbatim adoption of the Revolver Association Law. And a number of the sections of the latter law are incorporated, without changes, into the Michigan Law of 1925:[7] some others being incorporated with changes. Recent acts in Connecticut,[8] New Jersey,[9] and Oregon,[10] contain more or less verbatim parts of the model law.

## Need for Uniformity

That there is need of more careful regulation of the use of firearms and in particular small firearms (the subject matter of the Uniform Act) is evident from the daily newspaper records of crimes of violence committed with the revolver. The same records attest the desirability of adopting no system of regulation which would prevent the law-abiding citizen from possessing firearms for the defense of his person and property. And the same exigencies which demand the regulation of the sale and use of firearms require that the laws upon the subject be uniform: for no matter how rigid the law of one state may be upon the subject, if the law of a neighboring state be lax, it is easy for the criminal to obtain his weapon in the latter and carry it into the former.

Schemes of regulation have heretofore ranged all the way from the proposal made in the French legislature some months ago that all persons be permitted to arm *ad libitum* to be prepared for the miscreant, to the suggestion made by one of the members of the Conference in the discussion in Detroit, that no one other than a peace officer under any circumstances be permitted to carry a revolver.[11] Nor has there been any serious effort made to regulate the subject by regulating the manufacture of weapons. The nearest approach to this method was the so-called "Shields Bill" introduced in the Senate, April 25, 1921,[12] which was designed to prohibit the transportation in interstate commerce of firearms other than those of army and navy makes. The bill failed of passage. (A more

1. American Bar Association Journal, Vol. XI, p. 596.
2. Handbook Nat. Conf. Commissioners on Uniform State Laws, 1925, pp. 294, 316, 859.
3. Cal. Laws 1923, Ch. 339.
4. N. D. Laws, 1923, Ch. 266.
5. N. H. Laws 1923, ———.
6. Ind. Laws 1925, Ch. 207.
7. Mich. Public Acts 1925—No. 313.
8. Conn. Laws 1923, Ch. 252.
9. N. J. Laws 1924, Ch. 137.
10. Ore. Laws 1925, Ch. 260.
11. Handbook Nat. Conf. Commissioners on Uniform State Laws, 1925, p. 321.
12. S. 1184, 67th Cong.—1st Sess.

767

recent bill,[13] in the United States House of Representatives, along the same lines, also failed of passage). And no success has attended various other efforts to control the sale of firearms through Congressional legislation.

### License to Carry—Not License to Purchase

In adopting the principle of the Revolver Association Act of a license to carry a concealed pistol as against the requirement of a license to purchase or possess, the Uniform Act follows the almost universal system of regulation which has prevailed in the various states, and which has recently been affirmed in the adoption of the act named in North Dakota, New Hampshire, California and Indiana.

New York has long stood virtually alone in favoring the form of regulation by license to purchase under the so-called Sullivan Law, first enacted in 1888 and now existing there with certain amendments.[14] Massachusetts has recently enacted a law along this line.[15] And a recent West Virginia Law seems to approach the principle.[16] Recently there have been a few states which have attempted to go the whole length and require a state-wide registration or a license to possess. In the first group is the Arkansas Law of 1923,[17] which provided for a state-wide registration of pistols already owned and a license and registration of those afterwards acquired. This law was found so impracticable in enforcement that it was later repealed.[18] The Michigan Law of 1925, mentioned above, likewise requires a state-wide registration of all arms possessed, but it does not go the length of the Arkansas Law in imposing the requirement of a license to possess. The registration feature had upon last information not yet been put into effect, because of technical difficulties.

Another attempt to regulate is a law like that of North Carolina of 1923[19] making it unlawful for any person to receive from any postal employee or express or railroad agent within the state, any pistol without having and exhibiting a pistol permit. The latter law Mr. Chamberlain states to be of doubtful constitutionality.[20]

Much has been said of late in the public press in favor of the license to purchase or possess like that of New York. It has been advocated strongly by prosecutors and others engaged in suppressing crime as the surest means of preventing a pistol from getting into the hands of the criminal. But the Conference has inclined to the view of a license to carry, heretofore almost universal and reaffirmed in the recent enactments named.

It is doubtful whether or not a license to purchase or possess could ever be enforced. Legislation to that end would no doubt be followed by an era of pistol bootlegging similar to the liquor bootlegging which followed Prohibition. The criminal records in New York amply demonstrate that the Sullivan Law has not kept weapons out of the hands of criminals. One of the best safeguards against crime is the consciousness on the part of the criminal that the householder possesses arms. A regulation which would make it difficult for a law-abiding

citizen to possess arms would make for lawlessness. The requirement of a license to purchase might render it impossible for a citizen to obtain a pistol when he might need it the most: the requirement of a license to possess would forbid his borrowing a pistol from a neighbor at the moment of a pressing emergency. He would be unarmed as against a criminal armed in defiance of law.

