# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

KAMALA D. HARRIS,
*Appellant*

v.

JEFF SILVESTER, et al.,
*Appellees*

_____

On Appeal from the United States District Court for the
Eastern District of California, No. 1:11-cv-02137-AWI-SKO (Ishii, J.)

_____

## BRIEF OF *AMICUS CURIAE* THE LAW CENTER TO PREVENT GUN VIOLENCE IN SUPPORT OF APPELLANT AND REVERSAL

_____

SIMON J. FRANKEL
REBECCA A. JACOBS
MARIENNA H. MURCH
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111
Telephone: (415) 591-6000

Attorneys for *Amicus Curiae* the
Law Center to Prevent Gun
Violence

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, the Law Center to Prevent Gun Violence states that it has no parent corporations.  It has no stock, and therefore no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS ........................................................... iii

INTEREST OF *AMICUS CURIAE* ............................................. 1

INTRODUCTION ................................................................... 1

ARGUMENT ......................................................................... 4

I.   California's Waiting Period Laws Are Longstanding, Presumptively Lawful Regulatory Measures That Fall Outside the Scope of the Second Amendment. .................................................................. 4

    A.   Under *Heller*, a Regulation Need Not Have Been Enacted in 1791 or 1868 in Order to Be Considered "Longstanding." ...................... 5

    B.   Under *Heller*, a Regulation Need Not Remain Static Over Time in Order to Be Considered "Longstanding." ................................... 8

    C.   This Court Should Adopt the Approach of the Third and D.C. Circuits as to When a Law Is "Longstanding." ......................... 10

        1. Waiting Period Laws Have Existed for a Significant Amount of Time in a Diverse Number of Jurisdictions and Over a Significant Proportion of the Population. ................................................. 11

        2. Waiting Period Laws Are Consistent With a Longstanding Tradition of Regulations to Keep Firearms Out of the Hands of Dangerous People. .................................................................. 13

II.  California's Waiting Period Laws Do Not Impose a Burden on Protected Conduct and Therefore Fall Outside the Scope of the Second Amendment. ................................................................. 15

CONCLUSION ..................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baltimore & Carolina Line, Inc. v. Redman*,
295 U.S. 654 (1935)..............................................................................6

*Bauer v. Harris*,
No. 1:11-CV-1440-LJO-MJS, 2015 WL 881515
(E.D. Cal. Mar. 2, 2015) ....................................................................17

*District of Columbia v. Heller*,
554 U.S. 570 (2008)....................................................................*passim*

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013) .......................................................*passim*

*Fyock v. City of Sunnyvale*,
No. 14-15408, 2015 WL 897747 (9th Cir. Mar. 4, 2015) ...............5, 6

*Heller v. District of Columbia ("Heller II")*,
670 F.3d 1244 (D.C. Cir. 2011)..................................................*passim*

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)........................................................................6, 7

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco,
Firearms, and Explosives*,
700 F.3d 185 (5th Cir. 2012) ..........................................................8, 9

*San Francisco Veteran Police Officers Ass'n v. City & Cnty.
of San Francisco*,
18 F. Supp. 3d 997, 1002 (N.D. Cal. 2014)......................................15

*United States v. Booker*,
644 F.3d 12 (1st Cir. 2011).................................................................9

*United States v. Chovan*,
735 F.3d 1127 (2013) .......................................................................15

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ..........................................................5, 15

*United States v. Rene E.*,
    583 F.3d 8 (1st Cir. 2008) ................................................................13

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ......................................................7, 8, 9

## STATUTES

Cal. Penal Code §§ 26815, 26950-27140, 27540, 27600-27750 ........................1, 12

D.C. Code Ann. § 22-4508 ................................................................12

Fla. Const. art. VIII, § 5 ................................................................12

Fla. Stat. Ann. § 790.0655 ................................................................12

Haw. Rev. Stat. Ann. § 134-2 ................................................................12

Ill. Comp. Stat. 5/24-3 ................................................................12

Iowa Code § 724.20 ................................................................12

Md. Code Ann., Pub. Safety §§ 5-123–5-125 ................................................12

Minn. Stat. § 624.7132, subd. 4 ................................................................12

N.J. Stat. Ann. §§ 2C:58-2a, 2C:58-3f ................................................................12