### Summary of Provisions of Uniform Act

The Act defines a "pistol or revolver" as a firearm with barrel less than twelve inches in length.[21] It includes in the definition of a "crime of violence" such crimes as are usually committed with the aid of a revolver.[22] When such a crime is committed by one armed with such weapon, a penalty in addition to that for the substantive offense is prescribed.[23] The fact that a criminal is armed with such weapon is *prima facie* evidence of his intention to commit the crime charged.[24]

One convicted in a state of a crime of violence is absolutely forbidden to own or possess a pistol or revolver.[25] The Act forbids the carrying of concealed weapons according to the universal principle in state legislation adopting the modern theory of making the prohibition extend, not only to weapons concealed on the person, but also to vehicles. This is intended to remove the easy method by which a criminal, on being pursued, may transfer a weapon from his pocket to a concealed place in a vehicle.[26] All classes of persons usually excepted by state statutes from the above provisions are excepted by the terms of the Act, and also exceptions are permitted under certain circumstances, for example, carrying a weapon in a dwelling house or place of business.[27]

The Act provides for the issuance of licenses for the carrying of concealed weapons upon a satisfactory showing being made by the applicant as to his character and the necessity for his application.[28] Delivery of firearms to minors under eighteen is forbidden; the age of eighteen being deemed more desirable than the younger age named in a number of statutes and the higher age named in some.[29]

The transfer of a firearm is forbidden to any one who the transferrer may have reasonable cause to believe has been convicted of a crime of violence. A seller may not transfer a weapon on the day of purchase. The Act specifies the means of identifying the purchaser and the preservation of this identification.[30] These provisions, however, do not forbid the lending of a weapon by one citizen to another in case of an emergency.

The Act requires a license of dealers.[31] The giving of this license to the dealer and its retention by him is upon careful conditions, for the breach of which such license will be forfeited.[32] False information in purchasing a firearm or in applying for a license to carry the same is forbidden.[33] The changing of identifying marks on weapons is also forbidden and this prohibition is

13. H. R. 4002, 69th Cong., 1st Sess.
14. N. Y. Consolidated Laws of 1897, ss. 1-14.
15. Mass. Gen. L., Chap. 395, Act of May 29, 1926.
16. Act April 28, 1925; Laws 1925, Ch. 95, Amending s. 7, Ch. 148, Code W. Va.
17. Ark. Acts 1923, Ch. 430.
18. Ark. Acts 1925, p. 1047, Act No. 351.
19. N. C. Laws, 1923, Ch. 106.
20. Am. Bar Assn. Journal, vol. XI, p. 598.

21. S. 1 Uniform Firearms Act.
22. *Ibid.*
23. S. 2.
24. S. 3.
25. S. 4.
26. S. 5.
27. S. 6.
28. S. 7.
29. S. 8.
30. S. 9.
31. S. 10.
32. S. 11.
33. S. 12.

fortified by another provision that possession of firearms from which such identifying marks have been obliterated shall be *prima facie* evidence that the possessor has changed the same.[34]

The Act revokes all existing licenses.[35] It exempts antique weapons that are merely curiosities.[36] By a specific provision it supersedes all local ordinances.[37]

A special section provides for penalties for violations of the various provisions of the Act.[38] The amounts of fines and lengths of imprisonment are left blank so that these may be fixed in accordance with the needs and usages of the particular state, having regard to the differences in definitions of misdemeanors and felonies obtaining in the various states. The Act conforms to what

is believed to be the sound view of putting the matter of punishment in the discretion of the court.

The Act concludes with the usual provision found in Uniform State Laws, viz., a provision that if any part of the Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of the Act,[39] the definition of a short title, "Uniform Firearms Act,"[40] the naming of an effective date,[41] and the specific repeal of inconsistent laws.[42]

It is believed that the provisions of the Uniform Firearms Act present no constitutional objections, constitute no drastic changes in the law of any jurisdiction, and if adopted generally will not only secure uniformity, but will remove the evils of the present lack of uniformity.

34. S. 13.
35. S. 14.
36. S. 15.
37. S. 16.
38. S. 17.

39. S. 18.
40. S. 19.
41. S. 20.
42. S. 21.

# DEPARTMENT OF CURRENT LEGISLATION

## Current Federal Legislation (Continued)

### By J. P. CHAMBERLAIN AND MIDDLETON BEAMAN

THE Prohibition Amendment did not relegate to the Congressional waste-paper basket, all the experience gained in the long series of federal statutes under the commerce power to aid the states in enforcing their liquor laws.

The Plant Quarantine Act authorizes the Secretary of Agriculture to quarantine any State against plant diseases and when such quarantine is established shipment of plants into the quarantined State is unlawful under a criminal penalty. Public Resolution 14 provides that until the Secretary has established a quarantine, the act shall not be construed to prevent any state from enforcing its quarantine laws preventing transport of plants into or through the state from any other state in which the transit state finds that a plant disease exists. This statutory interpretation of the earlier law permits the states to act independently of the Government until the Government has acted.* The direct application of the principle of the old laws regulating liquor is in another provision which declares that when a quarantine has been established by the Secretary, plants shipped in violation of the quarantine are subject to the laws of the states into which they are brought "to the same extent and in the same manner as though" the plants "had been produced in such state . . . and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." This is a further illustration of the divesting by Congress of its power over interstate com-

merce, in respect to a particular article, a procedure sanctioned when applied to intoxicating liquor.[1] The question arises as to whether a violator of the Federal quarantine will be subject to penalty under the Federal law in the Federal courts as well as to a penalty under the State law in the state courts.[2] It is to be noted that previous acts divesting articles of protection against state legislation while in interstate commerce, applied only where interstate commerce was being used as a means of circumventing state laws, while by this statute, the state authority is permitted to act upon articles being transported in breach of a Federal law. Formerly the article was stripped of Federal protection to enforce the law of the state; here it is in addition, a sort of penalty imposed for violation of the Federal regulation.