R.I. Gen. Laws §§ 11-47-35, 11-47-35.1, 11-47-35.2 ................................................12

Wis. Stat. §§ 175.35(2)(d), 175.35(2g)(c)4.c. ................................................................12

## OTHER AUTHORITIES

2010 U.S. Census, http://www.census.gov ................................................................13

Jack Larkin, *The Reshaping of Everyday Life,*
    *1790-1840* (Harper & Row 1988) ................................................................14

Law Center to Prevent Gun Violence, *Waiting Periods Policy Summary*
    (June 24, 2013), http://smartgunlaws.org/waiting-periods-policy-summary/ ....13

C. Kevin Marshall, *Why Can't Martha Stewart*
    *Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695 (2009) ........................................8

Charles Sellers, *The Market Revolution: Jacksonian America, 1815-1846* (Oxford Univ. Press 1991) ..............................................................14

Robert J. Spitzer, *The Politics of Gun Control, Fifth. Ed.* (Paradigm Publishers 2012)...............................................................................12

Adam Winkler, *Gunfight: The Battle Over the Right to Bear Arms in America* (W.W. Norton 2011)...............................................................12

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* the Law Center to Prevent Gun Violence ("Law Center") is a national, nonprofit organization dedicated to reducing gun violence.[1]  Founded after an assault weapon massacre at a San Francisco law firm in 1993, the Law Center provides comprehensive legal expertise in support of common sense gun laws.  The Law Center tracks and analyzes federal, state, and local firearms legislation, monitors Second Amendment litigation nationwide, and provides support to jurisdictions facing legal challenges to their gun laws.  The Law Center has provided informed analysis as an *amicus* in a wide variety of important firearm-related cases nationwide, including the Supreme Court cases *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

## INTRODUCTION

Although plaintiffs have framed this case as a narrow as-applied challenge to California Penal Code Sections 26815, 27540, and statutory exemptions thereto ("Waiting Period Laws"), this is a case where there is much more at stake than may meet the eye.  How the Court decides this case could have a lasting and wide-

---

[1] Counsel to the parties have consented to the filing of this brief.  *Amicus* affirms, pursuant to Fed. R. App. P. 29(c)(5), that no counsel for a party authored this brief in whole or in part and that no person other than *amicus* and its counsel made a monetary contribution to its preparation or submission.  The Law Center was formerly known as Legal Community Against Violence.

reaching impact on important areas of still-developing Second Amendment

jurisprudence.  It is not just the application of California's 10-day waiting period to

Appellees that is at issue here, but also the scope of the Second Amendment itself.

In holding that California's Waiting Period Laws are unconstitutional as applied to

Appellees, the District Court's opinion erred in its legal analysis in at least two

critical respects.

First, the District Court's opinion wrongly concluded that California's

Waiting Period Laws—which have been on the books for nearly a century—are

not "longstanding" because they did not exist in 1791 or 1868.  Excerpt of Record

("E.R.") (District Court Findings of Fact and Conclusions of Law ("Order")) at 43

("the Court is aware of no waiting period laws in any states during the time periods

around 1791 and 1868").  This is an acute error.  "Longstanding" is a crucial

classification because it helps to define what types of firearms regulations fall

within the scope of the Second Amendment.

In its landmark Second Amendment decision, *District of Columbia v. Heller*,

the Supreme Court stated that certain "longstanding" regulations of firearms are

"presumptively lawful."  554 U.S. 570, 626–27 & n.26 (2008).  The Court has not,

however, adopted a meaning of "longstanding" that requires founding-era

enactment.  On the contrary, several of the regulations identified by the Court as

"longstanding," such as laws prohibiting felons and the mentally ill from

possessing firearms, are of mid-twentieth-century vintage.  An adoption of the

District Court's overly restrictive interpretation of "longstanding" would be

directly contrary to *Heller*'s language and would demolish carefully reasoned

jurisprudence after *Heller* regarding what qualifies as a "longstanding,"

"presumptively lawful" firearms regulation.  The Law Center urges this Court to

take the approach of sister circuits which hold that a law is "longstanding" if it has

existed for a significant period of time, either in a diverse number of jurisdictions

or over a significant proportion of the population, and is consistent with the

traditional regulation of firearms.