A further example of the use by Congress of its power over interstate commerce to aid the States in the enforcement of their laws is found in Public 256 which makes it unlawful for any person to deliver to a common carrier for transportation, or for any person knowingly to transport or carry in interstate or foreign commerce any black bass which has been caught, sold, purchased, or possessed in violation of the law of the State or Territory wherein the delivery of the bass for transportation is made or the carrying thereof begins. A criminal penalty is provided for violation. The Act is much the same as the Act of May 25, 1900, commonly known as the "Lacey Act", applicable to wild animals and birds. That Act has never been passed on by the Supreme Court, but has been sustained

*A prior judicial interpretation was that the states were prevented from acting in such cases even before any action by the Secretary. Oregon-Washington Railway Co. v. Washington, 46 Sup. Ct. Rep. 279.

1. Re Rahrer, 140 U. S. 545.
2. U. S. v. Lanza, 260 U. S. 377. See also footnote 6.

States, for the purpose of having such communication delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to such addressee in the United States, and as a result thereof such communication is delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to the address to which it is directed in the United States, then such person shall be punished in the same manner and to the same extent as provided in section 1 of this Act: *Provided,* That any person violating this section may be prosecuted either in the district into which such letter or other communication was carried by the United States mail for delivery according to the direction thereon, or in which it was caused to be delivered by the United States mail to the person to whom it was addressed.

*Punishment for.*
*Proviso.*
*Jurisdiction.*

Approved, July 8, 1932.

---

[CHAPTER 465.]

AN ACT

July 8, 1932.
[H. R. 8754.]
[Public, No. 275.]

To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes.

*Unauthorized use, etc., of pistols and other dangerous weapons in District of Columbia.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

*Definitions.*

### DEFINITIONS

*"Pistol."*

SECTION 1. " Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length.

*"Sawed-off shot-gun."*

" Sawed-off shotgun," as used in this Act, means any shotgun with a barrel less than twenty inches in length.

*"Machine gun."*

" Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading.

*"Person."*

" Person," as used in this Act, includes, individual, firm, association, or corporation.

*"Sell" and "pur-chase," etc.*

" Sell " and " purchase " and the various derivatives of such words, as used in this Act, shall be construed to include letting on hire, giving, lending, borrowing, and otherwise transferring.

*"Crime of violence."*

" Crime of violence " as used in this Act, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary.

### COMMITTING CRIME WHEN ARMED

*Committing crime of violence when armed. Punishment for.*

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the

crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

### PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

*Persons forbidden to possess certain firearms.*
*Convicted of a crime.*

### CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

*Illegally carrying, etc., dangerous weapon.*

### EXCEPTIONS

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

*Exceptions.*
*Law enforcement officers.*
*Army, Navy, or Marine Corps.*
*National Guard, etc., on duty.*
*Other organizations.*
*Carrying to places of assembly, etc.*
*Manufacturer, etc.*

### ISSUE OF LICENSES TO CARRY

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

*Licenses.*

## SELLING TO MINORS AND OTHERS

Selling to minors or others.

SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

## TRANSFERS REGULATED

Time, etc., provisions.

SEC. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law-enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase

Register to be kept.

of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the

Limitation.

other copy for six years. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the

Wholesale trade.

superintendent of police of the District of Columbia. This section shall not apply to sales at wholesale to licensed dealers.

## DEALERS TO BE LICENSED

Dealers to be licensed.

SEC. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun, sawed-off shotgun, or blackjack without being licensed as hereinafter provided. No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed-off shotgun, or blackjack.

## DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

Conditions, etc., for issuing dealers' licenses. Ante, p. 558.

SEC. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.

4. A true record shall be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners, of all pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale. *Records.*

5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years.

6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section. *Display, etc., forbidden.*

## FALSE INFORMATION FORBIDDEN

Sec. 11. No person, shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine gun, sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity. *False information or evidence forbidden.*

## ALTERATION OF IDENTIFYING MARKS PROHIBITED

Sec. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol, machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: *Provided, however,* That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work. *Alteration, etc., of identification marks prohibited.* *Proviso. Experimental work.*

## EXCEPTIONS

Sec. 13. This Act shall not apply to toy or antique pistols unsuitable for use as firearms. *Toys, etc., excepted.*

POSSESSION OF CERTAIN DANGEROUS WEAPONS

Possession of certain dangerous weapons forbidden.

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: *Provided, however,* That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly appointed law-enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers and retail dealers licensed under section 10 of this Act.

*Proviso.*
Exceptions.

PENALTIES

Punishment for violations.

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

CONSTITUTIONALITY

Invalidity of any provision not to affect remainder.