Second, the District Court's opinion incorrectly determined that California's

Waiting Period Laws burden the Second Amendment rights of Appellees.  E.R.

(Order) at 41–42.  The opinion entirely ignores the fact that, by definition,

Appellees *already own* at least one firearm, and therefore already have access to at

least one firearm for use in self-defense.  One Appellee in this case obtained 50

firearms in a five-year period while the Waiting Period Laws were in effect.  E.R.

(Excerpt of Tr. of Proceedings (Day 1)) at 104.  *Heller* made clear that the essence

of the Second Amendment right is self-defense.  *Heller*, 554 U.S. at 628 ("the

inherent right of self-defense has been central to the Second Amendment right").

However, nothing in the Court's jurisprudence suggests that the Second

Amendment guarantees individuals the right to take *immediate* possession of a

gun, certainly not when that individual already possesses at least one firearm.  The

District Court's oversight, if allowed to stand, would dramatically expand the

scope of the Second Amendment beyond the Supreme Court's holding in *Heller*.

For these reasons, the Law Center respectfully requests that the Ninth

Circuit reverse the judgment of the District Court.

## ARGUMENT

**I.     California's Waiting Period Laws Are Longstanding, Presumptively Lawful Regulatory Measures That Fall Outside the Scope of the Second Amendment.**

In *Heller*, the Supreme Court cautioned that "the right secured by the Second

Amendment is not unlimited," and identified an explicitly non-exhaustive list of

regulatory measures that it categorized as "presumptively lawful."  *Heller*, 554

U.S. at 626–27 & n.26.  Specifically, the *Heller* Court stated that "nothing in our

opinion should be taken to cast doubt on longstanding prohibitions on the

possession of firearms by felons and the mentally ill, or laws forbidding the

carrying of firearms in sensitive places such as schools and government buildings,

or laws imposing conditions and qualifications on the commercial sale of

arms . . . . We identify these presumptively lawful regulatory measures only as

examples; our list does not purport to be exhaustive."  *Id.*

Under the now-familiar two-part inquiry generally used to analyze Second

Amendment claims, the court first "asks whether the challenged law burdens

conduct protected by the Second Amendment." *Fyock v. City of Sunnyvale*, No. 14-15408, --- F.3d ----, 2015 WL 897747, at *3 (9th Cir. Mar. 4, 2015) (citation and internal quotation marks omitted). As this Court recently explained, laws that regulate conduct that has been "the subject of longstanding, accepted regulation," do not burden Second Amendment rights and thus "fall outside the Second Amendment's scope." *Id*. at *4. If this is true of a challenged law, then the court's analysis is finished. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (if a challenged law is found to fall outside the scope of the Second Amendment then the "inquiry is complete").

As discussed at length in the state's opening brief on appeal, California's Waiting Period Laws provide a cooling-off period to allow potentially dangerous, unstable individuals to re-think impulsive acts of violence, provide sufficient time to conduct a thorough background check, and enable law enforcement to investigate and intercept potential straw purchases. Opening Brief at 9. These laws, which have existed for over 90 years, certainly qualify as "longstanding," presumptively valid regulations under *Heller*, and therefore fall outside the scope of the Second Amendment. In reaching a different conclusion, the District Court made several critical errors.

## A. Under *Heller*, a Regulation Need Not Have Been Enacted in 1791 or 1868 in Order to Be Considered "Longstanding."

First, the District Court mistakenly concluded that California's Waiting

Period Laws do not qualify as "longstanding" because the state could not establish the existence of "statutes or regulations around 1791 or 1868 that imposed waiting periods between the time of purchase and the time of delivery." E.R. (Order) at 42. However, as this Court recently recognized, a firearm regulation can be "longstanding" regardless of whether it also existed around the time of the adoption of the Second and Fourteenth Amendments. *See Fyock*, 2015 WL 897747, at *4 ("Although not from the founding era, [] early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record.").