SEC. 16. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

CERTAIN ACTS REPEALED

Vol. 31, p. 1328, repealed.

SEC. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856, and 857, and all other Acts or parts of Acts inconsistent herewith, are hereby repealed.

Approved, July 8, 1932.

---

[CHAPTER 466.]

JOINT RESOLUTION

July 8, 1932.
[H. J. Res. 462.]
[Pub. Res., No. 35.]

Making an appropriation to provide transportation to their homes for veterans of the World War temporarily quartered in the District of Columbia.

World War veterans. Appropriation for, to provide transportation from District of Columbia to their homes.
*Post,* p. 701.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That to enable the Administrator of Veterans' Affairs, upon the request of any honorably discharged veteran of the World War, temporarily quartered in the District of Columbia, who is desirous of returning to his home, to provide such veteran with railroad transportation thereto prior to July 15, 1932, together with travel subsistence at the rate of 75 cents per day, there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $100,000 : *Provided,* That all amounts expended under this appropriation in behalf of any veteran shall constitute a loan without interest which, if not repaid to the United States, shall be deducted from any amounts payable to such veteran on his adjusted-service certificate.

*Proviso.*
Credited as a loan.

Approved, July 8, 1932.

CONSTRUCTION OF SCHOOL BUILDING IN SOUTH DAKOTA

The bill (S. 2340) to provide funds for cooperation with the School Board of Shannon County, S. Dak., in the construction of a consolidated high-school building to be available to both white and Indian children was announced as next in order.

Mr. REED. Mr. President, I would like to have an explanation as to why so large a sum as $150,000 is asked to be appropriated for this purpose.

The PRESIDENT pro tempore. Neither the author of the bill nor the Senator who reported it is present.

Mr. REED. I ask that the bill may go over.

The PRESIDENT pro tempore. The bill will be passed over.

The bill (S. 4412) to provide for the safer and more effective use of the assets of Federal reserve banks and of national banking associations to regulate interbank control, to prevent the undue diversion of funds into speculative operation, and for other purposes, was announced as next in order.

SEVERAL SENATORS. Over.

The PRESIDENT pro tempore. The bill will be passed over.

SENATOR FROM NORTH CAROLINA

The resolution (S. Res. 60) to hear and determine the contest of George M. Pritchard v. Josiah W. Bailey for a seat in the Senate from the State of North Carolina, was announced as next in order.

Mr. GEORGE. I ask that that may go over.

The PRESIDENT pro tempore. The resolution will go over.

REGULATION OF USE OF DANGEROUS WEAPONS

The Senate proceeded to consider the bill (H. R. 8754) to control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, which had been reported from the Committee on the District of Columbia with amendments.

Mr. McKELLAR. Whoever is the author of the bill or whoever reported it I hope will give some explanation.

Mr. CAPPER. Mr. President, this is a House bill, but had very careful consideration by the Senate Committee on the District of Columbia. The bill also has the very strong approval of the police department of the District of Columbia, of the District Commissioners, and of the civic organizations.

Under the terms of the bill the purchaser of a pistol would be required to sign in duplicate and give the dealer a statement containing his name, his address, his occupation, and other pertinent information. The sale would not be consummated until 48 hours after the application was made.

The right of an individual to possess a pistol in his home or on land belonging to him would not be disturbed by the bill. As it is now all types of deadly weapons are sold in the District of Columbia with virtually no restriction. The District authorities and everyone here who has anything to do with the Government and the administration of the law strongly favor this measure.

Mr. McKELLAR. I have no objection.

The PRESIDENT pro tempore. The clerk will state the first amendment.

The first amendment of the committee was, on page 1, section 1, line 5, after the word " length," to strike out " or any weapon commonly designated as a sawed-off shotgun regardless of length " and insert a new paragraph, as follows:

" Sawed-off shotgun," as used in this act, means any shotgun with a barrel less than 20 inches in length.

The amendment was agreed to.

The next amendment of the committee was, on page 6, line 16, after the word " gun," to insert " sawed-off shotgun "; on page 7, line 1, after the words " machine gun," to insert " sawed-off shotgun "; in line 6, after the words " machine gun," to insert " sawed-off shotgun "; in line 13, after the word " guns," to insert " sawed-off shotguns "; on page 8, line 4, after the word " gun," insert " sawed-off

shotgun "; in line 12, after the word " all," strike out the words " pistols and " and insert the word " pistols "; and after the words " machine guns," in line 12, insert the words " and sawed-off shotguns "; in line 18, after the words " machine guns," insert " sawed-off shotgun "; on page 9, in line 16, after the words " machine gun," insert " sawed-off shotgun "; in line 23, after the word " any," strike out " pistol or " and insert " pistol," and after the words " machine gun " insert " or sawed-off shotgun "; in line 24, after the word " any," strike out " pistol or " and insert " pistol "; on page 10, line 1, after the word " gun," insert " or sawed-off shotgun "; in line 20, after the words " machine guns," insert the words " sawed-off shotguns "; and in line 21, after the word " by," strike out " any foreign government," so as to make the bill read:

Be it enacted, etc.—

DEFINITIONS

SECTION 1. " Pistol," as used in this act, means any firearms with a barrel less than 12 inches in length.