The notion that certain firearms regulations may be "longstanding" and "presumptively valid," even if they lack a direct connection to the founding era, derives directly from the language of *Heller*. The Supreme Court knows how to invoke the founding era when it wants to, and it has not done so in the context of its discussion in *Heller* of "longstanding," "presumptively lawful" firearms regulations. The Court has been explicit, for example, that the right to a jury trial in a particular kind of case depends on how that right was understood under English common law in 1791. *See, e.g.*, *Balt. & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935) ("The right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted."); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996)

("we ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was"). The language in those cases makes clear that the Court intended to anchor the Seventh Amendment right to "the common-law right as it existed in 1791," *Markman*, 517 U.S. at 376, but the same cannot be said of the Court's language in *Heller* concerning "longstanding," "presumptively lawful" firearms regulations.

This is evidenced by the fact that, as courts applying *Heller* have noted, the Supreme Court's examples of "longstanding," "presumptively lawful" regulations actually have origins in the mid-twentieth century. *Heller* states that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller*, 554 U.S. at 626. Yet, as the Third Circuit noted in *Drake v. Filko*, "the current versions of these bans are of mid-20th century vintage." 724 F.3d 426, 434 n.11 (3d Cir. 2013). Echoing this point, Judge Easterbrook pointed out that "[t]he Federal Firearms Act [of 1938] covered only a few violent offenses" and the ban on receipt of firearms by *all* felons "was not enacted until 1961" and was not expanded to cover actual *possession* until 1968, when the law took "its current form." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). "Moreover," Judge Easterbrook added, "legal limits on the possession of firearms by the mentally ill also are of 20th Century vintage" and the federal law which "forbids possession by a person 'who

has been adjudicated as a mental defective or who has been committed to a mental institution', was not enacted until 1968." *Id*. at 641.

Finally, the D.C. Circuit in its *Heller II* opinion noted that "[t]he Court in *Heller* considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although states did not start to enact them until the early 20th century." *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1253–54 & n.* (D.C. Cir. 2011) (concluding that a District of Columbia handgun registration requirement was "longstanding" and therefore "does not impinge upon the right protected by the Second Amendment").[2]

In this manner, *Heller* and its progeny demonstrate that "a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA v. ATF*, 700 F.3d 185, 196 (5th Cir. 2012). Thus, the District Court was wrong to require specific evidence of waiting period laws from 1791 or 1868.

## B. Under *Heller*, a Regulation Need Not Remain Static Over Time in Order to Be Considered "Longstanding."

Next, the District Court made much of the fact that California's Waiting Period Laws have changed form over the years. E.R. (Order) at 43–44. *Heller* also indicates, however, that a regulation may evolve over time without losing its

---

[2] Citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 708 (2009) (noting that "bans on convicts possessing firearms were unknown before World War I" and a "compilation of laws in mid-1925 indicated that no State banned possession of long guns based on a prior conviction").

8

"longstanding" character.  *See Skoien*, 614 F.3d at 640–41 ("[W]e do take from

*Heller* the message that exclusions need not mirror limits that were on the books in

1791.").  The presumptively lawful measures *Heller* identified demonstrate that

laws need not remain static from the time of their initial enactment in order to

qualify as "longstanding."  For example, the federal felon-in-possession

prohibition "bears little resemblance to laws in effect at the time the Second

Amendment was ratified," particularly as the original law "was not enacted until

1938" and "was not expanded to cover non-violent felonies until 1961, and was not

re-focused from receipt to possession until 1968."  *NRA*, 700 F.3d at 196–97

(citing *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)) (internal

quotation marks omitted).  Similarly, in the context of concealed carry permits,

New Jersey's "justifiable need" standard, upheld by the Third Circuit, has

undergone several amendments in its 90-year history and yet the Third Circuit still

found the law to be "longstanding."  *See Drake*, 724 F.3d at 432.

California's Waiting Period Laws, which have been in effect for *more* than

90 years,[3] have at times covered fewer kinds of firearms and required a shorter or

longer waiting period before a purchaser may take possession of a gun.  However,

just like the felon-in-possession prohibition and the "justifiable need" standard, the

Waiting Period Laws have always served the same fundamental purpose and

---

[3] As the District Court admitted, "[i]t is true that California has had some form of a
waiting period since 1923."  E.R. (Order) at 43.

should have been found to be "longstanding" and "presumptively valid" by the District Court, despite the fact that they have changed form somewhat over the years.