" Sawed-off shotgun," as used in this act, means any shotgun with a barrel less than 20 inches in length.

" Machine gun," as used in this act, means any firearm which shoots automatically or semiautomatically more than 12 shots without reloading.

" Person," as used in this act, includes individual, firm, association, or corporation.

" Sell " and " purchase " and the various derivatives of such words, as used in this act, shall be construed to include letting on hire, giving, lending, borrowing, and otherwise transferring.

" Crime of violence," as used in this act, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary.

COMMITTING CRIME WHEN ARMED

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than 10 years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than 15 years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than 30 years.

PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol within the District of Columbia.

CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

EXCEPTIONS

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

ISSUE OF LICENSE TO CARRY

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has

good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia, and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

SELLING TO MINORS AND OTHERS

Sec. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of 18 years.

TRANSFERS REGULATED

Sec. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until 48 hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law-enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the make, model, hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased, and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the other copy for six years. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia. This section shall not apply to sales at wholesale to licensed dealers.

DEALERS TO BE LICENSED

Sec. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession, with intent to sell, any pistol, machine gun, sawed-off shotgun, or blackjack without being licensed as hereinafter provided. No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed-off shotgun, or blackjack.

DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

Sec. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of 18 years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.

4. A true record shall be made in a book kept for the purpose, the form of which may be prescribed by the commissioners, of all pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale.

5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years.

6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section.

FALSE INFORMATION FORBIDDEN

Sec. 11. No person shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine gun, sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity.

ALTERATION OF IDENTIFYING MARKS PROHIBITED

Sec. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol, machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: Provided, however, That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or District of Columbia engaged in experimental work.

EXCEPTIONS

Sec. 13. This act shall not apply to toy or antique pistols unsuitable for use as firearms.

POSSESSION OF CERTAIN DANGEROUS WEAPONS

Sec. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearm: Provided, however, That machine guns, sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly appointed law-enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers and retail dealers licensed under section 10 of this act.

PENALTIES

Sec. 15. Any violation of any provision of this act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

CONSTITUTIONALITY

Sec. 16. If any part of this act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this act.

CERTAIN ACTS REPEALED

Sec. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856, and 857, and all other acts or parts of acts inconsistent herewith, are hereby repealed.

The amendments were agreed to.

The amendments were ordered to be engrossed, and the bill to be read a third time.

The bill was read the third time, and passed.

CHANGE OF NAME OF COMMITTEE ON PENSIONS

The resolution (S. Res. 26) changing the name of the Committee on Pensions to the Committee on Veterans' Affairs, and defining its jurisdiction, was announced as next in order.

Mr. KING. Over.

The PRESIDENT pro tempore. The resolution will go over.

Mr. BROOKHART. Mr. President, I move that the Senate proceed to the consideration of the resolution.

The PRESIDENT pro tempore. The Senator from Iowa moves that the Senate proceed to the consideration of Senate Resolution 26.

Mr. BROOKHART. Mr. President——

The PRESIDENT pro tempore. The motion is not debatable.

Mr. BROOKHART. I ask for the yeas and nays.

The PRESIDENT pro tempore. Is the demand seconded? Apparently it is not sufficiently seconded.

Mr. LA FOLLETTE. Mr. President, I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

# NATIONAL FIREARMS ACT

## HEARINGS

### BEFORE THE

## COMMITTEE ON WAYS AND MEANS
## HOUSE OF REPRESENTATIVES

### SEVENTY-THIRD CONGRESS
#### SECOND SESSION

#### ON

# H.R. 9066

APRIL 16, 18, AND MAY 14, 15, AND 16, 1934



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON: 1934

58278

## COMMITTEE ON WAYS AND MEANS

### HOUSE OF REPRESENTATIVES

ROBERT L. DOUGHTON, North Carolina, *Chairman*

SAMUEL B. HILL, Washington
THOMAS H. CULLEN, New York
CHRISTOPHER D. SULLIVAN, New York
MORGAN G. SANDERS, Texas
JOHN W. McCORMACK, Massachusetts
CLEMENT C. DICKINSON, Missouri
DAVID J. LEWIS, Maryland
FRED M. VINSON, Kentucky
JERE COOPER, Tennessee
ASHTON C. SHALLENBERGER, Nebraska
CHARLES WEST, Ohio
JOHN W. BOEHNE, JR., Indiana
JAMES V. McCLINTIC, Oklahoma
CLAUDE A. FULLER, Arkansas

ALLEN T. TREADWAY, Massachusetts
ISAAC BACHARACH, New Jersey
FRANK CROWTHER, New York
JAMES A. FREAR, Wisconsin
HAROLD KNUTSON, Minnesota
DANIEL R. REED, New York
ROY O. WOODRUFF, Michigan
THOMAS A. JENKINS, Ohio
WILLIAM E. EVANS, California
THOMAS C. COCHRAN, Pennsylvania