### C. This Court Should Adopt the Approach of the Third and D.C. Circuits as to When a Law Is "Longstanding."

The Law Center respectfully suggests that the Ninth Circuit adopt the general criteria of the Third and D.C. Circuits for determining when a law is "longstanding" under *Heller*. Under this approach, in order to be "longstanding," a regulation needs only to: (1) have existed in some form for a significant period of time, either in a diverse number of jurisdictions or over a significant portion of the population; and (2) be consistent with the traditional regulation of firearms. *See Drake*, 724 F.3d at 433–34 (holding that a New Jersey statute related to public carrying of handguns qualified as "longstanding" where the standard existed in New Jersey in some form for 90 years, was applicable in some form in seven jurisdictions, and "fit[] comfortably within [a] longstanding tradition of regulating the public carrying of weapons for self-defense"); *Heller II*, 670 F.3d at 1254–55 & n.* (holding that a District of Columbia handgun registration requirement was "longstanding" because such requirements have existed in this country since the early twentieth century, have applied "to more than one fourth of the Nation by population," and are "consistent with the ruling in *Heller*") (citations and internal quotation marks omitted).

California's Waiting Period Laws meet and exceed the requirements under this approach. As explained further below, like other laws that have been held to be "longstanding," waiting period laws have existed for a significant period of time and are deeply rooted in the twentieth century. They also exist in a diverse number of jurisdictions and apply to a large segment of the American population. Moreover, they are consistent with a long American tradition of laws designed to keep guns out of the hands of dangerous people.

>    1.    **Waiting Period Laws Have Existed for a Significant Amount of Time in a Diverse Number of Jurisdictions and Over a Significant Proportion of the Population.**

Courts applying *Heller* acknowledge that firearms regulations laws can be "longstanding" if they have existed in some form for a significant period of time in a diverse number of jurisdictions or over a significant proportion of the population. *Heller II*, 670 F.3d at 1253–54 & n.*; *Drake*, 724 F.3d at 434. In *Heller II*, the D.C. Circuit held that basic handgun registration requirements first enacted in the twentieth century were longstanding where such requirements were applicable to more than one-fourth of the nation's population at the time. 670 F.3d at 1253–54 & n.*. In *Drake,* the Third Circuit determined that a concealed carry permitting system was longstanding where just seven states had such laws on the books prior to 1923. 724 F.3d at 434.

Waiting period laws like those in effect in California have existed for a

significant amount of time, and have applied both in a diverse number of

jurisdictions and over a significant portion of the population, and are therefore

"longstanding."  For example, the District of Columbia's waiting period dates back

to 1932.[4]  In addition, the uniform model Revolver Act, a law proposed in 1923 by

the U.S. Revolver Association, a pro-gun-rights organization, contained a one-day

waiting period and was enacted by numerous states, including West Virginia, New

Jersey, Michigan, Indiana, Oregon, New Hampshire, North Dakota, and

Connecticut.[5]  Finally, the 1994 federal Brady Handgun Violence Prevention Act

also contained a five-day waiting period for the purchase of handguns, which

provision expired in 1998.  E.R. (Order) at 17.

Waiting period laws like those in effect in California have been enacted in

ten states (compared to *Drake*'s seven) and the District of Columbia.[6]  Five of

these jurisdictions impose a waiting period of seven days or more, while Hawaii

imposes a waiting period of 14 days.  E.R. (Order) at 17.  Moreover, waiting

---

[4] *See* Robert J. Spitzer, *The Politics of Gun Control, Fifth. Ed.* at 130 (Paradigm Publishers 2012).

[5] Adam Winkler, *Gunfight: The Battle Over the Right to Bear Arms in America* at 207–208 (W.W. Norton 2011).