E. W. G. HUFFMAN, *Clerk*

# CONTENTS

Statements of—                                                    Page
  Allen, J. Weston, chairman National Anti-Crime Commission, New-
    ton, Mass_____ 102, 127
  Cummings, Hon. Homer S., Attorney General of the United States__    4
  Frederick, Karl T., president National Rifle Association of America_   38
  Gordon, Seth, president American Game Association_____ 81, 161
  Imlay, Charles V., representing the National Conference on Uniform
    Law_____ 67, 137
  Keenan, Hon. Joseph B., Assistant Attorney General, Department of
    Justice_____ 26, 64, 82, 86, 133, 161
  Nichols, Frank C., vice president Colt Patent Firearms Manufactur-
    ing Co_____    151
  Reckord, Hon. Milton A., adjutant general of the State of Maryland_ 33, 107
  Ryan, W. B., president Auto Ordnance Co_____    66
  Taylor, John Thomas, representing the American Legion_____    80

                                                  III

prefer to go slowly and get proper legislation rather than to move rapidly and get something that was not just right.

He gave us every indication that he would confer with us and that we would be allowed to make suggestions and present the thought of our association. We were never given any further opportunity.

Mr. TREADWAY. This bill was introduced by Mr. Sumners, Chairman of the Committee on the Judiciary, marked "by request."

General RECKORD. Yes, sir.

Mr. TREADWAY. Do you know whether that request was Mr. Keenan's? Did Mr. Keenan prepare this bill, so far as you know, or are you not aware of that?

General RECKORD. If I may say so, may best knowledge is to the effect that it was prepared in the Attorney General's office; yes, sir.

Mr. TREADWAY. And if prepared in the Attorney General's office you feel confident that Mr. Keenan knew something about it?

General RECKORD. Well, Mr. Treadway, I know that it was prepared there and I know that Mr. Keenan knew all about it.

The CHAIRMAN. Will you now proceed to take up your objections one by one and explain them, with any suggestions that you have to offer?

General RECKORD. Mr. Doughton, if I may, I would like to present Mr. Karl Frederick, who is the President of the National Rifle Association of America. He is the vice president of the United States Revolver Association. He is a member of the Campfire Club. He is also a member of the New York Fish, Game, and Forest League and is vice president of the New York Conservation Council, Inc.; a former member of the Commission on Fire Arms Legislation of the National Crime Commission.

The CHAIRMAN. Mr. Frederick, will you please come forward and give your name and address to the reporter, for the record?

## STATEMENT OF KARL T. FREDERICK, PRESIDENT NATIONAL RIFLE ASSOCIATION OF AMERICA, 128 BROADWAY, NEW YORK CITY

Mr. FREDERICK. My name is Karl T. Frederick, 128 Broadway, New York.

I think the General has sufficiently indicated, unless some of you wish me to elaborate upon it, my representation and background.

I have been giving this subject of firearms regulation intense study and consideration over a period of 15 years, and the suggestions resulting from that study of mine and the people with whom I have been associated, such as the National Conference of Commissioners on Uniform Laws, have resulted in the adoption in many States of regulatory provisions suggested by us.

As General Reckord indicated, the national act for the District of Columbia is the uniform firearms act which was first drafted by me about 14 years ago, and which was, in that early time, brought to the attention of the National Conference of Commissioners of Uniform Laws, who appointed a subcommittee under the chairmanship of Mr. Imlay, who is here, and which gave about 7 years of study to the matter; which produced the most extensive and thoroughgoing investigation of the subject of firearms control that has ever been made by anybody in this country; and resulted, after successive

revisions, in the final form of the uniform act which has been, as I say, adopted by the Congress for the District of Columbia.

It is the law in Pennsylvania. It has been the law in California for many years. Portions of it are to be found in New York, New Jersey, Indiana, New Hampshire, and many other States.

This subject is a subject to which a large amount of careful and intensive thought has been given. I must, however, apologize to your committee if, as I anticipate, the remarks which I have to make with respect to this particular bill appear to be somewhat disconnected and not presented with the logical form with which I would otherwise desire to present them. The reason for that is that since I arrived this morning on the night train I have for the first time seen the bill. I have had earlier bills which were first presented in the Senate and I have had some typewritten notes with respect to some prospective contents of a bill which was supposed or expected shortly to appear in the House.

My consideration has, therefore, been almost wholly based upon that earlier and somewhat scrappy information which has come to me; because, as I say, this printed bill I have seen for the first time this morning.

As General Reckord said, we regret that we are forced to appear without having had an opportunity to completely formulate our views. We had expected that we would be, as he said, informed as to the proposals emanating concretely from the Attorney General's office. But, apart from the conference which I had with General Reckord and with Mr. Keenan about 2½ months ago, and apart from a courteous letter of acknowledgement of certain information which I sent to him about 6 weeks ago, I have had no information whatever with respect to their proposals from the Attorney General's office.

I will come immediately to certain concrete criticisms which I think should properly be made of this bill, and in the course of my remarks I shall be glad to attempt to answer any questions any of you desire to address to me, and I may from to time branch out a little bit into consideration of the more general features of such legislation which underlie the entire subject.

The first criticism that I have to make is on page 1, lines 8 to 10. The definition of the term "machine gun" I think is wholly inadequate and unsatisfactory. A gun which fires automatically or semiautomatically less than 12 shots is not under this definition a machine gun. And yet, in my opinion, it is in fact a machine gun and should be so classified.