[6] Cal. Penal Code §§ 26815(a), 26950-27140, 27540(a), 27600-27750; Haw. Rev. Stat. Ann. § 134-2(e); 720 Ill. Comp. Stat. 5/24-3(A)(g); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-35.1, 11-47-35.2; Minn. Stat. § 624.7132, subd. 4; Fla. Const. art. VIII, § 5(b); Fla. Stat. Ann. § 790.0655; Iowa Code § 724.20; Md. Code Ann., Pub. Safety §§ 5-123 – 5-125; N.J. Stat. Ann. §§ 2C:58-2a(5)(a), 2C:58-3f; Wis. Stat. §§ 175.35(2)(d), 175.35(2g)(c)4.c; D.C. Code Ann. § 22-4508.

period laws also apply to approximately one-third of the national population as of the 2010 census (compared to *Heller II*'s one-fourth).[7]

The widespread passage of waiting period laws over the last century demonstrates that these laws have been generally accepted in a wide array of jurisdictions over a significant period of time and therefore should be considered "longstanding."

> 2. **Waiting Period Laws Are Consistent With a Longstanding Tradition of Regulations to Keep Firearms Out of the Hands of Dangerous People.**

In *Drake*, the Third Circuit found that New Jersey's "justifiable need" standard for issuing public carry permits "fits comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense." 724 F.3d at 433. California's Waiting Period Laws are similarly consistent with the longstanding tradition of firearms regulation designed to keep firearms out of the hands of dangerous people. *See, e.g.*, *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2008) ("[T]he federal ban on juvenile possession of handguns is part of a longstanding practice of prohibiting certain classes of individuals from possessing firearms—those whose possession poses a particular danger to the public."); *Heller*, 554 U.S. at 626 (prohibitions on possession of firearms by felons and the

---

[7] Law Center to Prevent Gun Violence, *Waiting Periods Policy Summary* (June 24, 2013), http://smartgunlaws.org/waiting-periods-policy-summary/ (last visited Apr. 1, 2015); 2010 U.S. Census, http://www.census.gov (last visited Apr. 1, 2015).

mentally ill are "longstanding" and "presumptively lawful").  California's Waiting Period Laws continue the same tradition: the waiting period is designed to provide a cooling-off period to allow potentially dangerous, unstable individuals to re-think impulsive acts of violence, provide sufficient time to conduct a proper background check, and enable law enforcement to investigate and intercept straw purchases. Opening Brief at 9.

The District Court's opinion concludes, without support, that because no waiting period laws existed between 1791 and 1868, "the citizenry of 1791 and 1868 would not have been accepting of such laws because those laws would have created additional difficulties and barriers to obtaining a firearm."  E.R. (Order) at 6, fn. 3.  However, it is no surprise that waiting period laws were enacted later in American history.  It was rare in the distant past for a person to both seek to acquire a firearm and take possession of it in the same day; typically, the buyer had to order the firearm in advance or travel a long distance to purchase it.[8]  Thus, there was a natural waiting period built into the commercial sale of firearms that today may no longer exist.  However, as discussed above, there is substantial justification for states to reestablish a waiting period through the enactment of legislation, and many states have chosen to do so.  California's Waiting Period Laws are consistent

---

[8] *See* Charles Sellers, *The Market Revolution: Jacksonian America, 1815-1846* at 14–15 (Oxford Univ. Press 1991); Jack Larkin, *The Reshaping of Everyday Life*, *1790-1840* at 6–7, 16 (Harper & Row 1988).

with the longstanding, traditional regulation of firearms in America.

In sum, California's Waiting Period Laws meet all the requirements to be properly considered "longstanding," "presumptively lawful" regulations that fall outside the scope of the Second Amendment.

## II. California's Waiting Period Laws Do Not Impose a Burden on Protected Conduct and Therefore Fall Outside the Scope of the Second Amendment.

Under the two-part test used to analyze Second Amendment claims, if a court finds that a challenged law does not burden protected conduct, then the "inquiry is complete." *Marzzarella*, 614 F.3d 85 at 89. Contrary to the District Court's opinion, there is no evidence that California's Waiting Period Laws burden the Appellees' Second Amendment rights. *See* E.R. (Order) at 41–42. The Second Amendment does not protect "a right to keep and carry *any* weapon whatsoever in *any* manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626 (emphasis added). Moreover, the "right of self-defense has been central to the Second Amendment right." *Id.* at 628.

In *United States v. Chovan*, this Court characterized the Second Amendment right as the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." 735 F.3d 1127, 1133 (2013) (citation and internal quotation marks omitted). The "central component" and "core lawful purpose" of the Second Amendment is individual self-defense. *Heller*, 554 U.S. at 599, 630; *see*

*also S.F. Veteran Police Officers Ass'n v. City & Cnty. of S.F.*, 18 F. Supp. 3d 997, 1002 (N.D. Cal. 2014) (citations and internal quotation marks omitted).