The well-known Thompson submachine gun which has figured in the papers extensively; the so-called "Browning" automatic rifle or the Monitor rifle, which is a somewhat similar weapon designed for police use, are both in fact capable of being operated automatically and semiautomatically. The number of shots which they may discharge is dependent solely on the size or the content of the magazine and if you use those guns with magazines holding only 11 shots they would not be, within the terms of this bill, a machine gun.

Mr. WOODRUFF. Will you yield for a question there?

Mr. FREDERICK. Certainly.

Mr. WOODRUFF. As a matter of fact, the only thing that controls or limits the number of shots that an automatic rifle or shotgun can fire is the magazine itself, is it not?

**From NRA's "American Rifleman" Magazine, March 1968, P. 22**

# WHERE THE NRA STANDS ON GUN LEGISLATION

## 97-year record shows positive approach to workable gun laws

By ALAN C. WEBBER,
Associate Editor
THE AMERICAN RIFLEMAN

"I think it is a terrible indictment of the National Rifle Association that they haven't supported any legislation to try and control the misuse of rifles and pistols in this country."

That flat assertion was made by Senator Robert Kennedy (N.Y.), Jan. 16 in addressing the New York State University law school in Buffalo.



The late Karl T. Frederick

Terming Kennedy's accusation "a smear of a great American organization," NRA Executive Vice President Franklin L. Orth pointed out that "The National Rifle Association has been in support of workable, enforceable gun control legislation since its very inception in 1871."

A few days later, Orth seconded the request of President Lyndon Johnson, made Jan. 17 in his State of the Union message, for a curb on mail-order sales.

"The duty of Congress is clear," Orth said, "it should act now to pass legislation that will keep undesirables, including criminals, drug addicts and persons adjudged mentally irresponsible or alcoholic, or juveniles from obtaining firearms through the mails."

The NRA position, as stated by Orth, emphasizes that the NRA has consistently supported gun legislation which it feels would penalize misuse of guns without harassing law-abiding hunters, target shooters and collectors.

Here is the record over the years:

*Item:* The late Karl T. Frederick, an NRA president, served for years as special consultant with the Commissioners on Uniform State Laws to frame The Uniform Firearms Act of 1930.

Adopted by Alabama, Indiana, the District of Columbia, Pennsylvania, South Dakota, and Washington, the Act directly attacks the "mail order murder" to which President Johnson referred in his State of the Union Message. It specifically forbids delivery of pistols to convicts, drug addicts, habitual drunkards, incompetents, and minors under the age of 18. Other salient provisions of the Act require a license to carry a pistol concealed on one's person or in a vehicle; require the purchaser of a pistol to give information about himself which is submitted by the seller to local police authorities; specify a 48-hour time lapse between application for purchase and delivery.

*Item:* The NRA supported The National Firearms Act of 1934 which taxes and requires registration of such firearms as machine guns, sawed-off rifles and sawed-off shotguns.

*Item:* The NRA supported The Federal Firearms Act of 1938, which regulates interstate and foreign commerce in firearms and pistol or revolver ammunition, and prohibits the movement in interstate or foreign commerce of firearms and ammunition between certain persons and under certain conditions.



Senators Dodd (l.) and Kennedy

More recently, the spate of articles on gun legislation has spread the erroneous impression that the NRA has always opposed Senator Thomas J. Dodd's attempts to keep guns out of the hands of juveniles. This is simply untrue. The facts are these:

The NRA worked closely with the Senate Subcommittee on Juvenile Delinquency, of which Senator Dodd was chairman, in its investigation into the relationship between juvenile crime and the availability of firearms.

The NRA supported the original "Dodd Bill" to amend the Federal Firearms Act in regard to handguns when it was introduced as S.1975 in August,

1963. Among its provisions was the requirement that a purchaser submit a notarized statement to the shipper that he was over 18 and not legally disqualified from possessing a handgun.

In January, 1965, with the continued support of the NRA, Senator Dodd introduced an amended version of his first bill, now designated S.14 and expanded to cover rifles and shotguns as well as handguns.



Senator Hruska

The parting of the ways came only when Senator Dodd introduced still another bill (S.1592) in March, 1965, which drastically intensified his earlier bills. The NRA opposed S.1592 and subsequent bills introduced by the Connecticut Senator. If passed into law, S.1592 would, among other things, have ended all interstate shipments of firearms except to persons holding a Federal firearms license. It also would have prohibited even a Federal licensee from selling a pistol to anyone residing in another State.

NRA support of Federal gun legislation did not stop with the earlier Dodd bills. It currently backs several Senate and House bills which, through amendment, would put new teeth into the National and Federal Firearms Acts. The essential provisions which the NRA supports are contained in 2 Senate bills introduced by Senator Roman L. Hruska (Nebr.) and House bills introduced by Congressmen Cecil R. King (17th Dist.-Calif.) and Robert L. F. Sikes (1st Dist.-Fla.). These bills would:

1. Impose a mandatory penalty for the carrying or use of a firearm, transported in interstate or foreign commerce, during the commission of certain crimes.