The District Court incorrectly concluded that California's Waiting Period Laws burden the Appellees' Second Amendment right because "[o]ne cannot exercise the right to keep and bear arms without actually possessing a firearm," and in California, one must wait ten days to take possession of a newly purchased firearm. E.R. (Order) at 41. This conclusion completely ignores the fact that, by definition, Appellees *already* own and have access to at least one firearm. Indeed, the record shows that Appellees Jeff Silvester and Brandon Combs each possessed multiple personal firearms while the Waiting Period Laws were in effect. E.R. (Excerpt of Tr. of Proceedings (Day 1)) at 95, 104. Mr. Combs testified that he acquired 50 firearms in a five-year period, all while the Waiting Period Laws were in effect. *Id.* at 104 ("Q. And the Waiting-Period Law was in effect while you were acquiring 50 firearms in a five-year period; correct? A. Yes."). California's Waiting Period Laws place no restriction whatsoever on the use of firearms already in one's possession and only modestly affect Appellees' ability to take immediate possession of additional firearms.[9] As a result, Appellees' ability to defend

---

[9] The evidence is also not compelling that the waiting periods burdened the Appellees' ability to purchase new guns. Mr. Silvester testified that the nearest gun store to his home is just two miles away and that he passes by a gun store on his monthly (continued . . . )

themselves with a firearm is in no way burdened by California's Waiting Period Laws.

Appellees' sole complaint is that, although they already have a gun or multiple guns, they must wait a mere ten days to acquire another one. This simply does not amount to a burden on Appellees' Second Amendment rights. Plainly, the "right of self-defense" that is "central to the Second Amendment right," *Heller*, 554 U.S. at 628, does not create a right for an individual to take *immediate* possession of a newly purchased gun, especially where he or she already owns a firearm. Such conduct falls outside the scope of Second Amendment protection and Appellees introduced no evidence showing that California's Waiting Period Laws have affected their core right to self-defense in the home.

## CONCLUSION

The District Court's flawed opinion represents a significant departure from both the language of *Heller* and its subsequent case law, which could have

---

business trips. E.R. (Excerpt of Tr. of Proceedings (Day 1)) at 94–95. These facts do not warrant a finding of burden on Appellees' Second Amendment rights. *See, e.g.*, *Heller II*, 670 F.3d at 1254–55 ("basic registration requirements are self-evidently de minimis, for they are similar to other common registration or licensing schemes, such as those for voting or for driving a car, that cannot reasonably be considered onerous"); *Bauer v. Harris*, No. 1:11-CV-1440-LJO-MJS, --- F. Supp. 3d ----, 2015 WL 881515, at *6 (E.D. Cal. Mar. 2, 2015) (upholding $19 fee imposed on all firearm sales in California as "presumptively lawful," and finding that such a fee "places only a marginal burden on the core of the Second Amendment") (citations and internal quotation marks omitted).

implications that reach far beyond Appellees' as-applied challenge in this particular case. If allowed to stand, this decision would greatly expand the scope of the rights conferred by the Second Amendment, as interpreted by the Supreme Court, while simultaneously restricting the standards for determining what constitutes a "longstanding," "presumptively lawful" regulation. For all of the foregoing reasons, the Law Center respectfully suggests that the Court reverse the District Court's judgment.

Dated: April 1, 2015          Respectfully submitted,

COVINGTON & BURLING LLP

By:   *s/ Simon Frankel*          
       SIMON J. FRANKEL

Attorneys for *Amicus Curiae*

## CERTIFICATION OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitation of 9th Cir. R. 29-2(c)(2) and 32 because the brief contains 4,321 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated:  April 1, 2015                        COVINGTON & BURLING LLP


                                             By:   *s/ Simon Frankel*
                                                   SIMON J. FRANKEL

                                             Attorneys for *Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 1, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 1, 2015                    COVINGTON & BURLING LLP


By:  *s/ Simon Frankel*
            SIMON J. FRANKEL

Attorneys for *Amicus Curiae*