2. Place "destructive devices" (bombs, mines, grenades, crew-served military ordnance) under Federal regulation.

3. Prohibit any licensed manufacturer or dealer from shipping any firearm to any person in any State in violation of the laws of that state.

4. Regulate the movement of handguns in interstate and foreign commerce by: a. requiring a sworn statement, containing certain information, from the

**THE AMERICAN RIFLEMAN**

22

purchaser to the seller for the receipt of a handgun in interstate commerce; b. providing for notification of local police of prospective sales; c. requiring an additional 7-day waiting period by the seller after receipt of acknowledgement of notification to local police; d. prescribing a minimum age of 21 for obtaining a license to sell firearms and increasing the license fees; e. providing for written notification by manufacturer or dealer to carrier that a firearm is being shipped in interstate commerce; f. increasing penalties for violation.

 

Congressmen Sikes (l.) and King

Through bulletins to its members, the NRA has often voiced approval and support of State and local ordinances designed to keep firearms out of the hands of undesirables. A bulletin of Feb. 20, 1964 notified Virginia members of the introduction in the Virginia House of Delegates of a bill requiring a 72-hour waiting period for purchase of a handgun. In the bulletin, which outlined the provisions of the bill, NRA Secretary Frank C. Daniel commented as follows:

"A number of States and local jurisdictions have a waiting period of varying length for the purchase of a concealable firearm; and, where intelligently and reasonably administered, it has not proved to be an undue burden on the shooter and sportsman. . . . The bill from a technical point of view adequately protects citizens of good character from any arbitrary denial of their right to purchase a handgun. It should be judged on the basis of whether or not a waiting period for the purchase of a handgun is desirable for the State."

The bill was killed in the House Feb. 25, 1964.

When bills were introduced in the Illinois legislature in February, 1965, to provide mandatory penalties for crimes committed while armed with a firearm, the NRA expressed its opinion to Illinois members in these terms:



NRA Secretary Daniel

"The purpose of these bills is to penalize the criminal *misuse* of firearms and weapons, and not the firearms themselves. This is a sound and reasonable basis for regulation and is aimed in the right direction—that of criminal conduct when armed. Senate Bill No. 351 and House Bill No. 472 are worthy of the support of the sportsmen of the State of Illinois."

The bills were passed by the Senate and House but were vetoed by Gov. Otto Kerner a few months later.

Many other instances of NRA support for worthwhile gun legislation could be quoted. But these suffice to show that Senator Kennedy's "terrible indictment" of the NRA is groundless. ∎

MARCH 1968

**From NRA's "American Rifleman" Magazine, March 1968, P. 23**

23

tunately courts will not permit the introduction of such proof of ability unless all parties conducting the tests are present in person to testify.

"4. Ability to prepare evidence in photographic form so that permanent records may be available for use in appeal cases and for study by those wishing to verify the 'expertness of the expert.'

"Firearm identification will undoubtedly be retarded in its services to the administration of justice so long as so-called experts, inadequately trained to collect and to interpret physical data correctly and in harmony with the refinements peculiar to this science, are permitted to testify. Courts should be more correctly advised regarding the training and equipment necessary for such work, regarding the type of testimony and permanent records which should be required, and finally regarding limitations which must be observed in this as in all other sciences. There should be adopted:

"1. Minimum standards of equipment to be used.

"2. Standards for records of evidence to accompany and substantiate the expert's opinion; these to include photographs, metrological data, and interpretations in permanent form.

"3. Standards for qualification of experts which will include actual tests made against secretly designated materials and reported in compliance with item 2.

"4. Methods for constant following up of experts testifying in court to guarantee the highest efficiency.

"The compliance with such standards shuld be a guarantee of ability which could not be ignoted by any court or jury. Conversely, those unwilling to comply with such regulations should be permitted to explain why they are unwilling to do so. It is felt, however, that any one who has given the time and effort to properly qualify in this field will welcome an opportunity to cooperate in a plan such as has been outlined."

---

**Sportsmen Fight Sullivan Law—** The members of the National Rifle Association of America, from more than ten states, held their sixty-second annual meeting September 18, in New York City. The organization, which is the governing body of rifle shooting, represents 2,800 affiliated rifle clubs.

The main order of business was the adoption of a resolution to continue the fight for the repeal of the Sullivan law in New York State and the substitution of the uniform firearms act, now in force in several states and recently adopted by Congress for the District of Columbia.

The main aim in the fight against the Sullivan law is to give the honest man a chance to have a pistol in his home without having to be finger-printed and photographed. The organization believes the present situation makes the honest man appear associated with crime whenever he seeks to purchase a pistol.

The association plans to have the matter brought before the New York Legislature at the next meeting in an effort to substitute the uniform firearms act. Under that law, the applicant for pistol files an application with a firearms dealer and forty-eight hours later receives the pistol for home use, providing the police investigation that has been made in the meantime shows him to have a clean record as an upright citizen.

App. 156

This content downloaded from 152.3.102.242 on Thu, 12 Mar 2015 16:17:15 UTC
All use subject to JSTOR Terms and Conditions

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2015, I electronically filed the foregoing Brief of *Amicus Curiae* Everytown for Gun Safety in Support of Appellants with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta